PITTA & DREIER LLP
499 Park Avenue
New York, NY 10022
(212) 652-3890
*Attorneys for Defendants*
*New York Hotel and Motel Trades Council, AFL-CIO and*
*Peter Ward, President of New York Hotel and Motel Trades Council, AFL-CIO*

Barry N. Saltzman (BS 6533)
Michael J. D'Angelo (MD 3030)



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

07 CV 11383

TRAN DINH TRUONG, INDIVIDUALLY AND
ON BEHALF OF ALPHONSE HOTEL CORP.
d/b/a THE HOTEL CARTER,

     :   Case No. 07-Civ-

         Plaintiffs,

     -against-

NEW YORK HOTEL & MOTEL
TRADES COUNCIL, AFL-CIO, THE OFFICE OF
THE IMPARTIAL CHAIRMAN, AND PETER
WARD,

         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

NOTICE OF REMOVAL

RECEIVED DEC 19 2007 U.S.D.C. S.D.N.Y. CASHIERS

TO:    THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT
        COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

    Defendants NEW YORK HOTEL & MOTEL-TRADES COUNCIL, AFL-CIO

("Union") and PETER WARD, President of the Union, ("Ward" and collectively with the Union

as the "Union Defendants") by its attorneys, Pitta & Dreier LLP, respectfully seeks the removal

of this civil action and shows:

    1.    Plaintiff TRAN DINH TRUONG, individually and on behalf of ALPHONSE

HOTEL CORP. d/b/a THE HOTEL CARTER (hereinafter referred to as the "Employer",

"Hotel" or "Plaintiff") brought this action in the New York State Supreme Court, County of New York, by the filing of a Summons, dated November 21, 2007, and serving a Complaint, dated November 21, 2007, (collectively the "Complaint"). Attached hereto as Exhibit A are true and accurate copies of the Summons and Complaint.

2.     This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331, Section 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. §185, and, therefore, may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441.

3.     Defendants remove this action because the Plaintiff seeks to use the state courts as a vehicle to circumvent its contractual obligations under federal labor law and press forward unmeritorious claims previously made by Plaintiff and already rejected by this Court in *Alphonse Hotel Corp. v. New York Hotel & Motel Trades Council, AFL-CIO*, 2004 WL 414836 (SDNY 3/5/04), aff'd w/o opinion, 117 Fed. Appx. 803 (2d Cir. 2005). Attached hereto as Exhibit B is a true and accurate copy of the unreported decision in *Alphonse Hotel Corp.*

4.     The Complaint purports to claim that the Union Defendants allegedly engaged in a pattern of discrimination and targeted Plaintiff in violation of the New York State and New York City Human Rights Law and intentionally inflicted emotional distress upon the Plaintiff with its behavior. However, Plaintiff and Union Defendant are parties to a collective bargaining agreement entitled the Industry Wide Agreement (hereinafter referred to as the "IWA"). The Union Defendants periodically raised issues and concerns to the Plaintiff and engaged in arbitration hearings under the very broad arbitration provisions of the IWA to enforce all of the provisions of the IWA. Such enforcement of the provisions of the IWA does not constitute harassment or acts of intimidation or outrage.  Moreover, any inquiry into Plaintiff's allegations

necessarily requires the Court to construe the IWA, inextricably linking such claims to contract construction under federal labor law, 29 U.S.C. §185.

## THE PARTIES

5.     Plaintiff Alphonse Hotel Corp. d/b/a The Hotel Carter (hereinafter referred to as the "Hotel") is a corporation organized and existing under the laws of the State of New York. Plaintiff Tran Ding Truong is an individual and the principal owner and manager of the Hotel. The Plaintiffs are "employers" in an industry affecting commerce as respectively defined by Sections 2(2) and (6) of the LMRA, 29 U.S.C. §§152(2) and (6). The Employers provide hotel accommodations and services at the Hotel located at 250 West 43rd Street, New York, New York 10036. Employees of the Hotel work in defined job positions commonly represented by the Union.

6.     The New York Hotel and Motel Trades Council, AFL-CIO (the "Union") is a "labor organization" as defined in Section 2(5) of the LMRA, 29 U.S.C. §152(5). The Union represents employees performing various trades in the New York City hotel and restaurant industry, an industry affecting "commerce" as defined in Section 2(6) of the LMRA, 29 U.S.C. §152(6). At all relevant times, the Union has represented employees employed by the Employer in various defined job positions as their collective bargaining representative pursuant to the provisions of the LMRA.

7.     The Office of the Impartial Chairperson commonly known as Office of the Impartial Chairperson of the Hotel Industry of New York City ("Office of the Impartial Chairperson", or "Impartial Chairperson" or "OIC") is an office which administers the labor arbitration hearings for the panel of arbitrators designated under the IWA between the Union and

the Hotel Association of New York City, Inc. to adjudicate and resolve disputes between the parties and other employers such as the Hotel.

8.    Peter Ward is an individual and President of the Union.

## PLAINTIFFS HAVE A HISTORY OF USING THE COURTS AS A VEHICLE TO MAKE FALSE ALLEGATIONS OF HARASSMENT AND AVOID ARBITRATION DECISIONS

9.    Defendants removed this action because the Plaintiffs seek to use the state courts as a vehicle to avoid their contractual obligations with the Union as well as to avoid their obligations to arbitrate certain disputes and be bound by the decisions and awards of the resulting arbitrations.

10.    In August of 2001 the Union successfully confirmed an arbitration award from the Office of the Impartial Chairperson in this Court. *See New York Hotel & Motel Trades Council, AFL-CIO v. Alphonse Hotel Corp.*, 2001 WL 959005 (S.D.N.Y.).  In that case, the Plaintiffs refused to abide by an arbitration award from the Office of the Impartial Chairperson that the Union successfully grieved on behalf of an employee at the Hotel.  Attached hereto as Exhibit C is a true and accurate copy of the unreported decision in *New York Hotel & Motel Trades Council, AFL-CIO v. Alphonse Hotel Corp.*

11.    As previously mentioned, this Court in March of 2004 granted the Union's a motion for judgment on the pleadings dismissing the Plaintiffs' complaint that the Union engaged in unfair labor practices and intentional infliction of emotion distress and which sought rescission of a "Me Too" agreement binding the Hotel to the terms of the IWA. (*Alphonse Hotel Corp. v. New York Hotel & Motel Trades Council AFL-CIO*, 2004 WL 414836 (S.D.N.Y.) aff'd

w/o opinion, 117 Fed. Appx. 803 (2d Cir. 2005).    The Court held that Plaintiffs' state claims must be arbitrated as a "301 action" under 29 U.S.C. §185, Section 301 of the LMRA.

## THE COURT'S REMOVAL JURISDICTION

12.    Title 28 of the United States Code, Sections 1441(a) and (b) provides the basis for removal jurisdiction in this action.

13.    The state court action herein is within the original jurisdiction of the Court "founded on a claim or right arising under the... laws of the United States." Section 301(a) of the LMRA, 29 U.S.C. § 185 provides:

> a. Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act... may be brought in any district court of the United States having jurisdiction of the parties without respect to the amount in controversy or without regard to the citizenship of the parties.

14.    This Court has federal question jurisdiction over the instant action based on the afore-cited federal statutes and authorities in that the Plaintiffs are claiming that the Union Defendants violated the terms and provisions of the IWA.

15.    This notice of removal is timely filed under 28 U.S.C. §1446(b) in that it is filed within thirty (30) days of receipt of the Summons and Complaint.

## JOINDER TO AND CONSENT OF ALL DEFENDANTS TO REMOVAL

16.    Removal of this is also appropriate because the counsel for all Defendants named and served in this action have joined, consented to and file this Notice of Removal, copy attached as Exhibit D.

17.    Union Defendants will file a copy of this Notice of Removal with exhibits with the Clerk of the Supreme Court of the State of New York, County of New York, and served on the Plaintiffs in accordance with 28 U.S.C. §1446(d).

WHEREFORE, the Union Defendants pray this action be removed to this Court from the Supreme Court of the State of New York, County of New York.

Dated: New York, New York
        December 19, 2007

Respectfully submitted,

PITTA & DREIER LLP
*Attorneys for Defendant*
*New York Hotel and Motel Trades Council, AFL-*
*CIO and Peter Ward, President of New York Hotel*
*and Motel Trades Council, AFL-CIO*

By: _____
    Barry N. Saltzman (BS 6533)
    Michael J. D'Angelo (MD 3030)
499 Park Avenue
New York, New York 10022
(212) 652-3890

Of Counsel:
Vincent F. Pitta, Esq.

TO:    Gregory G. Calabro, Esq.
       Calabro & Associates, P.C.
       *Attorneys for Plaintiffs*
       1412 Broadway, Suite 1504
       New York, New York 10018

# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

TRAN DINH TRUONG, individually and on behalf of
ALPHONSE HOTEL CORP. d/b/a
THE HOTEL CARTER,

Index No.: 07603958

                              Plaintiff,

                                                      SUMMONS

        -against-

                                              Plaintiff designates New
                                              York County as Place for
                                              Trial

                                              The Basis of Venue is
                                              Plaintiff's Place of
                                              Business:

                                              250 West 43rd Street
                                              New York, New York

NEW YORK HOTEL & MOTEL TRADES COUNCIL,
AFL-CIO, THE OFFICE OF THE IMPARTIAL
CHAIRMAN, and PETER WARD,

                              Defendants.

-------------------------------------------------------------------X

        TO THE ABOVE-NAMED DEFENDANTS:

        YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to

serve a copy of your Answer, or, if the Complaint is not served with this Summons, to

serve a Notice of Appearance upon the Plaintiff's attorney within 20 days after service

of this Summons, exclusive of the day of service (or within 30 days after service is

complete if this summons is not personally delivered to you within the State of New

York); and in case of your failure to appear or answer, Judgment will be taken against

you by default for the relief demanded in the Complaint.

Dated: New York, New York
November 21, 2007

Yours, etc.,

CALABRO & ASSOCIATES, P.C.
Attorneys for Plaintiff
1412 Broadway, Suite 1504
New York, New York 10018
(646) 688-6095

By:_____
Gregory G. Calabro, Esq.

TO:    **NEW YORK HOTEL & MOTEL TRADES COUNCIL,**
       **AFL-CIO**
       709 Eighth Avenue
       New York, New York 10036

       **THE OFFICE OF THE IMPARTIAL CHAIRMAN**
       321 West 44th Street, Suite 400
       New York, New York 10036

       **PETER WARD**
       709 Eighth Avenue
       New York, New York 10036

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------X

TRAN DINH TRUONG, individually and on behalf of          Index No.:
ALPHONSE HOTEL CORP. d/b/a
THE HOTEL CARTER,

Plaintiff,

   -against-                                              COMPLAINT

NEW YORK HOTEL & MOTEL TRADES COUNCIL,
AFL-CIO, THE OFFICE OF THE IMPARTIAL
CHAIRMAN, and PETER WARD,

Defendants.

------------------------------------------------------------------X

The Plaintiff, Tran Dinh Truong, individually and on behalf of Alphonse Hotel

Corp. d/b/a The Hotel Carter (the "Hotel"), by his attorneys Calabro & Associates, P.C.,

as and for his complaint against Defendants New York Hotel & Motel Trades Council,

AFL-CIO, the Office of the Impartial Chairman, and Peter Ward, alleges as follows:

NATURE OF THE ACTION

1.     This is an action brought principally by a local New York City Hotel against

the New York Hotel & Motel Trade Council affiliated with AFL-CIO (hereinafter the

"Union") and the individual Defendants seeking monetary damages based upon an

egregious pattern of discrimination and targeting of Plaintiff in violation of the New York

State and New York City Human Rights Law and a clear pattern of bias against Plaintiff.

In addition, Plaintiff seeks judgment against the Defendants for intentional infliction of

emotional distress based upon conduct as perpetrated by the Union and the individual

Defendants against Plaintiff, which conduct has caused significant mental and physical

injury to him.

2.     The sordid history of abuse, bias and prejudice against the Plaintiff is

pervasive. As alleged in further detail herein, the Union and the individual Defendants have engaged in a course of conduct of bias and with a discriminatory intent and have used their position to harass Plaintiff and cause mental and physical injury by:

(a)    Forcing the Hotel to continue the employment of certain individuals who are clearly insubordinate, overtly hostile, and physically violent toward management and their co-workers and who have in the presence of the Union officials threatened bodily harm against the Hotel's management;

(b)    affirmatively and in bad faith forcing the Hotel to continue to employ the Union's employee delegate under the threat of immediate reprisals and retaliatory action;

©    endorsing, promoting and assisting in the preemptive filing of frivolous grievance proceedings to protect the employment of certain Union members after learning that the Hotel had disciplined them or intended to terminate their employment, the purpose of which was to unfairly prevent the Hotel from asserting its rights and taking any action against these insubordinate employees (set forth in more detail below);

(d)    violating the Me Too Agreement between the parties in which it was agreed that there would be no further grievances to the Impartial Chairman for the time period prior to March 16, 2006, by bringing claims and grievances on behalf of employees for the period prior to March 16, 2006, including complaints of Hamadou Diallo, Ana

Pena and Ylonka Pena, plus Elizabeth Santiago and Glenny Castillo, who, as will be set forth below, were not employees but the union aided them in bringing grievances despite this fact;

(e)    suborning palpably perjurious testimony by the Union's employee representative who is known by the Union (I) to lack personal knowledge of the relevant facts, (ii) to give false testimony; and (iii) to have received payments from other employees as consideration for giving such tainted testimony;

(f)    permitting Manny Lisanti, a Union agent, to threaten Plaintiff with physical harm without cause or justification during a meeting at the union office, causing Plaintiff to be unable to properly represent himself and the Hotel at said meeting since he was required to leave due to fear for his safety. Mr Lisanti stated that he "throw you out the window";

(g)    forcing the Hotel to pay and hire persons who were never employed by the Hotel but who filed false grievances at the urging of the Union, including Elizabeth Santiago and Glenny Castillo. Neither worked for the hotel, yet the Union allowed them to file grievances despite no proof of employment and then aided them in giving false testimony, leading to a decision in their favor by the Impartial Chairman, despite no valid proof. Their testimony was not supported by any documentary evidence and the Plaintiff's records proved that they were not employees;

(h)    failing to address the Hotel's concerns about Hamidou Diallo, who fought constantly with another employee because that employee did not agree with the union. The Union did not follow up on Plaintiff's complaints and took no steps to reprimand, warn or reassign either one of these employees. Ultimately, this led to the murder of the other employee by Hamidou Diallo, which led to bad publicity for the Hotel and the loss of substantial income for the Hotel.  Mr. Diallo then stated that all he was owed was his pay for a six day period and requested that the union obtain those funds for him. Ten years later, Mr. Diallo commenced a court action seeking monies from the Hotel and alleging that the Union had failed to fairly represent him. Despite the fact that in order to prove unfair representation, it must be proven that the Union acted far outside a wide range of reasonableness, and that Mr. Diallo did not prove this factor, the Union, instead of fighting this claim, set up a hearing on this grievance, causing Plaintiff to be harmed by having to prove its' defense over ten years later and the Impartial Chairman's office proceeded, against its' own policies, in allowing this to take place;

(I)    filing grievances on behalf of Ana Pena, a former employee of the Hotel, who was only an employee for approximately three weeks, which was supported not only by the testimony of the Hotel employees but the records that the Union placed into evidence and who had been fired both because she was unable to perform the

necessary duties and, of more importance, she had been caught stealing from various guests which was proven by letters from the guests and by the fact that it was her card key which was used to enter the rooms at the time that the thefts took place. Despite the fact that she had been stealing and had not been employed during the time for which she was seeking additional pay, and despite the fact that the guests refused to pay part of the hotel bill because of the stolen property, and despite the fact that there was an on-going police investigation and judgments entered against her in the Civil Court, the union insisted that she be reinstated and receive back wages. This was in violation of the Me Too agreement, as well as in direct contradiction of the evidence produced at the hearing. The Impartial Chairman supported the Union and these persons, despite no valid proof;

(j)    filing grievances on behalf of Elizabeth Santiago and Glenny Castillo, who were not employed by the Hotel but were encouraged by the Union to provide perjurious testimony to the Impartial Chairman, after which the Impartial Chairman, despite no valid evidence, supported the Union in requiring the Plaintiff to give these persons a job. Since that date, in October 2007, it was discovered that Ms. Santiago entered a room which was not on her list of rooms to be cleaned and took guests' belongings, the police have investigated and required her to return some of the items but

the balance of the stolen items remain missing. Had the Union and the Impartial Chairman not improperly required Plaintiff to give her the job, this would not have happened and would not have caused bad publicity and a loss of guests;

(k)    filing grievances on behalf of Ylonka Pena, a subordinate employee who was damaging hotel property and aiding in the theft of hotel property, such as towels, which continued after she was given a warning and, in order to avoid being fired, she then falsely claimed that the Hotel had told her she would be fired if she went to the Union and once again, the Union improperly targeted Plaintiff with the support of the Impartial Chairman; ;

(l)    issuing an arbitration award requiring the Hotel to engage a specific industrial consultant to conduct an inspection of health and safety at the Hotel, in contravention of the Collective Bargaining Agreement. Pursuant to the 2006 Memorandum of Understanding, the parties were to agree on a consultant from a list of consultants. However, the list consisted of merely one consultant. The Impartial Chairperson's selection of one consultant was spurious, and the Chairperson ordered the Hotel to provide access and to pay the consultant. This was done without the proper notice as required by the contract and many inspectors were sent, completely outside the realm of the normal procedure for most hotels, proving that the Union was acting in a deliberate and willful manner to harass and

discriminate against Plaintiff;

(m)    The Union has consistently and persistently acted in a demeaning

nature towards Plaintiff, they have called meetings with Plaintiff,

made Plaintiff wait for 2 hours and then dismissed Plaintiff without

further explanation or justification. On one specific occasion,

October 15, 2007, Rolando Ruiz, a union representative, came to

the hotel with another union representative and Ylonka, Ana and

Elizabeth, looking for Hana and Robert Chen to discuss a

complaint which alleged that they were told that if they did not

clean a specific number of rooms per shift, their pay would be

docked. Ylonka also alleged that she had already been docked.

Without inquiring into the facts, the Union ordered that we pay her

the alleged time without determining if there had been some type of

error. Mr. Chen questioned how Elizabeth's card was punched on a

day that she was not at work, and, without any investigation, the

Union accused Plaintiff of tampering with the card. Every issue

raised by Plaintiff, i.e. that the housekeepers were not performing

to hotel standards, not handling their time effectively, failing to

adhere to the New schedules, were not only ignored by the Union

but the union representative shouted at the office employees, told

them that they were stupid, that they should shut their mouths and

that the Union representatives could say whatever they wanted to

the office employees. He physically raised his hands and pointed

his fingers into the office employees' faces and screamed and made a scene both in the office and in the lobby and refused, when courteously asked to lower their voices, to stop screaming and speaking in a demeaning manner. The union representatives told the Plaintiff that the housekeepers had a right to waste time by talking when they were supposed to be working and asked for information which had nothing to do with the issues that they had arrived to discuss. This incident caused alarm for the hotel guests as the office is situated above the lobby and there was much yelling and screaming. This is clearly discrimination and harassment as it is doubtful that this behavior occurs in other hotels.

(n)    the Impartial Chairperson has failed to timely schedule a hearing when Plaintiff files a grievance as against the Union.  On or about September 25, 2007, Plaintiff filed a grievance against the Union for trespass onto Hotel property by Union officials. The Impartial Chairperson, despite ample opportunity to do so, has failed to date to schedule or hold a hearing.

(o)    the Impartial Chairperson has issued an arbitration award regarding alleged health and safety violations without holding a hearing and in contravention of the Collective Bargaining Agreement;

(p)    During the 9/11 tragedy, the union employees begged Plaintiff not to lay them off despite the fact that the hotel's business had

declined. Plaintiff agreed to allow the employees to work four days but be paid for five days, with the understanding that when business was better, the employees would pay back the monies for the days during which they did not work. This money was never paid back and due to the Me Too Agreement, Plaintiff had to stop a case commenced to recover those monies. However, though Plaintiff complied with the Me Too Agreement, the union has never done so.

3.    In addition, the Union has initiated spurious and entirely frivolous investigations intended (I) to unfairly burden the Hotel and its managers to produce voluminous business records; (ii) to gain forcible entry into areas of the Hotel reserved for guests and service areas, steam rooms, telephone rooms and storage rooms, for reasons having nothing to do with collective bargaining but which are intended to harass and embarrass Plaintiff and to unlawfully disrupt business operations.

4.    Under the guise of "investigation" the Union has refused to acknowledge the Plaintiff's reasonable security procedures and protocol implemented by the Plaintiff to protect the safety and welfare of the guests and employees by: (I) refusing to sign in before entering the non-public areas of the Hotel; (ii) refusing to arrange visits with management in advance as required by the collective bargaining agreement; (iii) trespassing on to the Hotel premises and guest rooms; (iv) intentionally disrupting the Hotel's business operations thereby forcing management to call for police intervention; and (v) intimidating the Hotel's employees, guests and Plaintiff by publicly challenging the authority and disobeying the requests of the Hotel management to adhere to its

security procedures.

5.    Moreover, the Union has refused to acknowledge the violent or criminal propensities of several employee Union members in the context of proceedings and disciplinary action, and have encouraged and sponsored criminal activity on the Hotel's premises by wrongfully shielding these violent employees from disciplinary action measures and affirmatively assisted them in bringing actions against the Hotel.

## PARTIES

**(I)  Plaintiff**

6.    Alphonse Hotel Corp. d/b/a The Carter Hotel (hereinafter referred to as the "Hotel") is a corporation organized and existing under the laws of the State of New York and operates the Carter Hotel at 250 West 43rd Street, New York, New York. Plaintiff Tran Dinh Truong is an individual and the principal owner and manager of the Hotel, and resides at 250 West 43rd Street, New York, New York.  Mr. Truong is a naturalized United States citizen who emigrated to this country from South Vietnam in 1975.

7.    For many years prior to April 1975, Mr. Truong was the Chief Executive Officer, chairman and principal owner of Vishipco Line, the largest shipping company in South Vietnam which owned and operated a fleet of twenty-four (24) commercial merchant ships, hundreds of trucks, numerous hotels, stevedores and various shipping related facilities.

8.    As the communist regime began to infiltrate South Vietnam, Mr. Truong used his position to dispatch the company's vessels and other assets to locations where American civilians and United States military forces were trapped in order to

rescue them; even as Saigon fell to the communists on April 30, 1975, Mr. Truong used his position to assist United States military which had withdrawn its support and ordered its troops and civilian personnel to evacuate South Vietnam which was under massive artillery attacks that isolated and trapped many American soldiers and civilians in the troubled areas of South Vietnam.

9.     Mr. Truong was responsible for evacuating more than 8,300 people, including Americans, allies, Koreans and Vietnamese to safe international ports located in Hong Kong, Subic Bay, Guam and Singapore at his own cost and at great personal danger having to leave many of his family members behind.

10.     Mr. Truong's own immigration from Vietnam was extremely difficult, having traveled on the same vessels with thousands of other Vietnamese nationals and Americans in order to flee the communists.  Having been advised by the United States Embassy in Saigon that his life and that of his relatives were in great danger, Mr. Truong evacuated to the Philippines where he was eventually flown to the safety of the United States where he relocated to New York City and became a hotel operator in the late 1970s.  As the result of his assistance to the United States government, many of Mr. Truong's family members were persecuted and ultimately murdered by the communists.

11.     Mr. Truong has continued his philanthropy in the United States.  On or about September 13, 2001, Mr. Truong donated Two Million Dollars ($2,000,000.00) to the September 11th Fund operated by the Red Cross.  He was one of the first to make a major contribution to the Fund, and played a pivotal role in the emotional, physical and economic recovery from the disaster.

## ii. The Defendants

12.     At all times hereinafter mentioned, Defendant New York Hotel & Motel Trades Council, AFL-CIO, was and remains a labor organization comprised of members of the hotel and motel trades, organized under the laws of the State of New York, and is constituted for the purposes, in whole or in part, of collective bargaining or of dealing with employers concerning grievances and terms and conditions or employment.

13.     At all times hereinafter mentioned, Defendant Office of the Impartial Chairman is a standing organization of labor arbitrators empaneled to hear disputes arising out of the Industry Wide Agreement ("IWA").

14.     At all times hereinafter mentioned, Defendant Peter Ward was and is an individual and president of Defendant New York Hotel & Motel Trades Council, AFL-CIO, and, upon information and belief, resides in the State of New York.

## AS AND FOR A FIRST CAUSE OF ACTION

15.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 14 as though fully pleaded herein.

16.     That the Plaintiff is a member of a protected class by virtue of his ethnicity and race.

17.     That the various actions and investigations conducted by Defendants were undertaken solely to harass, embarrass and harm Plaintiff, due to his ethnicity and race and the Defendants have attempted to take advantage due to the fact that there are some language difficulties.

18.     That the acts of Defendants constituted an unjust discrimination as against the Plaintiff in his civil rights because of his race, color and national origin, and

such acts were in violation of the express provisions of §8-107 of the Administrative Code of the City of New York.

19. As a direct and proximate cause of said unlawful activities, Plaintiff has suffered the indignity of discrimination, the invasion of his rights to be free from discrimination, and great humiliation, which has manifested in physical illness and emotional stress.

20. As a further direct and proximate result of said unlawful activities, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety, painful embarrassment among his employees, damage to his good reputation, disruption of his private and personal life, and loss of enjoyment of the ordinary pleasures of everyday life.

21. That Plaintiff demands judgment as against the Defendants in an amount to be determined by this Court, but in no event less than Five Million Dollars ($5,000,000.00).

## AS AND FOR A SECOND CAUSE OF ACTION

22. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 21 as though fully set forth herein.

23. That the Plaintiff is a member of a protected class by virtue of his national origin and race.

24. That the various actions and investigations conducted by Defendants were undertaken solely to harass, embarrass and harm Plaintiff, due to his national origin and race.

25. That the acts of Defendants constituted an unjust discrimination as against the Plaintiff in his civil rights because of his race, color and national origin, and

such acts were in violation of the express provisions of the New York State Executive Law Article 15, the Human Rights Law.

26.    As a direct and proximate cause of said unlawful activities, Plaintiff has suffered the indignity of discrimination, the invasion of his rights to be free from discrimination, and great humiliation, which has manifested in physical illness and emotional stress.

27.    As a further direct and proximate result of said unlawful activities, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety, painful embarrassment among his employees, damage to his good reputation, disruption of his private and personal life, and loss of enjoyment of the ordinary pleasures of everyday life.

28.    That Plaintiff demands judgment against the Defendants in an amount to be determined by this Court but in no event less than Five Million Dollars ($5,000,000.00).

## AS AND FOR A THIRD CAUSE OF ACTION

29.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 28 as though fully set forth herein.

30.    That the forgoing actions constitute extreme and outrageous conduct.

31.    That it was and is the Defendants' intent to cause severe emotional distress.

32.    That the conduct caused Plaintiff injury.

33.    That the Plaintiff has suffered severe emotional distress as a result.

34.    That Plaintiff demands judgment against the Defendants in an amount to be determined by this Court but in no event less than Five Million Dollars

($5,000,000.00).

WHEREFORE, Plaintiff demands:

1.    Judgment on the first cause of action in the amount of Five Million Dollars ($5,000,000.00); and

2.    Judgment on the second cause of action in the amount of Five Million Dollars ($5,000,000.00); and

3.    Judgment on the third cause of action in the amount of Five Million Dollars ($5,000,000.00).

Dated: New York, New York
            November 21, 2007

                                                            Yours, etc.,

                                                            CALABRO & ASSOCIATES, P.C.
                                                            Attorneys for Plaintiff
                                                            1412 Broadway, Suite 1504
                                                            New York, New York 10018
                                                            (646) 688-6095

                                                            By: _____
                                                                    Gregory G. Calabro, Esq.


TO:    **NEW YORK HOTEL & MOTEL TRADES COUNCIL, AFL-CIO**
          709 Eighth Avenue
          New York, New York 10036

          **THE OFFICE OF THE IMPARTIAL CHAIRMAN**
          321 West 44th Street, Suite 400
          New York, New York 10036

          **PETER WARD**
          709 Eighth Avenue
          New York, New York 10036

10/25/2007 15:53 FAX                                                    ☒017/017

## VERIFICATION

STATE OF NEW YORK           )
                            : ss.:
COUNTY OF NEW YORK          )


TRAN D. TRUONG, being duly sworn, deposes and says:

I am the Plaintiff in this proceeding, both individually and on behalf of Plaintiff Alphonse Hotel Corp. I have read the foregoing Summons and Complaint and know the contents thereof. The contents thereof are true to my knowledge, except as to matters stated therein to be alleged upon information and belief and as to those matters I believe them to be true.

_TRD_ ~~~~~~~~~~~~~~~~

_____
TRAN D. TRUONG

SUPREME    COURT  OF THE STATE OF NEW YORK
STATE OF NEW YORK, COUNTY OF NEW YORK

Index No.                  Year

TRAN DINH TRUONG individually and on behalf of
ALPHONSE HOTEL CORP. d/b/a THE HOTEL CARTER,

Plaintiff,

-against-

NEW YORK HOTEL & MOTEL TRADES COUNCIL,
AFL-CIO, THE OFFICE OF THE IMPARTIAL CHAIRMAN, and PETER WARD
Defendants.

# SUMMONS & COMPLAINT

CALABRO & ASSOCIATES, P.C.

Attorney(s) for    Plaintiff

Office and Post Office Address, Telephone

1412 BROADWAY
SUITE 1504
NEW YORK, NY 10018
(646) 688-6095

To

Signature (Rule 130-1.1-a)

Print name beneath    Katherine Helbig, Esq.

Service of a copy of the within is hereby admitted

Attorney(s) for    Dated:

PLEASE TAKE NOTICE:

☐ NOTICE OF ENTRY

that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within named court on

☑ NOTICE OF SETTLEMENT

that an order
will be presented for settlement to the HON.
within named Court, at
on                              at              M.

Dated:

of which the within is a true copy
one of the judges of the

Yours, etc.

CALABRO & ASSOCIATES, P.C.

# Exhibit B

Westlaw.

Not Reported in F.Supp.2d                                                                     Page 1
Not Reported in F.Supp.2d, 2004 WL 414836 (S.D.N.Y.), 174 L.R.R.M. (BNA) 2690
(Cite as: Not Reported in F.Supp.2d)

**H**Alphonse Hotel Corp. v. New York Hotel & Motel
Trades Council, AFL-CIO
S.D.N.Y.,2004.

United States District Court,S.D. New York.
ALPHONSE HOTEL CORP. et al., Plaintiffs,
v.
NEW YORK HOTEL & MOTEL TRADES
COUNCIL, AFL-CIO, Defendant.
**No. 03 Civ.1992(DC).**

March 5, 2004.

Levy, Boonshoft & Lichtenberg, LLP, By: <u>David M.
Levy</u>, New York, New York, for Plaintiffs.
Pryor Cashman Sherman and Flynn, By: <u>Barry N.
Saltzman</u>, New York, New York, for Defendant.

*MEMORANDUM DECISION*

<u>CHIN</u>, J.
*1 In this action brought under Sections 8 and 303 of
the Labor Relations Management Act of 1947, <u>29
U.S.C. § 158(b)</u> and <u>§ 187</u> (the "LMRA"), plaintiffs
**Alphonse** Hotel Corp., doing business as the
**HotelCarter** (the "Hotel"), Tran Dinh Truong
("Truong"),<sup>FN1</sup> and Elaine Nguyen ("Nguyen") allege
that defendant New York Hotel & Motel Trades
Council, AFL-CIO (the "Union"), engaged in unfair
labor practices and intentional infliction of emotional
distress and seek rescission of a "Me Too" agreement
binding the Hotel to the terms of an industry-wide
collective bargaining agreement. The Union moves
for judgment on the pleadings dismissing the
complaint, pursuant to <u>Fed.R.Civ.P. 12(c)</u> on the
grounds of lack of subject matter jurisdiction and
failure to state a claim. For the reasons set forth
below, the motion is granted.

> FN1. The motion papers and pleadings refer
> to Tran Dinh Truong as both "Tran" and
> "Truong." I will refer to him as "Truong" in
> this Memorandum Decision.

*BACKGROUND*

*I. The Facts*

The facts alleged in the complaint are assumed to be

true for purposes of this motion.

*A. The Collective Bargaining Agreement (the
"CBA")*

**Alphonse** Hotel Corporation operates and does
business as the **HotelCarter**.<sup>FN2</sup> (Compl.¶ 7). Truong
is the "principal owner and general manager" of the
Hotel. (*Id.* ¶ 8). Nguyen is the front desk coordinator
of the Hotel.(*Id.* ¶ 13). The Union is a labor
organization representing employees in the New
York City hotel and restaurant industry. (*Id.* ¶ 14).
From 1985 through 1994, the Hotel was a member of
the Hotel Association of New York City, Inc., which
was a party to an industry-wide CBA with the Union.
(*Id.* ¶ 7). In 1995, on behalf of the Hotel, Truong
signed a "Me Too" agreement binding the Hotel to
the CBA. (Ans.¶¶ 7, 54, Exh. B2). The parties agree
that the Hotel was bound by the CBA from 1995 until
December 21, 2001, when another "Me Too"
agreement was signed, binding the Hotel to the CBA
through June 30, 2006.(*Id.* ¶ 6; Ans. ¶¶ 7, 54, Exh. A,
B1).

> FN2. Plaintiff refers to the hotel as the
> "Hotel Carter" in the caption but refers to it
> as the "Carter Hotel" in the complaint.

Section 26 of the CBA contains an arbitration clause
providing that:
All complaints, disputes or grievances arising
between the parties hereto involving questions or
interpretation or application of any clause of this
Agreement, or any acts conduct [sic] or relations
between the parties, directly or indirectly, which shall
not have been adjusted by and between the parties
involved shall be referred to a permanent umpire to
be known as the Impartial Chairman, and his decision
shall be final and binding upon the parties hereto.

(Ans.¶ 55, Exh. A).

*B. The Unfair Labor Practices Claim*

Beginning in 1999, the Union began a "campaign to
preserve the employment rights" of several Hotel
employees who were being disciplined by Hotel
management for "aggressive, hostile and sometimes
criminally violent conduct" aimed at the Hotel's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 414836 (S.D.N.Y.), 174 L.R.R.M. (BNA) 2690
(Cite as: Not Reported in F.Supp.2d)

Page 2

managers, guests, and workers. (Compl.¶ 18). The Union "guided and actively assisted" these employees to file "preemptive frivolous" grievance proceedings against the Hotel to "insulate" the employees from disciplinary action or discharge. (*Id.*).

**\*2** Beginning in late 1996, Hotel employees and Union members Hamidou Diallo and Ali Dzairi were reprimanded by the Hotel for theft of cash from the Hotel's registry, theft of guest room folios, and fraudulent and unauthorized use of guests' credit card imprints. (*Id.* ¶ 19). The Hotel notified the Union of the employees' conduct and advised them of the Hotel's intent to discharge the employees. (*Id.*). The Union assisted Diallo and Dzairi in filing grievances against the Hotel seeking back wages. (*Id.* ¶ 20). Diallo and Dzairi subsequently made "physical threats" of violence against Truong and Nguyen, Hotel co-workers, guests, and others on the Hotel's premises. (*Id.* ¶ 21). The Hotel notified the Union of these threats. (*Id.*).

The Hotel alleges that the Union ignored its requests for assistance in addressing Diallo's and Dzairi's hostile and violent conduct. (*Id.* ¶ 23). On July 20, 1999, Diallo fatally stabbed Dzairi at the Hotel. (*Id.* ¶ 24).

Plaintiffs further allege that the Union additionally assisted "insubordinate and violent" employees, like former employee Hassini Bangoura and current employee Frank Davis in filing "bogus claims for back wages" after learning of the Hotel's claims against them but before the Hotel could initiate grievance proceedings against them. (*Id.* ¶¶ 25-26). In addition, plaintiffs allege that Davis perjured himself while serving as a paid witness in his capacity as a Union employee delegate for employee grievance proceedings. (*Id.* ¶ 27). The Union allegedly threatened Truong and Nguyen with "big problems with the Union," if Davis were terminated or punished. (*Id.*).

The Union has additionally demanded of plaintiffs "many years" of business records "under the guise of an 'investigation,' " which plaintiffs allege are irrelevant. (*Id.* ¶¶ 30-31). In December 2002, the Union began conducting "raids" of the Hotel, which have included "unauthorized and forcible access to secure areas such as the Hotels [sic] steam room, storage rooms and Hotel guest rooms." (*Id.* ¶ 32) (original emphasis omitted).

## C. *The Rescission Claim*

Plaintiffs allege that the Union coerced Bangoura and other employees, including Xuan Nguyen, to file grievances against the Hotel and demand "exorbitant" settlement sums to force the Hotel to sign the "Me Too" agreement. (*Id.* ¶¶ 39-40). Plaintiffs also allege that the Union induced the Hotel to execute the agreement by falsely representing at the time of the Bangoura settlement, on or about December 21, 2001, that the Union would (1) cease endorsing and assisting Union member employees in bringing claims that were "not supported by verifiable facts and evidence, or otherwise colorable"; (2) cease endorsing the "palpably false and paid for testimony of ... Davis"; (3) "recognize the serious safety issues" at the Hotel; and (4) not discriminate against the Hotel. (*Id.* ¶¶ 41, 43; Ans. ¶¶ 29, 62).

## D. *The Intentional Infliction of Emotional Distress Claim*

**\*3** Truong and Nguyen allege that the Union's "preemptive grievances" designed to "insulate" employees from disciplinary action, the Hotel raids, and the "threat[s][of] reprisal" should the Hotel discipline or terminate Davis have caused severe emotional distress and physical injury to Truong and Nguyen. (*Id.* ¶¶ 47-49).

## II. *Procedural History*

Plaintiffs filed this action on March 21, 2003, alleging unfair labor practices, seeking rescission of the "Me Too" agreement, and alleging intentional infliction of emotional distress. The Union now moves for judgment on the pleadings dismissing the complaint, pursuant to Fed.R.Civ.P. 12(c).

## DISCUSSION

The Union moves to dismiss the unfair labor practices claim for lack of subject matter jurisdiction, the rescission claim for lack of subject matter jurisdiction and failure to state a claim, and the intentional infliction of emotional distress claim for failure to state a claim. Moreover, the Union contends that the complaint should be dismissed in its entirety because the CBA's arbitration provision requires plaintiffs to arbitrate their claims.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 3
Not Reported in F.Supp.2d, 2004 WL 414836 (S.D.N.Y.), 174 L.R.R.M. (BNA) 2690
**(Cite as: Not Reported in F.Supp.2d)**

I reject the Union's argument that this Court lacks subject matter jurisdiction under Sections 8 and 303 of the LMRA. Nonetheless, the complaint must be dismissed because plaintiffs are required to arbitrate their claims pursuant to the CBA.

### I. *Subject Matter Jurisdiction*

The Union contends that this court lacks subject matter jurisdiction over the unfair labor practices claim, based on Section 8 of the LMRA, on the ground that the National Labor Relations Board (the "NLRB") has exclusive jurisdiction over claims deriving from this section and that plaintiffs' unfair labor practices claim does not qualify for the jurisdictional carve-out embodied in Section 303 of the LMRA, 29 U.S.C. § 187. I disagree.

#### A. *Unfair Labor Practices*

Plaintiffs allege as the bases for federal jurisdiction LMRA Section 8(b)(1), (4), and (6), 29 U.S.C. §§ 158(b)(1), (4), and (6), and LMRA Section 303(a) and (b), 29 U.S.C. §§ 187(a) and (b). As a general rule, "when an activity is arguably subject to [§ ] 7 or [§ ] 8 of the [LMRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board...."*San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 245 (1959); see also Vaca v. Sipes, 386 U.S. 171, 179 (1967); Betal Envtl. Corp. v. Local Union Number 78, Asbestos Lead & Hazardous Waste Laborers, 123 F.Supp.2d 156, 159 (S.D.N.Y.2000).* Congress, however, has carved out exceptions to the NLRB's exclusive jurisdiction, including the grant of federal jurisdiction contained in Section 303, 29 U.S.C. § 187, for those injured by a violation of Section 8(b)(4), 29 U.S.C. §§ 158(b)(4).*See Betal Envtl. Corp., 123 F.Supp.2d at 159.*

Plaintiffs argue that the Union's alleged conduct violates Section 8(b)(4)(ii)(A), 29 U.S.C. § 158(b)(4)(ii)(A), thereby conferring federal jurisdiction over the unfair labor practices claim. (Pl.Mem.8-9). The section reads in pertinent part:
\*4 It shall be an unfair labor practice for a labor organization or its agents ... to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is ... forcing or requiring any employer

or self-employed person to join any labor or employer organization....

29 U.S.C. § 158(b)(4)(ii)(A).

Plaintiffs allege that the Union's conduct in assisting Hotel employees in filing "frivolous" grievance claims and demanding "exorbitant" settlement sums was aimed at forcing plaintiffs to execute the "Me Too" agreement. (Compl.¶¶ 39-40). In addition, the complaint alleges that, in an effort to force execution of the "Me Too" agreement, the Union falsely represented to plaintiffs that it would: (1) cease endorsing and assisting Union member employees in bringing claims that were "not supported by verifiable facts and evidence, or otherwise colorable"; (2) cease endorsing the "palpably false and paid for testimony of ... Davis"; (3) "recognize the serious safety issues" at the Hotel; and (4) not discriminate against the Hotel. (*Id.* ¶¶ 41, 43; Ans. ¶¶ 29, 62).

Plaintiffs' allegations are sufficient to bring this case within Section 8(b)(4)(ii)(A), 29 U.S.C. § 158(b)(4)(ii)(A). While not specifically stating that the Union acted with the object of "forcing or requiring [plaintiffs] to join ...*[an] employer organization,"* the complaint, in effect, alleges such conduct. *Id.* (emphasis added). The complaint plainly alleges that the Union's conduct was aimed at "forcing" plaintiffs to execute the "Me Too" agreement, which bound the Hotel to the industry-wide CBA. (Compl.¶¶ 39-41). Forcing the Hotel to assume the CBA was, in effect, the equivalent of forcing it to become part of an industry-wide employer organization. At this early juncture in the case, I am required to construe the complaint in favor of plaintiffs, and therefore I conclude that the alleged conduct qualifies under 29 U.S.C. § 158(b)(4).

#### B. *State Law Claims*

The Court has supplemental jurisdiction over plaintiffs' claims for rescission and intentional infliction of emotional distress. *See* 28 U.S.C. § 1367(a).

### II. *Arbitration*

Although this Court has subject matter jurisdiction over plaintiffs' claims, the complaint must be dismissed because Section 26 of the CBA,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 414836 (S.D.N.Y.), 174 L.R.R.M. (BNA) 2690
(Cite as: Not Reported in F.Supp.2d)

incorporated by reference in the "Me Too" agreement, requires plaintiffs to arbitrate these claims.

### A. *Unfair Labor Practices*

Plaintiffs allege that the Union violated 29 U.S.C. § 158(b)(1) and (b)(4) by engaging in unfair labor practices. It is conceded that during the relevant time period from late 1996 through 2003, the Hotel was bound by the terms of the industry-wide CBA. (Compl. ¶¶ 6, 7; Ans. ¶¶ 7, 54, Exhs. A, B1, B2). The CBA includes a provision requiring the parties to submit to arbitration, *inter alia,* "[a]ll complaints, disputes or grievances arising between the parties hereto involving ... any acts conduct [sic] or relations between the parties, directly or indirectly."(Ans.¶ 55, Exh. A).

**\*5** The provision's broad language clearly applies to plaintiffs' claims pursuant to 29 U.S.C. § 158(b)(1) and (b)(4). In *Interstate Brands Corp. v. Bakery Drivers & Bakery Goods Vending Machs., Local Union No. 550,* 167 F.3d 764, 766-68 (2d Cir.1999), the Second Circuit held that claims pursuant to 29 U.S.C. § 158(b) were subject to arbitration based on a collective bargaining agreement provision nearly identical to the one in this action.[FN3] In addition to requiring arbitration of disputes "involving questions of interpretation or application" of the agreement, the clause required arbitration of "any act or conduct or relation between the parties ... directly or indirectly."*Id.* at 765.The arbitration clause in the instant action, nearly identical in its breadth, also requires arbitration of plaintiffs' unfair labor practices claims.

> FN3. The collective bargaining agreement clause in *Interstate* required the parties to arbitrate:
> all complaints, disputes or grievances arising between them involving questions of interpretation or application of any clause or matter covered by this Agreement, or any act or conduct or relation between the parties hereto, directly or indirectly.
> *Interstate,* 167 F.3d at 765.

### B. *Rescission*

Plaintiffs also seek rescission of the "Me Too" agreement binding them to the CBA, on the grounds that their execution of the agreement was fraudulently induced. The Union argues that the claim for rescission is subject to arbitration because the rescission claim is based on interpretation of the CBA's terms and, alternatively, because the claim falls within the arbitration clause's broad scope.

Without deciding whether the rescission claim is based on the CBA, I conclude that the claim is subject to arbitration because it clearly falls within the arbitration clause's purview. The arbitration clause clearly applies to disputes other than those involving the CBA's terms, including plaintiffs' claim for rescission of the "Me Too" agreement based on fraudulent inducement. See*Interstate,* 167 F.3d at 766-68 (applying identical arbitration clause to non-contractual claim). Accordingly, this claim is also subject to arbitration, pursuant to the CBA.

### C. *Intentional Infliction of Emotional Distress*

Truong and Nguyen further allege intentional infliction of emotional distress based on the events underlying their unfair labor practices claim, pursuant to 29 U.S.C. § 158(b).

Like the rescission claim, the claim for intentional infliction of emotional distress plainly falls within the broad scope of the CBA's arbitration clause. As discussed above, that the claim is extra-contractual does not vitiate the clear language of the arbitration provision. *Interstate,* 167 F.3d at 766-68. Moreover, the Second Circuit has held that tort claims are arbitrable.*Collins & Aikman Products Co. v. Building Sys., Inc.,* 58 F.3d 16, 23 (2d Cir.1995); *Interstate Brands Corp. v. Bakery Drivers & Bakery Goods Vending Machs., Local Union No. 550,* No. 96 Civ. 4454(SJ), 1998 WL 19974, at \*8 (E.D.N.Y. Jan. 20, 1998) (holding that tort claim pursuant to LMRA § 303 is arbitrable).

Apart from the strict terms of the arbitration clause, the claim for intentional infliction of emotional distress is subject to arbitration because, although styled in tort, the claim is inextricably involved with the CBA's terms. See*Dougherty v. American Tel. & Tel. Co.,* 902 F.2d 201, 204 (2d Cir.1990); *Allocco v. Dow Jones & Co., Inc.,* No. 02 Civ. 1029(LMM), 2002 WL 1402084, at \*3 (S.D.N.Y. June 27, 2002); *Dinger v. Anchor Motor Freight, Inc.,* 501 F.Supp. 64, 71 (S.D.N.Y.1980). The intentional infliction of emotional distress claim is predicated on allegations

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 414836 (S.D.N.Y.), 174 L.R.R.M. (BNA) 2690
(Cite as: Not Reported in F.Supp.2d)

Page 5

of the Union's misuse of the grievance and arbitration procedures and hotel visitation policies embodied in the CBA. The claim is not independent of the CBA, as plaintiffs contend. Accordingly, the claim for intentional infliction of emotional distress is dismissed for failure to arbitrate.

## CONCLUSION

*6 For the reasons set forth above, the Union's motion is granted and the complaint is dismissed in its entirety, without prejudice to the filing of arbitration proceedings. The Clerk of the Court shall enter judgment accordingly and this case shall be closed.

SO ORDERED.

S.D.N.Y.,2004.
Alphonse Hotel Corp. v. New York Hotel & Motel Trades Council, AFL-CIO
Not Reported in F.Supp.2d, 2004 WL 414836 (S.D.N.Y.), 174 L.R.R.M. (BNA) 2690

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit C



Not Reported in F.Supp.2d                                                                                          Page 1
Not Reported in F.Supp.2d, 2001 WL 959005 (S.D.N.Y.), 168 L.R.R.M. (BNA) 2154
(Cite as: Not Reported in F.Supp.2d)

New York Hotel & Motel Trades Council, AFL-CIO v. Alphonse Hotel Corp.
S.D.N.Y.,2001.

United States District Court, S.D. New York.
NEW YORK HOTEL & MOTEL TRADES
COUNCIL, AFL-CIO, Petitioner,
v.
ALPHONSE HOTEL CORP. d/b/a HotelCarter
d/b/a CarterHotel, Respondent.
No. 01 CV 0712(RCC).

Aug. 21, 2001.

*Opinion and Order*

CASEY, J.

I. Introduction

**\*1** Petitioner New York Hotel & Motel Trades Council, AFL-CIO ("Union" or "Petitioner"), brings this action pursuant to Section 301 of the Labor Management Relations Act and Section 9 of the Federal Arbitration Act seeking to confirm an arbitration award ("Award") issued by the Office of the Impartial Chairman, Arbitrator Elliot Shriftman ("Impartial Chairman"). Petitioner also seeks to enjoin the **Alphonse** Hotel Corp d/b/a **HotelCarter** d/b/a **CarterHotel** ("Hotel") from pursuing a lawsuit seeking back rent and the dispossession of Xuan Nguyen ("Nguyen"), a Union member and employee of the Hotel, and his family from their residence in the Hotel in the New York City Civil Court, Housing Part ("Housing Court") or any other forum. The Union also seeks costs and any other relief the Court deems appropriate.

The Hotel agreed by stipulation dated February 9, 2001 to adjourn the Housing Court proceeding until the Court issued a ruling on Petitioner's motion. Therefore, the question of the temporary restraining order and the preliminary injunction have been rendered moot. Before the Court is Petitioner's motion to confirm the Award. For the reasons set forth below, the Court grants the Union's motion to confirm.

II. Background

Nguyen is a Vietnamese immigrant who came to the United States in 1991 with the help of his brother-in-law, Tran Truong ("Truong"), who is also a Vietnamese immigrant and who is the owner of the Hotel. In 1992, Truong offered Nguyen and his family a residence in the Hotel. Nguyen accepted the offer and he and his family have maintained a residence at the Hotel since such time. (Pet'r Mem. at 3; Resp't Mem. at 3)

Nguyen began working for the Hotel as a bellboy at some point between 1993 and 1996. The Hotel claims that it has only employed Nguyen since 1996. (Resp't Mem. at 3). The Union claims that the Hotel has employed Nguyen since 1993, but paid him in cash up until 1996. (Pet'r Reply Mem. at 2).

As a bellboy, Nguyen was a Union member and was eligible for Union benefits. One of these benefits was Union representation in employer-employee grievances. At all relevant times, the Union and the Hotel were bound by the terms of a collective bargaining agreement between the Hotel and the Union (the "Agreement") entered into on June 26, and extended on January 30, 1990 and July 3, 1995. The Agreement includes an arbitration clause ("Arbitration Clause") which provides:
All complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by and between the parties involved shall be referred to a permanent umpire known as the Impartial Chairman and his decision shall be final and binding upon the parties hereto.
In the event of a willful default by either party in appearing before the Impartial Chairman, after due written notice shall have been given to the said party, the Impartial Chairman is hereby authorized to render a decision upon the testimony of the party appearing.

**\*2** (Agreement, § 26). The Agreement also includes a provision covering a situation in which the Hotel provides housing to its employees. Such section provides that "[i]n cases where the employer furnishes housing accommodations to its employees, it shall be allowed $2.50 per week for such housing

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 2
Not Reported in F.Supp.2d, 2001 WL 959005 (S.D.N.Y.), 168 L.R.R.M. (BNA) 2154
**(Cite as: Not Reported in F.Supp.2d)**

accommodations."(Agreement, § 10).

On October 12, 1999, the Union demanded an arbitration hearing in accordance with Section 26 of the Agreement to resolve a dispute over wages and benefits the Hotel allegedly had not paid Nguyen and that the Union felt were mandated under the agreement. The Union alleged that the Hotel had forced Nguyen "to work twelve (12) hours a day, seven days a week, without paying him for all hours worked."(Pet'r Mem. at 3). The Hotel disputed the issue and the Union requested an arbitration hearing.

Several hearings were scheduled and adjourned because the Hotel "was allegedly not prepared to proceed."(Pet'r Mem. at 3). On December 27, 2000, the Hotel served upon Nguyen a Notice of Petition and Petition-Non-Payment Dwelling ("Petition"), made returnable to the Housing Court, seeking to evict him and his family from the Hotel and to recover $76,000 in back rent for the time period beginning with February 1993. The Union sent a letter to the Hotel's attorney's on January 3, 2001 informing them that if the Hotel did not cease and desist from attempting to evict Nguyen from the Hotel, the Union would request an emergency hearing pursuant to its rights under the Agreement. The Hotel responded by letter on January 5, 2001, indicating that it would not attend an emergency hearing on the eviction issue. In response, the Union requested an emergency hearing.

On January 8, 2001, the Impartial Chairman notified the Hotel's attorneys that he scheduled an emergency hearing requested by the Union to discuss the eviction issue. Both the emergency hearing and the wage issue hearing were scheduled for January 17, 2001. Upon being informed, the Hotel submitted a letter dated January 8, 2001 to the Impartial Chairman, indicating that it would not appear at the emergency hearing on the eviction issue.

On January 17, 2001, the Hotel's attorneys attended the wage issue hearing before the Impartial Chairman but declined to take part in the eviction issue hearing in accordance with their intention as expressed in their January 8, 2001 letter. The Impartial Chairman proceeded with the hearing pursuant to the power granted him in the Arbitration Clause, and issued the Award directing the Hotel to cease and desist from taking any action in the Housing Court pending the Impartial Chairman's decision on the underlying grievances.

The Union seeks to confirm the Award of the Impartial Chairman. The Hotel argues that the housing dispute does not fall within the scope of the Impartial Chairman's authority and that the Court should set aside the Award as unauthorized.

### III. Discussion

The first issue the Court must decide is whether the Agreement requires the Hotel and the Union to arbitrate disputes of the kind at issue in this case. If so, the Supreme Court and the circuit courts have made clear that the federal judicial system is limited in its ability to intervene in an arbitrator's decision. "It is familiar law that the Federal Arbitration Act, 9 U.S.C. § 1 etseq. (1994) (Arbitration Act), expresses 'a liberal federal policy favoring arbitration agreements' and that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.' " *Louis Dreyfus Negoce S.A. v. Blystad Shipping and Trading Inc.*, 252 F.3d 218, 223 (2d Cir.2001) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)); seealso*Service Employees International Union v. Local 1199 N.E.*, 70 F.3d 647, 651 (1 st Cir.1995). In *AT & T Techs., Inc. v. Communications Workers of Am .*, 475 U.S. 643 (1986) the Supreme Court established a four part test to determine whether parties are required to arbitrate their dispute and clarified the principles set forth in the *Steelworkers Trilogy: Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564 (1960), *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960) and *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593 (1960). First, even though arbitration is favored by federal policy, it is a contractual issue and a party cannot be compelled to arbitrate unless it has agreed to do so. *AT & T Techs.*, 475 U.S. at 648 (1986) ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (quoting *Steelworkers*, 363 U.S. at 582);see*Louis Dreyfus Negoce S.A.*, 252 F.3d at 223 ("While federal policy generally favors arbitration, the obligation to arbitrate nevertheless remains a creature of contract.").

*3 Second, unless an agreement expressly states otherwise, the question of arbitrability is to be decided by the Court and not by the arbitrator. *AT & T Techs.*, 475 U.S. at 647. Third, when determining whether an agreement requires the parties to arbitrate, the Court may not consider or rule on the potential

Not Reported in F.Supp.2d                                                    Page 3
Not Reported in F.Supp.2d, 2001 WL 959005 (S.D.N.Y.), 168 L.R.R.M. (BNA) 2154
(Cite as: Not Reported in F.Supp.2d)

merits of the underlying claim. *Id.* at 649-650 ("[T]he union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator."); *Am. Mfg. Co.* 363 U.S. at 568, (footnote omitted) ("The courts, therefore, have no business weighing the merits of the grievance ... [T]he agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious."). Fourth, the presumption of arbitrability requires that a court confirm an arbitrator's award unless the court finds with "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."*Warrior & Gulf,* 363 U.S. at 582-583.

In order to determine arbitrability, the Court must first determine whether the arbitration clause is "broad" or "narrow." *SeeMehler v. Terminix Int'l Co., 205 F.3d 44, 49 (2d Cir.2000); Peerless Imps., Inc. v. Wine, Liquor & Distillery Workers Union Local One, 903 F.2d 924, 927 (2d Cir.1990); McDonnell Douglas Fin. Corp. v. Pa. Power Light Co., 858 F.2d 825, 832 (2d. Cir.1988).* If the clause is narrowly drawn, "the Court must determine whether the dispute is over an issue that 'is on its face within the purview of the clause,' or over a collateral issue that contains the arbitration clause."*Louis Dreyfus Negoce S.A.,* 252 F.3d at 223 (quoting *Rochdale Vill., Inc. v. Pub. Serv. Employees Union,* 605 f.2d 1290, 1295 (2d Cir.1979)). However, "where the arbitration clause is broad, 'there arises a presumption of arbitrability' and arbitration of even a collateral matter will be ordered if the claim alleged 'implicates issues of contract construction or parties' rights and obligations under it.' ' *Louis Dreyfus Negoce S.A., 252 F.3d at 223* (quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.,* 58 F.3d 16, 23 (2d Cir.1995).

In *AT & T Techs., Inc.,* the Supreme Court analyzed an arbitration clause that covered "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder ...," and held that such clause was broad and that in such a case the presumption of arbitrability was warranted, recognizing that "the greater institutional competence of arbitrators in interpreting collective-bargaining agreements, 'furthers the national policy of peaceful resolution of labor disputes and thus best accords with the parties' presumed objectives in pursuing collective bargaining.'*AT & T Techs.* 475 U.S. at 649-651,

(quoting *Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 371-372 (1984) (citation omitted)). The Supreme Court further held that "in the absence of any express provision excluding a particular grievance from arbitration ... only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."*Id.* at 649 (quoting *Warrior & Gulf,* 363 U.S. at 584-585). Here, the Arbitration Clause covers "[a]ll complaints, disputes or grievances arising between the parties ... involving questions or interpretation or application of any clause of [the] Agreement, or any acts, conduct or relations between the parties...." (Agreement, § 26). The Court finds that the Arbitration Clause in the instant action is broad.

*4 Here, because Nguyen is an employee and the Hotel furnishes him with housing accommodations, Section 10 clearly applies to him. Furthermore, as the housing dispute arises out of the application and interpretation of Section 10 of the Agreement and clearly involves relations between the parties, the dispute at issue must be submitted to arbitration in accordance with the Arbitration Clause. Accordingly, the Court may only deny Petitioner's motion to confirm the Award if there is clear evidence that the arbitrator overstepped his bounds in its issuance.

With respect to an arbitrator's authority, Title IX of the United States Code Service Section 10(a)(4) provides that an arbitrators award may be vacated "[w]here the [arbitrator] exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."*9 U .S.C.S. § 10(a)(4)(2001).* The Second Circuit has held that a court should "ask only 'whether the arbitrator's award draws its essence from the collective bargaining agreement, since the arbitrator is not free merely to dispense his own brand of industrial justice.' ' *Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Hollywood Heating & Cooling, Inc., 242 F.3d 366, 366 (2d Cir.2001)* (quoting *Wackenhut Corp. v. Amalgamated Local 515, 126 F.3d 29, 31 (2d Cir.1997))* (quotation marks and citation omitted). A court should "uphold arbitration awards as long as they have 'even barely colorable justification'... Courts must confirm even those awards it views as incorrect as long as they are 'plausibly grounded' in the parties' contract." *Local Union No. 38,* 242 F.3d at 366 (quoting *Local 97, Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power Corp., 196 F.3d 117, 125 (2d. Cir.1999)* (quotation marks and citation omitted).

Not Reported in F.Supp.2d                                                              Page 4
Not Reported in F.Supp.2d, 2001 WL 959005 (S.D.N.Y.), 168 L.R.R.M. (BNA) 2154
**(Cite as: Not Reported in F.Supp.2d)**

Accordingly, the Court must defer to the arbitrator in favor of coverage, particularly in a case such as this, which involves a broad arbitration clause.

Applying this highly deferential standard to the facts of this case, the Court finds that the Impartial Chairman did not exceed his authority in issuing the Award. Here the collective-bargaining agreement leaves no room for ambiguity. The Arbitration Clause clearly provides that the Impartial Chairman is entitled to issue an award upon the testimony of the appearing party if the opposing party willfully defaults its appearance. (Agreement, § 26). The Hotel's January 8, 2001 letter to the Impartial Chairman and failure to appear at the eviction issue hearing certainly demonstrates its willful default on the eviction issue hearing.

Applying the Second Circuit's "barely colorable" rule to determine whether the Impartial Chairman overstepped his bounds in issuing the Award, *Local Union No. 38,* 242 F.3d at 366, the Court finds that the Arbitration Clause clearly authorizes the Impartial Chairman to issue the Award in this situation. Accordingly, the Court finds that the Impartial Chairman did not overextend his authority in issuing the Award, and therefore grants the Union's motion to confirm the Award.

### Conclusion

**\*5** For the reasons stated above, Petitioner's motion to confirm the Award is granted.

S.D.N.Y.,2001.
New York Hotel & Motel Trades Council, AFL-CIO v. Alphone Hotel Corp.
Not Reported in F.Supp.2d, 2001 WL 959005 (S.D.N.Y.), 168 L.R.R.M. (BNA) 2154

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## OFFICE OF THE IMPARTIAL CHAIRPERSON

321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036

TEL: (212) 541-7212  FAX: (212) 541-9356

HOTEL ASSOCIATION OF NEW YORK CITY, INC.                    NEW YORK HOTEL & MOTEL TRADES COUNCIL

December 18, 2007

Clerk of the Court
U.S. District Court for the
 Southern District of New York
500 Pearl Street
New York, New York 10007

Re:  Tran Dinh  Truong, individually and on behalf of
Alphonse Hotel Corp. d/b/a The Carter Hotel v.
New York Hotel & Motel Trades Council, AFL-CIO
the Office of the Impartial Chairman and Peter Ward

Dear Clerk of the Court:

I am the Administrator of the Office of the Impartial Chairperson, a named defendant in the above-referenced action.  I hereby confirm that my Office consents to and joins in the removal of this action from the Supreme Court New York County to this Court.  I write this confirmation directly as our Office is currently in the process of retaining counsel.

Thank you for your consideration.

Very Truly Yours,

Lori Pobiner

cc:  Kane Kessler, P.C.
Pitta & Dreier LLP

{00314223.DOC;}