PITTA & DREIER LLP
499 Park Avenue
New York, NY 10022
(212) 652-3890
*Attorneys for Defendants*
*New York Hotel and Motel Trades Council, AFL-CIO*
*and Peter Ward*

Barry N. Saltzman (BS 6533)
Michael J. D'Angelo (MD 3030)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TRAN DINH TRUONG, individually and of
Behalf of ALPHONSE HOTEL CORP. d/b/a
HOTEL CARTER,

          Plaintiff,

  -against-                                Case No. 1:07-Civ-11383 (RJH)

NEW YORK HOTEL & MOTEL
TRADES COUNCIL, AFL-CIO, and
THE OFFICE OF THE IMPARTIAL
CHAIRMAN and PETER WARD,

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW OF THE
NEW YORK HOTEL & MOTEL TRADES COUNCIL,
AFL-CIO IN SUPPORT OF ITS MOTION FOR JUDGMENT
ON THE PLEADINGS PURSUANT TO FRCP 12(C)**

{00340097.DOC;}

## **TABLE OF CONTENTS**

FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

LEGAL STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I     THE COMPLAINT SHOULD BE DISMISSED AS PREEMPTED BY LMRA SECTION 301 AND THE IWA ARBITRATION PROVISIONS. . . . . . . . . . . . . . . . . . . . . . . . . 6

    II    PLAINTIFFS' HUMAN RIGHTS LAW CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    III   PLAINTIFFS' TORT CLAIM SHOULD BE DISMISSED AS PROCEDURALLY INADEQUATE AND SUBSTANTIVELY INSUFFICIENT . . . . . . . . . . . . . . . . . . . . . . . 10

          A.    The Complaint Fails to Allege Essential Elements of the Claim Against the Union. . . . . . . . . . . . . . . . . . . . . . . . . . . .10

          B.    The Complaint Fails to Allege Facts So Outrageous As To Go Beyond All Possible Bounds of Decency . . . . . . . . . . 11

    IV   PLAINTIFFS FAIL TO ALLEGE ANY MISCONDUCT BY DEFENDANT WARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

PITTA & DREIER LLP
499 Park Avenue
New York, NY 10022
(212) 652-3890
*Attorneys for Defendants*
*New York Hotel and Motel Trades Council, AFL-CIO*
*and Peter Ward*

Barry N. Saltzman (BS 6533)
Michael J. D'Angelo (MD 3030)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TRAN DINH TRUONG, individually and of
Behalf of ALPHONSE HOTEL CORP. d/b/a
HOTEL CARTER,

                    Plaintiff,

    -against-                        Case No. 1:07-Civ-11383 (RJH)

NEW YORK HOTEL & MOTEL
TRADES COUNCIL, AFL-CIO, and
THE OFFICE OF THE IMPARTIAL
CHAIRMAN and PETER WARD,

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW OF THE
## NEW YORK HOTEL & MOTEL TRADES COUNCIL,
## AFL-CIO IN SUPPORT OF ITS MOTION FOR JUDGMENT
## ON THE PLEADINGS PURSUANT TO FRCP 12(C)

      Defendants New York Hotel & Motel Trades Council, AFL-CIO ("Union") and Peter Ward submit this memorandum of law in support of their motion for judgment on the pleadings against Tran Dinh Truong and Alphonse Hotel Corp. d/b/a The Hotel Carter ("Plaintiffs") pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("FRCP"). Inasmuch as the pleadings themselves prove that no issue of fact or law supports Plaintiffs' complaint dated November 21, 2007 (the "Complaint"), judgment should be entered against Plaintiffs' claims

directly.[1]

## FACTS[2]

The Parties and Their Labor Agreement

The Union is a labor organization within the meaning of federal labor law, including 29 U.S.C. § 185, Section 301 of the Labor Management Relations Act ("LMRA"), representing over 20,000 working New Yorkers employed in the New York City hotel and hospitality industry. At all relevant times, Peter Ward has served as the Union's President. The terms and conditions of employment for employees represented by the Union appear in the Industry-Wide Agreement ("IWA") between the Union and the Hotel Association of New York City, Inc. ("Hotel Ass'n"), either directly for a hotel member of the Hotel Ass'n or indirectly by a "Me Too" Agreement which binds an individual hotel to the IWA's terms. (*Saltzman Aff.* ¶¶ 3, 5)

Plaintiff Alphonse Hotel d/b/a The Carter Hotel is an "employer" in interstate commerce within the meaning of federal labor law, including 29 U.S.C. §185, §301 of th LMRA. Mr. Tran Dinh Truong ("Tran") owns the Alphonse Hotel. Plaintiffs own and operate a hotel business at 250 West 43rd Street, New York, N.Y. 10036 (the "Hotel"). (*Saltzman Aff.* ¶ 3)

Since at least 1995, the Union and the Hotel have been bound to the IWA by successor Me Too Agreements. Plaintiffs signed the most recent such Me Too Agreement, dated March 16, 2006, binding them and the Union to the IWA from July 1, 2006 to and including June 30, 2012. (*Saltzman Aff.* ¶ 6 and Exhibit 2(G)). Among other terms, the IWA establishes wage rates

---

[1] By Answer and Counterclaims dated December 26, 2007 the Union commenced its action to confirm the arbitration awards discussed herein. This motion does not affect the Union's simple action to confirm arbitration awards. Should the Court grant the Union's instant motion, the Union hopes Plaintiffs' will reconsider their Answer to Counterclaim and obviate the need for further proceedings. Absent Plaintiffs' reconsideration, the Union will ask this Court for a conference to determine how best to proceed.

[2] The Facts derive from the pleadings with attachments and other sources permissible under FRCP 12(c). These documents and facts are summarized in the Affirmation of Barry N. Saltzman ("Saltzman Aff. ¶__"), submitted herewith.

and hours of work, terms of hiring and discharge and the Union's right to enter hotel premises to pursue Union business (*Saltzman Aff.* ¶ 7, Exhibit 2(E)). Significantly, Section 25 of the IWA expressly recognizes "[t]he opportunity to give and obtain employment without discrimination because of ... national origin... by the parties to this Agreement." (*Id.*) The Me Too Agreement also expressly incorporates the IWA arbitration provisions in full. Article 26 of the IWA provides, in relevant part:

> All complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by and between the parties involved shall be referred to a permanent umpire(s) to be known as the Impartial Chairperson, and his/her decision shall be final and binding upon the parties hereto.

(*Saltzman Aff.* ¶ 8). Thus, under the IWA, the Office of the Impartial Chairperson ("OIC") consisting of a permanent rotating panel of industry arbitrators, finally determines all issues between the Union and Plaintiffs. (*Id.*)

<u>This Court Rejects Plaintiffs' Prior Attempts to Avoid the Labor Agreement</u>

Pursuant to the 2001-2006 IWA, the Union had commenced a number of grievances against the Hotel upon the complaints of various employees alleging mistreatment, failure to pay wages, intimidation and wrongful discharge. Citing the Union's prosecution of these grievances, Plaintiffs attempted and failed to rescind their 2001 Me Too Agreement. *Alphonse Hotel Corp. v. New York Hotel & Motel Trades Council, AFL-CIO*, 2004 WL 414836 (SDNY) *aff'd without opinion*, No. 04-1757 (2d. Cir. 4/06/04). Judge Denny Chin of this Court rejected Plaintiffs' attempt. *Id.* Following hearings at which the Hotel appeared by counsel, or negotiations at which the Hotel was represented by counsel, the Union substantially prevailed in its positions. *See also, Alphonse Hotel Corp. v. New York Hotel & Motel Trades Council, AFL-CIO*, 2001 WL 959005 (SDNY) (Hotel enjoined from evicting Union member from residence in retaliation for

wage claims). But see, *Hamidou Diallo v. New York Hotel & Motel Trades Council, Mr. Truong D. Tran and Alphonse Hotel Corporation,* 05-Civ. 00430 (LAP) (Judge Loretta Preska denies Union's motion to dismiss employee claim for refusal to prosecute a grievance brought by Diallo, a convicted murderer). (*Saltzman Aff.* ¶¶ 9-12).

Plaintiffs Again Try to Avoid Their Labor Agreement

In or about December 20, 2006, the Union commenced three grievances against the Hotel alleging that the Hotel and Tran had intimidated and discharged housekeeping employees Ana Penna, Elizabeth Santiago and Glennys Castillo because of their demands for wages due them and support for the Union. Following hearings before the OIC from March through August 2007, at which all parties appeared by counsel, presented arguments, witnesses and evidence, and cross-examined witnesses under oath, the OIC rendered Awards No. 2007-26 (3/14/07), No. 2007-38 (6/27/07) and No. 2007-59 (8/14/07) (the "Awards"), sustaining the Union's grievances and ordering reinstatement with back-pay to the employees against the Hotel. (*Saltzman Aff.* ¶¶ 13-14).

Plaintiffs filed the Complaint on or about November 21, 2007, timely removed to this Court December 19, 2007 without challenge. As stated in the Joint Scheduling Order, Section 1 (c), dated March 11, 2008, copy attached to the Saltzman Aff. as Exhibit 6:

> Plaintiffs allege in Counts I and II that Defendants have violated the State and New York City Human Rights laws by discriminating against the employer hotel in enforcement of the collective bargaining agreement ("IWA") between the Union and the Alphonse Hotel Corporation d/b/a the Hotel Carter ("Hotel'), because the Hotel owner Tran Dinh Truong is Vietnamese. Plaintiffs allege in Count III that the Union's discriminatory enforcement of the IWA in arbitration at the OIC against the Hotel has intentionally inflicted emotional distress on Mr. Truong. Plaintiffs demand damages of $5 million for each count.

The Union filed its Answer and Counterclaims with exhibits on December 26, 2007, denying the elements of Plaintiffs' claims and any alleged wrongful conduct. Following conference on

March 14, 2008 this Court granted the Union leave to move for judgment pursuant to FRCP Rule 12(c).

## LEGAL STANDARD

Under FRCP Rule 12(c), a court must determine whether "the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Serv. Inc. v. Int'l Union. United Plant Guard Workers of Am.*, 47 F.3d 14, 16 (2d Cir.1995). The standard for deciding a motion for judgment on the pleadings under Rule 12(c) is the same as that for a motion to dismiss the complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994). *Ziemba v. Wezner et al.*, 366 F.3d 161, 163 (2d Cir.2004); *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir.2001).

A court should grant a Rule 12(c) or 12(b)(6) motion if it appears beyond doubt that the plaintiff can prove no set of facts in support of the complaint that would entitle him to relief. *Weixel et al. v. Board of Education et al.*, 287 F.3d 138, 145 (2d Cir.2002) (citations omitted). Courts must take as true the allegations contained in plaintiff's complaint and draw all reasonable inferences in favor of plaintiff. *Weinstein v. Albright*, 261 F.3d 127, 131 (2d Cir.2001); *D'Allesio v. New York Stock Exchange, Inc.*, 258 F.3d 93, 99 (2d Cir.2001). However, factual allegations must be strong enough to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). Conclusory statements do not suffice. *See, e.g. Hagie v. General Motors Corp.*, 1999 WL 2226072 (WDNY).

In deciding a Rule 12(c) motion, the Court considers all documents attached to or referenced in the complaint and documents that are in the plaintiffs' possession or that the plaintiffs knew of or relied on in bringing the suit. *Leonard F. v. Israel Discount Bank of New*

*York*, 199 F.3d 99, 107 (2d Cir.1999) (quoting *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991); *Hughes v. Lillian Goldman Family, L.L.C.*, 153 F.Supp.2d 435, 439 (S.D.N.Y.2001); Fed. R. Civ. P. 7(a); Fed. R. Civ. P. 10(c). Thus, in this case, the Court may consider in addition to all pleadings, the IWA, the Me Too Agreement signed by Plaintiffs, the Awards and Judge Preska's Order, all attached as Exhibits to the Saltzman Aff., all of which are referenced by or known to Plaintiffs.

## ARGUMENT

### I
### THE COMPLAINT SHOULD BE DISMISSED AS PREEMPTED BY LMRA SECTION 301 AND THE IWA ARBITRATION PROVISIONS

Claims however stylized which are inextricably intertwined with the terms of a collective bargaining agreement are subject to the arbitration provisions of that collective bargaining agreement and must be dismissed. *See, e.g., Dougherty v. American Tel. & Tel. Co.*, 902 F.2d 201, 204 (2d Cir. 1990); *Alphonse Hotel Corp. v. New York Hotel & Motel Trades Council, AFL-CIO*, 2004 WL 414836 (SDNY), *aff'd without opinion* No. 04-1757 (2d Cir. 4/06/04) (Plaintiffs' tort and unfair labor practice claims dismissed pursuant to Rule 12(c). *See also, Lingle v. Norge Div. of Magic Chef, Inc.* 486 U.S. 399, 405-05, 108 S.Ct. 1877 (1988) (preempting state claims "substantially dependant" upon labor agreement analysis); *Allis-Chalmers Corp. v Leuck*, 471 U.S. 202, 213, 105 S.Ct. 1904 (1985) (same).

Though stylized as discrimination claims under the New York State and City Human Rights Laws, Plaintiffs' First and Second Causes of Action clearly require interpretation and application of the IWA and Me Too Agreement, functions reserved exclusively to the OIC. The same holds true for Plaintiffs' tort claim alleged in the Third Cause of Action. All of the acts of which Plaintiffs complain allege wrongful application of the IWA and Me Too Agreements. *See,*

*Complaint* 2(a)(b) - forcing the Hotel to continue employment of workers; 2(c) - "frivolous grievance proceedings"; 2(d) - "violating the Me Too Agreement between the parties ..."; 2(e) - false testimony at arbitration; 2(f) - threats at negotiations; 2(g)-(l) - "false grievances" presented to the OIC; and 2(h), 3 and 4 - pursuing grievances at the Hotel. Section 26 of the IWA contains an extremely broad arbitration clause encompassing "any acts, conduct or relations between the parties, directly or indirectly ..." The U.S. Court of Appeals for the Second Circuit has held this language to sweep virtually all claims involving the IWA or Union conduct with a hotel within its ambit. *Pitta v. Hotel Association of New York City, Inc.* 806 F.2d. 419, 422-23 (2d Cir. 1986) ("No grievance - either specific or general - is excluded from this broad coverage," discussing predecessor provision to Section 26). All of Plaintiffs' claims admittedly involve, wages, work hours, Union visits to the Hotel, grievances and "acts, conduct or relations between the parties", directly, let alone indirectly. Indeed, Section 25 of the IWA expressly governs Plaintiffs' core contentions concerning national origin discrimination, and any other factor illegal under federal, state or local law, the very gravamen of Plaintiffs' First and Second Causes of Action. (*Saltzman Aff.* ¶ 8). Inasmuch as the Union and Plaintiffs committed all their conduct and disputes to arbitration by signing the Me Too Agreement, Plaintiffs can not now divert those disputes from their proper forum by the artifice of forced pleading. *See, e.g., Interstate Brands Corp. v. Bakery Drivers & Bakery Goods Vending Machines, Local Union No. 550,* 167 F.3d 764 (2d Cir. 1999); *Alphonse Hotel Corp., supra; Alphonse Hotel Corp. v. New York Hotel & Motel Trades Council, AFL-CIO,* 2001 WL 959005, *supra,* (eviction claim falls well within IWA arbitration requirements).

Plaintiffs' attempts to evade their arbitral forum are in fact doomed not only by the express language of the agreement they signed, but by the failure of their strikingly similar effort to do so only a few years previously before Judge Chin of this Court. *Alphonse Hotel Corp.,*

{00340097.DOC;}                              7

2004 WL 414836, *supra.*. In that case, as here, Plaintiffs recited a litany of alleged wrongful grievances and Union misconduct which they claimed violated the LMRA and constituted intentional infliction of emotional distress. Judge Chin granted the Union judgment on the pleadings, holding all Plaintiffs' claims preempted by LMRA Section 301 and the very broad arbitration provisions of the IWA. Plaintiffs now ask this Court to essentially reverse itself three years later. For the reasons set forth above and in Judge Chin's decision, Plaintiffs' duplicative baseless efforts should again be denied.

## II
## PLAINTIFFS' HUMAN RIGHTS LAW CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Even if Plaintiffs' claims could somehow escape direct precedent of this Court on undisputed contract arbitration language, the First and Second Causes of Action alleging anti-Vietnamese discriminatory application of the IWA by the Union fail to state a claim under State and local law and, therefore, must be dismissed for that reason as well.

Section 296(1) of the New York Executive/Human Rights Law provides in relevant part that:

> "It shall be an unlawful discriminatory practice:
> ...
> (c) For a labor organization, because of ... national original ... of any individual, to exclude or to expel from its membership such individual or to discriminate in any way against any of its members or against any employer or any individual employed by an employer."

Section 8-107 of the City Human Rights Law contains a nearly identical prohibition.

In *Joseph A. Gomez v. New York Executive Dep't. Div. of Human Rights*, 122 A.D. 2d 337, 504 NYS2d 307 (3d Dept. 1986), the State Appellate Division, which reviews decisions of the State's Division of Human Rights, affirmed the State agency's determination that the State's Human Rights Law did not cover alleged discrimination by a union against an employer. In that

case, plaintiff alleged that the union discriminated against him with respect to a collective bargaining agreement with his company because of his Cuban national origin. Both the State Division and the New York Supreme Court dismissed the employer's claim. Upholding the dismissal for lack of jurisdiction, the Appellate Division construed the words "against any employer" to relate to the earlier membership prohibitions. The Appellate Division explained:

> "Petitioner contends that the words in the statute "or to discriminate in any way ... against any employer" (Executive Law § 206[1](c) should be construed broadly to encompass his complaint. We disagree. <u>The clear import of the paragraph</u> is to prohibit a labor organization from excluding or expelling persons from its membership ... or to refuse to permit a person from working for an employer ... because of such reasons. <u>The complaint clearly alleges acts which are not within the purview of the statute and are thus outside of the jurisdiction of the Division.</u>"

122 AD2d 338 (emphasis added).

As in *Gomez supra*, Plaintiffs here allege that the Union discriminated against them regarding their labor agreement due to Tran's national origin. As in *Gomez, supra,* the statute does not extend to cover Plaintiffs' claims. We have found no cases challenging the holdings of New York's Appellate Division and Division of Human Rights since *Gomez*. Nor have we found any cases somehow distinguishing the City Human Rights Law from its virtually identical sister State statute on this point. All New York employers for over 20 years, other then Plaintiffs, understand that the State and City Human Rights Laws do not provide them with a cause of action against alleged union discrimination as employers. To the extent Plaintiffs ask this federal court to overrule New York courts and agencies in the construction of their own laws, the Union respectfully urges demurral. Under our principles of federalist government, it would be anomolous for this Court to impose state and local jurisdiction on state and local governments which expressly deny themselves any such authority. Indeed, one can only imagine the upheavals in business practices and the burdens on already overstrapped state and city

agencies as employers with labor disputes file hitherto unimagined claims against unions. Furthermore, such a misconstruction of State and City law would run headlong into federal preemption as LMRA Section 8(b), 29 USC §158(b) mandates union "good faith" in relations with employers under the administration of the U.S. National Labor Relations Board, a conflict wisely eschewed in *Gomez, supra*. See, *e.g.*, *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245, (1959) (activity arguably subject to Section 8 of the LMRA falls within the exclusive competence of the U.S. National Labor Relations Board to the exclusion of federal and state courts, except under LMRA Section 301).

Thus, inasmuch as Plaintiffs' First and Second Causes of Action fail to state any claims under state or local law, they must be dismissed, and judgment entered thereon for the Union.

### III
### PLAINTIFFS' TORT CLAIM SHOULD BE DISMISSED AS PROCEDURALLY INADEQUATE AND SUBSTANTIVELY INSUFFICIENT

As with Plaintiffs' First and Second Causes of Action, Plaintiffs' Third Cause of Action for intentional infliction of emotional distress fails to state a claim even if it somehow evades preemption/arbitration and, therefore, should be dismissed.

A.  The Complaint Fails to Allege Essential
    Elements of the Claim Against the Union

For well over fifty years, New York courts have held that a New York tort claim cannot be brought against a union where the putative plaintiff fails to allege that the entire union membership authorized in advance or subsequently ratified the alleged misconduct. *Martin v. Curran*, 303 N.Y.276, 101 N.E.2d 638)(1951). In *Martin*, New York's highest court held that the Legislature had limited such tort claims "to cases where the individual liability of every single member can be alleged and proven. 303 NYS 27.

New York State lower courts have followed *Martin v. Curran* for decades to date. *See*,

*e.g.*, *Salemeh v. Toussaint*, 810 NYS 2d 1 (1st Dep't 2006) (intentional tort/assault claims against union dismissed for failure to plead authorization or ratification by entire membership); *Duane Reade, Inc. v. Local 338 Retail*, 794 NYS2d 25 (2nd Dep't 2005). Federal courts have duly adhered to the clear State rule, routinely dismissing tort actions for failure to meet the strict *Martin* pleading requirements. *See, e.g., Bldg Indus. Fund v. Local Union No. 3, IBEW*, 992 F. Supp. 192, 194 (E.D.N.Y. 1996) (summary judgment to Union despite evidence of massive letter campaign by members); *R.M. Perlman Inc. v. New York Coat, Suit Dresses etc. Union Local 89-22-1*, 789 F.Supp. 127 (SDNY 1992); *Modeste v. Local 1199*, 850 F.Supp. 1156 (SDNY 1994) aff'd, 38 F.3d 626 (2d Cir. 1994) As Judge Sotomayer concluded in *Modeste*: " ... New York's *Martin* rule imposes an onerous and almost insurmountable burden on individuals seeking to impose liability on labor unions," and Federal courts apply that rule. 850 F.Supp. 1168.

Nowhere in the Complaint do Plaintiffs allege, let alone offer any proof, that every one of the Union's 20,000 plus members approved of or ratified the purported intentional infliction of emotional distress alleged in the Third Cause of Action. Indeed, such a pleading unaccompanied by proof would be entirely speculative, inasmuch as the Union's members work in over 100 different hotels throughout the five boroughs of New York City and have little if any knowledge of grievances and arbitrations outside their own hotel. Accordingly, since Plaintiffs fail to plead, and cannot truthfully plead, that all of the Unions over 20,000 members approved of or ratified the tortuous conduct alleged in the Third Cause of Action, those claims must be dismissed.

B.   The Complaint Fails to Allege Facts
     So Outrageous As To Go Beyond
     <u>All Possible Bounds of Decency</u>

Under New York law, a claim for intentional infliction of emotional distress requires, among other elements, "a showing of extreme and outrageous conduct" which "goes beyond all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a

civilized society." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999); *Hagie v. GMC, supra.* Whether alleged conduct reasonably reaches this extreme standard of liability is a matter for the court to determine in the first instance. *Id.*

Applying the above strict standard, New York State and federal courts have regularly utilized Rule 12 to dispose of ill-founded claims such as Plaintiffs'. *See, e.g. Stuto v. Fleishman, supra,* (dismissal affirmed though plaintiff alleged lying, coercion and ignoring evidence by defendants during administrative proceeding for health benefits); *LeDuke v. Lyons,* 250 AD 2d. 169, 673 NYS2d 240, 244 (3d Dep't 1998) (nurse discharged based on false allegations of euthenasia communicated to the District Attorney); *Liebowitz v. Bank Leumi Trust Co.,* 152 AD 2d.169, 548 NYS2d 513, 521 (2d Dept. 1989) (employee subjected to religious/ethnic slurs, told to choose between her health or her job); *See also, Burlew v. American Mut. Ins. Co.,* 63 NY2d 412, 415, 482 NYS2d 720 (1984) (delay in authorizing needed surgery and procurement of false affidavit not sufficiently extreme or outrageous).

Plaintiffs' allegations in support of their Third Cause of Action fall far short of the strict standard demanded by the courts to state a claim for intentional infliction of emotional distress. The vast bulk of Plaintiffs' averments concern purportedly false testimony in arbitration proceedings. *See, Complaint* ¶¶ 2(c),(d),(e),(g),(l), (j),(k), 3. Such false allegations, even if true, do not suffice. Plaintiffs also claim coercion by the Union to retain certain employees, apparently under threat of arbitration proceedings if Plaintiffs discharged the workers. *See, Complaint* ¶¶ 2(a),(b),(g) and 5. Threats of arbitration no more approach indecency than the arbitrations themselves. Plaintiffs cringe under the occasional verbal tongue lashings by Union representatives at grievance meetings at the Hotel or Union offices, *Complaint* ¶2(m), and faint at the Union's unscheduled visits to the Hotel "challenging the authority and disobeying the requests of the Hotel management ..." *Complaint* ¶ 4. Such confrontations merely define

modern life in a free society which does not regard an employer's fiat as law.[3] Plaintiffs' reliance on the Diallo grievances underscores the knowing baselessness of their claims. The Union initially refused to proceed with Diallo's grievances and does so now only under Judge Preska's Order that refusal to proceed may subject the Union to liability for failure to fulfill its representational duties. In short, Plaintiffs' hot and heavy conclusory allegations, so remote from outrage, cannot create a claim for intentional infliction of emotional distress. Plaintiffs' Third Cause of Action should, therefore, be dismissed.

## IV
## PLAINTIFFS FAIL TO ALLEGE ANY MISCONDUCT BY DEFENDANT WARD

Bereft of any allegations that defendant Peter Ward committed any of the actions of which Plaintiffs complain, the Complaint against Ward must be dismissed for failure to state a claim against Ward.

Nowhere in the Complaint do Plaintiffs allege any facts which justify naming Peter Ward individually as a defendant. This glaring omission looms especially large in light of Plaintiffs specifically naming numerous Union representatives and members, together with their respective individually alleged misconduct. Apparently, Plaintiffs deem Ward liable simply as President of the Union. However, holding Union office, without more, does not support claims for discrimination nor intentional infliction of emotional distress. *See, Duane Reade, Inc., supra* and cases cited therein (no individual liability for state claims). *See* also, 29 USC § 106 ("No officer ... of any union ... shall be held responsible or liable in any court of the United States for the

---

[3] Plaintiffs allege that Manny Lisanti, "a Union agent", threatened Plaintiff Tran with physical harm during a meeting at Union offices, without specifying the time period. Plaintiffs made the same claim in *Alphonse Hotel, supra*. Mr. Lisanti retired from Union employment in 2002, far beyond the tort limitations period. By way of clarification, Mr. Lisanti who was neither morally, tempermentally, nor physically capable of harming Mr. Tran, told him in English that "I don't trust you as far as I can throw you". Mr. Lisanti's comments have proven prophetic.

unlawful acts of individual officers, members or agents, except upon clear proof of actual participation in, or actual authorization of, such acts, or ratification of such acts after actual knowledge thereof.")

According to the Second Circuit, based on the language of § 296(6) of the Human Rights Law, a defendant who "actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the [NYS]HRL." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir.1995). However, "if the plaintiff fails to plead any facts suggesting that a defendant displayed any intent to discriminate or was in any way involved in the alleged discriminatory scheme, the defendant may not be held liable under the [NYS]HRL." *Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F.Supp.2d 376, 381 (S.D.N.Y.1999). As previously stated, plaintiff failed to adequately plead that Peter Ward, either individually or in his capacity as President of the Union, intended to discriminate against Plaintiffs whatsoever. There is no link between Peter Ward to any alleged discriminatory conduct. Moreover, there is no evidence, let alone an allegation in the Complaint, that he was personally involved in any discriminatory action. Therefore, Plaintiffs cannot establish individual liability against Peter Ward and any claim against him must be dismissed.[4]

---

[4] In addition, since, as previously discussed, Plaintiffs cannot establish any discriminatory liability against the Union, there is no predicate for imposing liability against its President, Peter Ward. "It is generally accepted, however, that once an employer has been found to have not discriminated, there is no predicate for imposing liability on the supervisors under an aiding and abetting theory." *Falbaum v. Pomerantz*, 2001 WL 1019616, *4, 19 Fed.Appx. 10 (2d Cir. Sept. 6, 2001); *DeWitt v. Lieberman*, 48 F.Supp.2d 280, 293 (S.D.N.Y.1999) (supervisor who committed the sexual harassment not held liable under § 296(6) because plaintiff could not state a claim of sexual harassment against employer); *Sowemimo v. D.A.O.R Sec., Inc.*, 43 F.Supp.2d 477, 490-91 (S.D.N.Y.1999) (plaintiff failed to establish liability against individual defendant's employer thereby eliminating her claims against the individual defendant as an aider and abettor under the NYSHRL). *See also Tomka*, 66 F.3d at 1315 (noting that the inappropriate conduct must be able to be imputed to the employer before a supervisor can be liable).

## CONCLUSION

For the reasons and upon the authority set forth above, the Union's motion for judgment on the pleadings pursuant to FRCP Rule 12(c) should be granted and judgment entered in favor of the Union and Peter Ward, together with whatever further relief this Court deems fair and appropriate.

Dated: New York New York
      March 31, 2008

Respectfully submitted,

PITTA & DREIER, LLP

By: _____
Barry N. Saltzman (BS 6533)
499 Park Avenue
New York, New York 10022
(212) 652-3890

Of Counsel:
    Vincent F. Pitta, Esq. (VP 1435 )
    Michael J. D'Angelo (MD 3030)