UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
TRAN DINH TRUONG, individually and on behalf :
of ALPHONSE HOTEL CORP. d/b/a HOTEL :
CARTER, :
:
             Plaintiff, :   Case No. 1:07-Civ-11383 (RJH)
:
       - against - :
:
NEW YORK HOTEL & MOTEL TRADES :
COUNCIL, AFL-CIO, and THE OFFICE OF THE :
IMPARTIAL CHAIRMAN and PETER WARD, :
:
            Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THE OFFICE OF THE IMPARTIAL CHAIRMAN'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

STERN & KILCULLEN, LLC
Herbert J. Stern (HS3169)
Joel M. Silverstein (JS5704)
75 Livingston Avenue
Roseland, New Jersey 07078
(973) 535-1900

*Attorneys for the Office
 of the Impartial Chairman*

Defendant The Office of the Impartial Chairman ("OIC") submits this Memorandum in support of its motion for sanctions pursuant to Fed. R. Civ. P. 11. The requested relief is warranted because, despite ample warning that the face of plaintiffs' Verified Complaint demonstrates that all of plaintiffs' claims against OIC are barred by OIC's arbitral immunity, and ample opportunity to withdraw those claims, plaintiffs and their counsel have failed and refused to do so.

## BACKGROUND

Plaintiffs correctly allege that OIC is "a standing organization of labor arbitrators empanelled to hear disputes arising out of the Industry Wide Agreement ('IWA')" (Verified Complaint ¶ 13).

The IWA is an agreement between Defendant New York Hotel and Motel Trades Council, AFL-CIO ("Union") and the Hotel Association of New York City, Inc. ("Hotel Ass'n") which sets forth the terms and conditions of employment for the over 20,000 hotel and hospitality industry employees represented by the Union. The IWA binds hotels either directly for a hotel member of the Hotel Ass'n or indirectly by a "Me Too" Agreement which binds an individual hotel to the IWA's terms. *See* Affirmation of Barry N. Saltzman in Support of the Union's Motion for Judgment on the Pleadings, dated March 31, 2008 (Document 30) (a true copy of which, but without exhibits, is attached as Exhibit A to the Declaration of Joel M. Silverstein submitted herewith) (hereinafter, "Saltzman Aff.") ¶¶ 3, 5.

At all relevant times, the Union and the hotel business of Plaintiff Alphonse Hotel d/b/a the Carter Hotel, which is located at 250 West 43rd Street, New York, N.Y. 10036 (the "Hotel"), have been bound to the IWA by such Me Too Agreements. Saltzman Aff. ¶ 6. Among other things, those agreements have expressly incorporated Article 26 of the IWA, which provides for binding

arbitration before the OIC of "[a]ll complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by and between the parties." Saltzman Aff. ¶ 8.  As detailed in the Union's papers in support of its motion for judgment on the pleadings (Documents 29, 30, and 31), the OIC has adjudicated a number of disputes between the Union and the Hotel over the years.

Plaintiffs originally filed the Verified Complaint in State Court on November 21, 2007, removed to this court without challenge on December 19, 2007.  The Verified Complaint asserts three claims for money damages against the union defendants and OIC - claims under the State and City human rights laws, and a common law claim for intentional infliction of emotional distress.  The claims against defendants New York Hotel & Motel Trades Council, AFL-CIO ("Union") and Peter Ward ("Ward", included in "Union" unless otherwise specified) are all predicated on allegations that they enforced the collective bargaining agreement between the Union and the plaintiff Hotel (the "Hotel") discriminatorily and with an intent to cause emotional distress.  The claims against OIC, in turn, are all predicated on alleged acts and omissions by OIC (or its arbitrators) in the course of arbitration between the Hotel and the Union.

On February 5, 2008, OIC's counsel wrote to plaintiffs' counsel that "[t]he claims you and your client have asserted against OIC are patently frivolous: plainly barred by OIC's arbitral immunity, they can only have been interposed for an improper purpose, apparently as a reprisal for arbitration decisions with which your client is dissatisfied." Silverstein Decl. ¶ 3 and Exh. B.  After detailing why the claims plaintiffs and their counsel have asserted against OIC are barred by arbitral immunity and why filing and continued failure to withdraw them would violate counsel's certifications under Fed. R. Civ. P. 11(b)(1) and (2), the letter concluded that, should

2

plaintiffs fail to timely withdraw those claims, OIC would, among other things, move for "attorney's fees and other sanctions pursuant to Fed. R. Civ. P. 11, against you, your firm, and your client for maintaining patently frivolous litigation against OIC." *Id.*

Prior to the March 14, 2008 pre-motion conference regarding defendants' proposed motions for judgment on the pleadings, counsel for the Union asked plaintiffs' counsel whether plaintiffs were prepared to withdraw their claims in this action in view of the defendants' letters warning that they would seek Rule 11 sanctions should plaintiffs fail to do so. Silverstein Decl. ¶ 4. Plaintiffs counsel responded that plaintiffs were not prepared to do so, and, as of the service of this motion on April 8, 2008, plaintiffs have not withdrawn their claims against OIC. *Id*.

## ARGUMENT

**RULE 11 SANCTIONS SHOULD BE IMPOSED ON PLAINTIFFS AND THEIR COUNSEL FOR ASSERTING AND MAINTAINING CLAIMS AGAINST OIC THAT ARE OBVIOUSLY BARRED BY OIC'S ARBITRAL IMMUNITY**

Under Fed.R.Civ.P. 11(b), pleadings, motions and other court papers presented to the court by an attorney are certified as, among other things, "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and stating claims and other legal contentions that "are warranted by existing law or by nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." *Id.* Violation of Rule 11(b) may, "after notice and a reasonable opportunity to respond," result in sanctions upon "any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c). Rule 11(c)(2) provides that "a motion for sanctions must be made separately from any other motion or requests... must describe the specified conduct alleged to violate subdivision (b) [of Rule 11]," and "must be served as provided in Rule 5, but must not be filed or presented to the court if the challenged paper [or]

3

claim... is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."

Here, despite ample opportunity and several express invitations to withdraw their frivolous claims against OIC, and although more than 21 days have passed since OIC serve this motion upon them, plaintiffs and their counsel have refused to do so.  Under these circumstances, and for the reasons detailed within, we respectfully request the Court exercise its discretion to impose sanctions on plaintiffs and their counsel, including, without limitation, requiring them to reimburse OIC for the attorneys' fees and litigation expenses it has reasonably incurred in defending against plaintiffs' claims and in prosecuting this motion.

A.  **Obviously Barred By OIC's Arbitral Immunity, Plaintiffs' Claims Against OIC Are Frivolous And Appear To Have Been Interposed As A Reprisal For Arbitration Decisions That Dissatisfied Plaintiffs**

The claims plaintiffs and their counsel have asserted against OIC are frivolous: plainly barred by OIC's arbitral immunity, they are not warranted by existing law or by any nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law, and appear to have been interposed for an improper purpose – retaliation against OIC for arbitration decisions with which plaintiffs are dissatisfied.

As the Second Circuit has held:

> [A]rbitrators in contractually agreed upon arbitration proceedings are absolutely immune from liability in damages for all acts within the scope of the arbitral process.

*Austern v. Chicago Board Options Exchange Inc.,* 898 F.2d 882, 886 (2d Cir.) (citations omitted), *cert. denied,* 111 S.Ct. 141 (1990); *see also id*. ("the Courts of Appeals that have addressed the issue have uniformly immunized arbitrators from civil liability for all acts performed in their arbitral capacity"). Citing "[t]he functional comparability of the arbitrators' decision-making process and judgments to those of judges," and arbitrators' concomitant need

4

for "independent judgment, free from the threat of lawsuits," and "protect[ion] from undue influence... [and] reprisals by dissatisfied litigants," the Second Circuit reasoned:

> We are persuaded by these policy concerns and agree that the nature of the function performed by arbitrators necessitates protection analogous to that traditionally accorded to judges. Furthermore, we note that individuals cannot be expected to volunteer to arbitrate disputes if they can be caught up in the struggle between the litigants and saddled with the burdens of defending a lawsuit.

898 F.2d at 886. The Court further held that these same policy considerations require that such immunity extend to "boards that sponsor arbitration":

> Extension of arbitral immunity to encompass boards [that] sponsor arbitration is a natural and necessary product of the policies underlying arbitral immunity; otherwise the immunity extended to arbitrators is illus[ory]. It would be of little value to the whole arbitral procedure to merely shift the liability to the sponsoring association.

*Id.*

As we have repeatedly advised plaintiffs and their counsel, on the face of their Verified Complaint, all of plaintiffs' claims against OIC are barred by arbitral immunity because they seek monetary damages for alleged acts and omissions that are plainly within the scope of the arbitration process:

- In paragraph 1 plaintiffs correctly describe their lawsuit as "an action… *seeking monetary damages*"[1] – precisely the sort of claim from which the Second Circuit has held that arbitrators and their sponsoring organizations are absolutely immune. *Austern*, 898 F.2d at 886.

- In paragraph 13, plaintiffs correctly describe OIC as precisely the sort of "sponsoring organization" that the Second Circuit has held to be entitled to arbitral immunity: "a

---

[1] Verified Complaint ¶ 1 (emphasis added); *see also id.* ¶¶ 21, 28, 34, and prayer for relief, which seek, on each of the Complaint's three causes of action, "Judgment… in the amount of [or "in no event less than] Five Million Dollars ($5,000,000.00)).

5

standing organization of labor arbitrators empanelled to hear disputes arising out of the Industry Wide Agreement ('IWA')." Verified Complaint ¶ 13; *Austern*, 898 F.2d at 886.

- All of the alleged acts on the basis of which plaintiffs seek to hold OIC liable are "acts within the scope of the arbitral process," for which the Second Circuit has held that arbitrators and their sponsoring organizations are absolutely immune from liability (*id.*). *See*:

    - Verified Complaint ¶ 2(g) ("a decision in [the Union's] favor by the Impartial Chairman, despite no valid proof");

    - *Id.* ¶ 2(h) (OIC's "proceeding, against its own policies, in allowing" the Union "to set up a hearing" concerning a grievance on behalf of a former employee seeking six days back pay);

    - *Id.* ¶ 2(i) ("The Impartial Chairman supported the Union and these persons despite no valid proof");

    - *Id.* ¶ 2(k) (a ruling in favor of a hotel employee who "falsely claimed that the Hotel had told her she would be fired if she went to the Union");

    - *Id.* ¶ 2(l) ("issuing an arbitration award requiring the Hotel to engage a specific industrial consultant to conduct an inspection of health and safety at the Hotel, in contravention of the Collective Bargaining Agreement");

    - *Id.* ¶ 2(n) ("The Impartial Chairperson has failed to timely schedule a hearing when Plaintiff files a grievance as against the Union"); and

    - *Id.* ¶ 2(o) ("The Impartial Chairperson has issued an arbitration award regarding alleged health and safety violations without holding a hearing and in contravention of the Collective Bargaining Agreement").

**B.    Their Assertion Of, And Continued Refusal to Withdraw, Plaintiffs' Frivolous, Retaliatory Claims Against OIC Warrant Imposition Of Rule 11 Sanctions On Plaintiffs And Their Counsel**

By presenting and failing to timely withdraw the Verified Complaint's claims against OIC, notwithstanding that, on their face, those claims are obviously barred by OIC's arbitral immunity, plaintiffs' counsel have flatly, and stubbornly, violated their certification under Fed. R. Civ. P. 11(b)(2) that "the claims… and other legal contentions [in the Verified Complaint] are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."

Further, given the Verified Complaint's open expression of plaintiffs' dissatisfaction with the results of several arbitrations administered by OIC, and plaintiffs' continued assertion of the claims against OIC despite the absolute legal bar prohibiting those claims, one can hardly avoid the conclusion that those claims are an improper reprisal – knowingly supported by counsel – for the arbitrators' rulings in those arbitrations.  That reprisal flatly violates counsel's certification under Fed. R. Civ. P. 11(b)(1) that the Verified Complaint "is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

These violations warrant the imposition of sanctions against plaintiffs and their counsel pursuant to Rule 11(c)(1) and (4).[2]  Further, in the Court's discretion, such sanctions may include an award to OIC's of its reasonable attorneys' and litigation expenses in responding to the frivolous claims against them.  *See, e.g., Caisse Nationale De Credit Agricole-CNCA v. Valcorp Inc.*, 28 F.3d 259, 264-65 (2d Cir. 1994) (finding "no abuse of discretion" in the district

---

[2] While Rule 11(c)(5)(A) prohibits imposition "of a monetary sanction against a represented party for violating Rule 11(b)(2)," it does *not* prohibit such a sanction against a represented party for violating Rule *11(b)(1)*, as plaintiffs did here by asserting and maintaining frivolous claims against OIC in reprisal for arbitration rulings that displeased them.

7

court's imposition of a Rule 11 sanction requiring the violators' to pay the prevailing party of $51,934.36 in attorney's fees incurred as a result of the Rule 11 violation). Further, Rule 11(c)(2) specifically provides that "if warranted, the court may award may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion."

## CONCLUSION

For all of the foregoing reasons, we respectfully request that the Court impose sanctions upon plaintiffs and their counsel pursuant to Fed. R. Civ. P. 11, including, without limitation, by requiring them to reimburse OIC for the attorneys' fees and litigation expenses it has reasonably incurred in defending against plaintiffs' claims and in prosecuting this motion.

Respectfully submitted,

STERN & KILCULLEN, LLC
*Attorneys for Defendant*
 *The Office of the Impartial Chairman*

s/Joel M. Silverstein
Herbert J. Stern (HS3169)
Joel M. Silverstein (JS5704)
75 Livingston Avenue
Roseland, NJ 07078
(973) 535-1900

Dated: April 8, 2008