PITTA & DREIER LLP
499 Park Avenue
New York, NY 10022
(212) 652-3890
*Attorneys for Defendants*
*New York Hotel and Motel Trades Council, AFL-CIO*
*and Peter Ward*

Barry N. Saltzman (BS 6533)
Michael J. D'Angelo (MD 3030)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------ X
TRAN DINH TRUONG, individually and of
Behalf of ALPHONSE HOTEL CORP. d/b/a
HOTEL CARTER,

             Plaintiff,

     -against-                      Case No. 1:07-Civ-11383 (RJH)

NEW YORK HOTEL & MOTEL
TRADES COUNCIL, AFL-CIO, and
THE OFFICE OF THE IMPARTIAL
CHAIRMAN and PETER WARD,

             Defendants.

------------------------------ X

**MEMORANDUM OF LAW OF THE**
**NEW YORK HOTEL & MOTEL TRADES COUNCIL,**
**AFL-CIO IN SUPPORT OF ITS MOTION FOR**
**<u>SANCTIONS PURSUANT TO FRCP 11</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    I      PLAINTIFFS AND CALABRO SHOULD BE SANCTIONED
           BECAUSE THE CLAIMS OF THE COMPLAINT
           ARE PATENTLY UNWARRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    II     PLAINTIFFS SHOULD BE SANCTIONED FOR
           INITIATING LITIGATION FOR AN IMPROPER
           PURPOSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    III    SANCTIONS ARE ALSO
           APPROPRIATE UNDER 28 U.S.C. § 1927 . . . . . . . . . . . . . . . . . . . . . . .13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

PITTA & DREIER LLP
499 Park Avenue
New York, NY 10022
(212) 652-3890
*Attorneys for Defendants*
*New York Hotel and Motel Trades Council, AFL-CIO*
*and Peter Ward*

Barry N. Saltzman (BS 6533)
Michael J. D'Angelo (MD 3030)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------ X
TRAN DINH TRUONG, individually and of
Behalf of ALPHONSE HOTEL CORP. d/b/a
HOTEL CARTER,

          Plaintiff,

  -against-                            Case No. 1:07-Civ-11383 (RJH)

NEW YORK HOTEL & MOTEL
TRADES COUNCIL, AFL-CIO, and
THE OFFICE OF THE IMPARTIAL
CHAIRMAN and PETER WARD,

          Defendants.
------------------------------ X

## MEMORANDUM OF LAW OF THE NEW YORK HOTEL & MOTEL TRADES COUNCIL, AFL-CIO IN SUPPORT OF ITS MOTION FOR SANCTIONS PURSUANT TO FRCP 11

Defendants New York Hotel & Motel Trades Council, AFL-CIO and Peter Ward (collectively the "Union") submit this memorandum of law in support of their motion for sanctions against Tran Dinh Truong ("Tran") and Alphonse Hotel Corp. d/b/a The Hotel Carter ("Hotel" and collectively with Tran as "Plaintiffs") and Calabro & Associates, P.C. ("Calabro"). The Union brings this motion pursuant to Rule 11 of the Federal Rules of Civil Procedure ("FRCP") and 28 U.S.C. § 1927 for Plaintiffs' filing of the complaint, dated November 21, 2007 (the "Complaint") and opposing dismissal of the Complaint, twice proven to Plaintiffs to be

{00341822.DOC;2}

baseless, duplicative and harassing.

## PRELIMINARY STATEMENT

By filing the Complaint herein, Plaintiffs again abuse the legal process by continuing their decade long practice of seeking to evade clear contractual obligations to arbitrate disputes with the Union. Instead, Plaintiffs threaten the Union with costly, baseless litigation unless it abandons vigorously representing the Hotel's aggrieved employees.

By their Complaint, Plaintiffs chose to re-plead claims specifically dismissed by Judge Chin of this Court in a strikingly similar effort, rejected only three years ago. *See Alphonse Hotel Corp. v. New York Hotel & Motel Trades Council, AFL-CIO,* 2004 WL 414836 (SDNY) *aff'd without opinion*, No. 04-1757 (2d. Cir. 4/06/04) (the "2004 Action"). In that case, as here, Plaintiffs recited a litany of alleged wrongful grievances and Union misconduct which they claimed constituted unfair labor practices and intentional infliction of emotional distress. Judge Chin granted the Union judgment on the pleadings, holding all Plaintiffs' claims preempted by 29 U.S.C. § 185, Section 301 of the Labor Management Relations Act ("LMRA") and the very broad arbitration provisions of the Industry-Wide Agreement ("IWA") between the Union and the Hotel Association of New York City, Inc. ("Hotel Ass'n"). Essentially, Plaintiffs asked this Court to reverse itself now, years later, in violation of FRCP 11(b) (2).[1] Moreover, Plaintiffs chose to allege violations of the New York State and City Human Rights Laws for purported national origin discrimination, though the State Appellate Division has held for over twenty years that no such claim exists by an employer against a union. In addition, Plaintiffs could not and did not allege the necessary elements for the tort of intentional infliction of emotional distress in their Third Cause of Action. Finally, the Complaint utterly lacks evidentiary support

---

[1] *See,* the Union's motion papers in this action, to which the Court is respectfully referred in lieu of repeating the arguments therein at length.

{00341822.DOC;2}                                                                2

for, and therefore fails to plead the elements of the individual claims asserted against Peter Ward in violation of FRCP 11(b) (3)

By filing their meritless Complaint in the instant action, Plaintiffs, and their attorneys, utterly failed to consider the existing precedents proving no chance of success and no reasonable argument to extend, modify or reverse the law as it stands. Plaintiffs knowingly and deliberately took this impermissible course of action despite being twice advised by the Union, at length and in writing, of the baselessness and consequences. Plaintiffs' decision to run clear, multiple red-lights proves an improper purpose of attempting to use litigation to harass and intimidate the Union out of performing its duties under the labor laws.

As a result of Plaintiff's duplicative and harassing filing of the Complaint, the Union requests that Plaintiffs and Calabro be required to pay the costs and attorneys' fees that the Union was forced to incur in answering the Complaint, in moving to dismiss Plaintiff's utterly meritless Complaint, those costs incurred as a result of making the instant motion for sanctions, and that Plaintiffs be ordered to annex a copy of the Court's order to any subsequent pleadings against the Union, its employees and/or Hotel employees, in any forum.

## FACTS[2]

**Contract Background**

The Union is a labor organization and Peter Ward has served as the Union's President at all relevant times. Plaintiff Alphonse Hotel d/b/a The Carter Hotel and Mr. Tran own and operate the Carter Hotel at 250 West 43rd Street, New York, N.Y. 10036 (the "Hotel").

The terms and conditions of employment for employees represented by the Union appear

---

[2] The Facts derive from the pleadings with attachments and other permissible sources. These documents and facts are summarized in the Affirmation of Barry N. Saltzman, dated April 8, 2008 ("Saltzman Aff. ¶ __"), submitted with Union's motion for judgment on the pleadings served and filed on March 31, 2008. See docket entries 29, 30 and 31, to which the Union repeat fully refers this Court in lieu of full repetition.

in the Industry-Wide Agreement ("IWA") between the Union and the Hotel Ass'n, either directly for a hotel member of the Hotel Ass'n or indirectly by a "Me Too" Agreement which binds an individual hotel to the IWA's terms. Plaintiffs signed the most recent such Me Too Agreement, dated March 16, 2006, binding them and the Union to the IWA from July 1, 2006 to and including June 30, 2012. Among other terms, the IWA establishes wage rates and hours of work, terms of hiring and discharge and the Union's right to enter hotel premises to pursue Union business  Significantly, Section 25 of the IWA expressly recognizes "[t]he opportunity to give and obtain employment without discrimination because of ... national origin... by the parties to this Agreement." The Me Too Agreement also expressly incorporates the full Article 26 IWA arbitration provisions, quoted here in relevant part:

> All complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by and between the parties involved shall be referred to a permanent umpire(s) to be known as the Impartial Chairperson, and his/her decision shall be final and binding upon the parties hereto.

Thus, under the IWA, the Office of the Impartial Chairperson ("OIC") consisting of a permanent rotating panel of industry arbitrators, finally determines all issues between the Union and Plaintiffs.

**Contract Activity**

Pursuant to the 2001-2006 IWA, the Union had commenced a number of grievances against the Hotel upon the complaints of various employees alleging mistreatment, failure to pay wages, intimidation and wrongful discharge. Citing the Union's prosecution of these grievances, Plaintiffs attempted and failed to rescind their 2001 Me Too Agreement. *See* the 2004 Action. *See also, Alphonse Hotel Corp. v. New York Hotel & Motel Trades Council, AFL-CIO,* 2001 WL 959005 (SDNY) (Hotel enjoined from evicting Union member from residence in retaliation for

wage claims) (the "2001 Action").

In or about December 20, 2006, the Union commenced three grievances against the Hotel alleging that the Hotel and Tran had intimidated and discharged housekeeping employees Ana Penna, Elizabeth Santiago and Glennys Castillo because of their demands for wages due them and support for the Union. Following hearings before the OIC from March through August 2007, at which all parties appeared by counsel, presented arguments, witnesses and evidence, and cross-examined witnesses under oath, the OIC rendered Awards No. 2007-26 (3/14/07), No. 2007-38 (6/27/07) and No. 2007-59 (8/14/07) (the "Awards"), sustaining the Union's grievances and ordering reinstatement with back-pay to the employees against the Hotel.

**Hotel Retaliation/Union Rule 11 Warnings**

Plaintiffs filed the Complaint on or about November 21, 2007. Plaintiffs alleged in Counts I and II that the Union had violated the State and New York City Human Rights Laws by discriminating against the employer hotel in enforcement of the IWA, because the Hotel owner Tran is Vietnamese. Plaintiffs alleged in Count III that the Union's discriminatory enforcement of the IWA in arbitration at the OIC against the Hotel has intentionally inflicted emotional distress on Tran. Plaintiffs demanded damages of $5 million for each count. Joint Scheduling Order, Section 1 (c), dated March 11, 2008, copy attached to the Saltzman Aff. as Exhibit 6.

The Union filed its Answer and Counterclaims with exhibits on December 26, 2007, denying the elements of Plaintiffs' claims and any alleged wrongful conduct. Contemporaneous with the Union's filing of a pre-motion letter seeking leave to move for judgment on the pleadings, the Union served Plaintiffs, through Calabro, with a "Rule 11 letter" on January 25, 2008, detailing the baselessness of the Complaint and requesting its withdrawal as frivolous and harassing, copy attached to the Saltzman Aff. as Exhibit 7. Plaintiffs failed to discontinue this action and on March 31, 2008 the Union served and filed its motion for judgment on the

pleadings. *See* docket entries 39, 30, and 31. On April 8, 2008 the Union served the instant motion for sanctions but did not file same on that date in accordance with the twenty-one (21) day safe harbor provision in Rule 11(c)(1). This motion is filed after the safe harbor period has expired.

## LEGAL STANDARD

FRCP 11(b) provides that by presenting a pleading to the court, an attorney certifies that to the best of his knowledge, information and belief, *formed after an inquiry reasonable under the circumstances*, the pleading:

> (1) ... is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims ... are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

FRCP 11(b).

Rule 11 authorizes the court to impose "appropriate" sanctions. FRCP 11(c); *see also Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 24 (2d Cir. 1995). The stated purpose of Rule 11 sanctions is to deter rather than to compensate, and appropriate deterrence may require that the court direct that the violating persons pay monetary sanctions to the movant as compensation for some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation. FRCP 11(c)(2) and advisory committee's note (1993 Amendment); *see also Caisse Nationale de Credit Agricole-CNCA, New York Branch v. Valcorp. Inc.*, 28 F.3d 259, 266 (2d Cir. 1994) (the objective of Rule 11 sanctions is "the deterrence of baseless filings and the

curbing of abuses").

To determine whether Rule 11 has been violated, a court must evaluate the conduct under an objective standard of reasonableness. *Business Guides. Inc. v. Chromatic Communications Enters., Inc.*, 498 U.S. 533 (1991); *see also Storey v. Cello Holdings. LLC*, 347 F.3d 370, 387 (2d Cir. 2003); *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000). A showing of subjective bad faith is not required to trigger Rule 11 sanctions, nor does a showing of subjective good faith provide a safe harbor against sanctions. *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253-54 (2d Cir. 1985). Rather, an attorney's belief must be in accord with what a reasonable, competent attorney would believe under the circumstances. *Id.* at 253-54.

Although Rule 11 sanctions are not to be issued lightly, where it is clear that a case has no chance of success under the facts and existing precedents, and where no reasonable argument could be advanced to change or extend the present law, then Rule 11 allows for sanctions to be issued. *Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281, 1288 (2d Cir. 1986). Put differently, Rule 11 requires, at its simplest, that litigants "'stop-and-think' before initially making legal or factual contentions." *See Murphy v. Cuomo,* 913 F. Supp. 671, 682 (N.D.N.Y. 1996) (citing Fed. R.Civ.P. 11 advisory committee note (1993 Amendment)). Accordingly, sanctions are appropriate where a litigant has not made a "reasonable inquiry of sources of information to which [it] had access in order to determine whether [its] allegations were well founded." *H&D Wireless Ltd P'ship v. Sunspot*, 118 F.R.D. 307, 310 (D. Conn. 1988).

Similarly, sanctions are appropriate where an action is brought for an improper purpose. *Knipe v. United States*, 19 F.3d 72 (2d Cir. 1994). The "improper purpose" clause requires that a party not submit a pleading, motion or other document for the purpose of delay, harassment or increasing the costs of litigation. *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 360 (S.D.N.Y. 2003). In addition to monetary sanctions, a federal court may sanction such litigants

by barring them from bringing future actions based on the same allegations. *Sassower v. Abrams*, 833 F. Supp. 253 (S.D.N.Y. 1993); *Tidik v. Ritsema*, 938 F. Supp. 416 (E.D. Mich. 1996); *Kratage v. Charter Township. of Commerce*, 926 F. Supp. 102 (E.D. Mich. 1996); *Merrigan v. Affiliated Bankshares of Colorado, Inc.*, 775 F. Supp. 1408 (D. Colo. 1991).

Aside from Rule 11, a federal court may also impose sanctions pursuant to its inherent equitable powers. *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) after first making an additional finding of bad faith. *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003); *Schlaifer Nance & Co. v. Estate of Andy Warhol*, 194 F.3d 323, 338 (2d Cir. 1999). A district court's decision imposing sanctions will be upheld absent an abuse of discretion. *Storey*, 347 F.3d at 387. This deferential standard is applicable because, "as in many other contexts, the district court is familiar with the issues and litigants' and is thus 'better situated than the court of appeals to marshal the pertinent facts and apply [a] fact-dependent legal standard.'" *Storey*, 347 F.3d at 387 (quoting *Cooter & Gill v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990)).

## ARGUMENT

### I
### PLAINTIFFS AND CALABRO SHOULD BE SANCTIONED BECAUSE THE CLAIMS OF THE COMPLAINT ARE PATENTLY UNWARRANTED

As is evident from the face of the Complaint itself, Plaintiffs and Calabro failed to conduct even a perfunctory investigation into the facts and law that purport to form the basis for the Complaint. Had they done so, they would have realized that all of the claims, many of which were fully litigated before Judge Chin in the 2004 Action, are either barred by collateral estoppel or simply fail to state a claim for which relief may be granted. *Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281, 1284-85 (2d Cir. 1986) (affirming award of sanctions where plaintiff's claims were previously litigated and thus collaterally barred).

Plaintiffs and Calabro should have recognized the fundamental flaws in their principal claims. Plaintiffs' claims are frivolous and subject to dismissal because they all allege violations of the IWA which are subject to the mandatory arbitration procedures contained in Article 26 of the IWA, for all disputes involving "any acts, conduct or relations between the parties, directly or indirectly ..." This extremely broad arbitration provision encompasses the claims of the Complaint. *See* the 2004 Action. Indeed, had they even looked at the IWA, Plaintiffs would have seen not only the expansive arbitration language, but the language of Section 25 which expressly encompasses their claim of discrimination. In addition, to the extent that the Complaint purports to allege State law tort claims, they too are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1998). *Dittman v. General Motors Corp-Delco Chassis Div.*, 941 F. Supp. 284 (D. Conn. 1996), *aff'd w'out op.*, 116 F.3d 465 (2d Cir. 1997); *Dougherty v. American Tel. & Tel. Co.*, 902 F.2d 201 (2d Cir. 1990). Both Plaintiffs and Calabro were aware of this governing law by virtue of the fact that Plaintiffs made unsuccessful identical or parallel allegations in the 2004 Action, and the Union advised Calabro in writing of these fatal defects in the January 25 letter.

Aside from the preemptive barriers barring the claims, the Complaint also fails to state a claim upon which relief can be granted. The State and City discrimination laws protect employees from discrimination by employers; they do not allow an employer to sue a labor union for alleged discrimination against the employer. *See In the Matter of Joseph A. Gomez v. New York State, Executive Dept., Div. of Human Rights*, 122 A.D.2d 337, 5045 N.Y.S.2d 307 (3d Dept. 1986). Had Plaintiffs' counsel researched his cause of action, he would have concluded under controlling precedent that it should never have been brought.

Furthermore, an inquiry into the factual or legal validity of Plaintiffs' tort claims clearly would have revealed that Plaintiffs could not allege authorization or ratification by all members

of the Union as required by *Martin v. Curan*, 303 NY 276 (1951). *See also, Building Industry Fund v. Local Union No. 3 IBEW*, 992 F.Supp. 192, 194 (E.D.N.Y. 1996). Inasmuch as the Plaintiffs have not and cannot truthfully plead that every one of the over 20,000 members of the Union authorized or ratified the conduct alleged in the Complaint, the action should never have been brought. Moreover, the allegations fail to remotely approach the sort of conduct deemed actionable under common law tort. *See, e.g. Stuto v. Fleishman*, 164 F.3d 820 (2d Cir. 1999) (conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, atrocious and intolerable in civilized society).

Finally, the Complaint utterly fails to allege *any* basis that defendant Peter Ward committed any of the actions of which Plaintiffs complain. "[I]f the plaintiff fails to plead any facts suggesting that a defendant displayed any intent to discriminate or was in any way involved in the alleged discriminatory scheme, the defendant may not be held liable under the [NYS]HRL." *Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F.Supp.2d 376, 381 (S.D.N.Y.1999). A reasonable inquiry into such a claim would have easily established that Peter Ward was not personally involved in any discriminatory action and Plaintiffs cannot establish individual liability. Indeed Plaintiffs identify several Union employees whom they allege violated their rights, but cannot even allege a single fact linking Ward. Plaintiffs appear to claim liability against Ward solely because he is the President of the Union they seek to intimidate. This claim should never have been brought against Ward in the first instance, and sanctions are warranted.

The gross failure to conduct any inquiry into the factual or legal validity of their core claims, noticed to Plaintiffs by Union counsel in detail, compounded by the prior rejection by this Court of a similar action by the Plaintiffs, establishes the need for imposing sanctions in this case. *H&D Wireless Ltd P'ship v. Sunspot*, 118 F.R.D. 307 (D. Conn. 1988) (imposing sanctions

where litigant failed to conduct a reasonable investigation of the facts to determine whether its allegations of well-grounded); *see also Levine v. FDIC*, 2 F.3d 476, 478-79 (2d Cir. 1993) (affirming award of sanctions where documents submitted to the court were not grounded in fact and where "counsel perpetuated his misconduct through the filing of numerous memoranda well after his errors were revealed to him"); *International Shipping Co. v. Hydra Offshore, Inc.*, 875 F.2d 388, 391(2d Cir. 1989) (affirming imposition of sanctions where "[a] cursory review of a hornbook or digest" would have revealed the fundamental error of law); *Howard v. Klynveld Peat Marwick Goerdeler*, No. 98-9326, 1999 U.S. App. LEXIS 7767 (2d Cir. Apr. 16, 1999) (same); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 246-47 (affirming award of sanctions on ground that plaintiff should have known that his claim -- one of antitrust violation without any allegation of antitrust injury -- was destined to fail as a matter of law).  Absent sanctions, Plaintiffs will again, as in the past, search for new attorneys and variations of their old themes, to vainly attempt evasion of their labor law obligations and intimidate the Union.  The time to halt such abuse, through sanctions, is now.

## II
## PLAINTIFFS SHOULD BE SANCTIONED FOR INITIATING LITIGATION FOR AN IMPROPER PURPOSE

In addition to the foregoing, Plaintiff's improper purpose for filing the Complaint is evident from the fact that they have persisted in this action even after being advised of the numerous infirmities in its allegations, reminded of their prior failures, and after being permitted the opportunity to withdraw the Complaint voluntarily on more than one occasion.  Unlike most cases, Plaintiffs knew or should have known of the baselessness of the Complaint because they knew or should have known of the 2004 Action.  Given this background, sanctions are clearly appropriate.  *Knipe v. United States*, 19 F.3d 72, 77 (2d Cir. 1994) (affirming award of sanctions; "filing of the second complaint on the heels of dismissal [of an earlier action] reveals an

improper purpose" of "pursuing a personal agenda"); *Paganucci v. City of New York*, 993 F.2d 310 (2d Cir. 1993) (affirming imposition of sanctions against plaintiff for bringing second suit after prior suit had been dismissed); *O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 706 (2d Cir. 1990) (holding that continuing to press obviously meritless lawsuit indicates bad faith and supports imposition of Rule 11 sanctions); *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 49 (2d Cir. 1988) (affirming award of sanctions where plaintiff ignored request to withdraw meritless claim, requiring defendant to move for summary judgment); *U.S. ex rel. U.S.-Namibia Trade & Cultural Council, Inc. v. Africa Fund*, 588 F. Supp. 1350 (S.D.N.Y. 1984) (finding plaintiff's repeated initiation of obviously groundless actions coupled with specifics of action established sufficiently an inference of improper purposes for suits, warranting imposition of Rule 11 sanctions).

Plaintiffs past actions and litigations in fact confirm the improper purpose of the Complaint. Plaintiffs subscribe to a pattern and practice, documented in this Court, of ignoring contract obligations, then suing employees and the Union should either insist on rightful compliance. *See,* the 2004 Action; the 2001 Action; the Awards. Given the utter absence of any legal basis for the Complaint, Plaintiffs' decision to nevertheless sue the Union can only be explained as part of Plaintiffs' decade long deliberate strategy of harassment and intimidation through litigation. The Union entreats this Court to forestall further Plaintiff misconduct. Sanctions against Tran, the Hotel and Calabro in the amount of the costs and attorneys' fees incurred by the Union in: (i) removing this action to this Court; (ii) answering the Complaint; (iii) moving to dismiss Plaintiff's Complaint; and (iv) moving for sanctions requested herein, are all warranted as the best hope of deterring future misconduct.

## III
## SANCTIONS ARE ALSO
## APPROPRIATE UNDER 28 U.S.C. § 1927

Sanctions are also appropriate under 28 U.S.C. § 1927 where "any attorney or other person admitted to conduct cases in any court of the United States or any territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess cost, expenses, and attorneys fees reasonably incurred because of such conduct."

It has consistently been held that "imposition of sanctions under § 1927 require a clear showing of 'bad faith' of the type 'necessary to invoke the court's inherent power.' An award of sanctions is proper 'when the attorneys' actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." (citations omitted) *ACLI Gov't Sec., Inc. v. Rhoades*, 907 F. Supp. 66, 68 (S.D.N.Y. 1995) (emphasis added); *see also Hudson Motors Partnership v. Crest Leasing Enters.Inc.*, 845 F. Supp. 969, 978 (E.D.N.Y. 1994) ("By its terms, § 1927 looks to unreasonable and vexatious multiplications of proceedings; and it imposes an obligation on attorneys through the entire litigation to avoid dilatory tactics."). The purpose of the statute "is to deter unnecessary delays in litigation." 845 F. Supp. at 978 (quoting *United States v. International Brotherhood of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991)).

As with Rule 11, an appropriate measure of the amount of sanctions is the attorneys' fees incurred by the innocent party as a result of the sanctionable conduct. *Sierra Club v. United States Army Corps of Eng'rs*, 776 F.2d 383, at 389 (2d Cir. 1985), *cert. denied, New York State Dept. of Transp. v. Sierra Club*, 475 U.S. 1084 (1986).

As demonstrated above, Plaintiffs' Complaint against the Union can only be intended to harass the Union since there is no legal or factual basis or merit to it. Accordingly, sanctions are also appropriate under 28 U.S.C. § 1927 as well as Rule 11.

## CONCLUSION

For the reasons and upon the authority set forth above, the Union's motion for sanctions pursuant to FRCP Rule 11 should be granted and Plaintiffs and Calabro should be required to pay the costs and attorneys' fees that the Union was forced to incur in removing this action to this Court, in answering the Complaint, in moving to dismiss Plaintiff's meritless Complaint, as well as those costs incurred in making the instant motion for sanctions, together with whatever further relief this Court deems fair and appropriate.[3] Plaintiffs should be ordered to append the Court's order to any further pleading against the Union, its employees, or Hotel employees whom the Union represents, should Plaintiffs try to commence still another action in any forum.

Dated: New York New York
       April 8, 2008

Respectfully submitted,

PITTA & DREIER, LLP

By: _____
Barry N. Saltzman (BS 6533)
499 Park Avenue
New York, New York  10022
(212) 652-3890

Of Counsel:
   Vincent F. Pitta, Esq. (VP 1435 )
   Michael J. D'Angelo (MD 3030)

---

[3] The Union is prepared to submit evidence of its legal fees and costs as the Court may direct, on reply or subsequent to decision on this motion.

{00341822.DOC;2}                            14