CALABRO & ASSOCIATES, P.C.
1412 Broadway - Suite 1504
New York, New York 10018
(646) 688-6095

*Attorneys for Tran Dinh Troung,*
*individually and on behalf of*
*Alphonse Hotel Corp. d/b/a Hotel Carter*

Cathy O'Donnell, Esq. (CO0973)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x          Case No. 1:07-Civ-11383 (RJH)

TRAN DINH TRUONG, individually and on          :
behalf of ALPHONSE HOTEL CORP. d/b/a/          :
HOTEL CARTER          :
          :
          :
                    Plaintiff,          :
          -against-          :
          :
NEW YORK HOTEL & MOTEL TRADES          :
COUNSEL, AFL-CIO, and THE OFFICE          :
OF THE IMPARTIAL CHAIRMAN and          :
PETER WARD,          :
          :
                    Defendants.          :
-------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT THE NEW YORK HOTEL & MOTEL TRADES COUNCIL AFL-CIO'S
AND DEFENDANT PETER WARD'S MOTION FOR
<u>JUDGMENT ON THE PLEADINGS</u>**

# <u>TABLE OF CONTENTS</u>

*Page*

PRELIMINARY STATEMENT.................................................................................  1

ARGUMENT.....................................................................................................  3

POINT I  THE UNION HAS NOT DEMONSTRATED ENTITLEMENT
     TO JUDGMENT ON THE PLEADINGS.................................................  3

    A.  Plaintiff's Discrimination Claims are not Subject to Arbitration
       Under *Kraver v. Triangle Services, Inc.*..........................................  3

    B.  The Complaint is not Preempted by LMRA § 301 as
       Discrimination Claims are "Truly Independent" of the IWA.........  5

    C.  The Union and OIC are Aiding and Abetting in Unlawful
       Discriminatory Practices.................................................................  7

    D.  Heightened Standard of Review on Motion as Plaintiff
       Complains of Civil Rights Violations............................................  9

POINT II  THE STATE AND CITY HUMAN RIGHTS LAWS IMPOSE
     LIABILITY ON THE UNION FOR UNLAWFUL
     DISCRIMINATION AS PLAINTIFF IS AN "EMPLOYER"....................  11

    A.  Unlike *Joseph A. Gomez,* Plaintiff's Claims Fall Squarely
       Within the Purview of Executive Law §  296(1)(C).......................  11

    B.  Plaintiff States Meritorious Claims Pursuant to Executive
       Law § 296(1)(C) and Sections 8-107(1)(C)and (6) of the
       Administrative Code of the City of New York.............................  12

POINT III  PLAINTIFF ALLEGES THE *PRIMA FACIE* ELEMENTS OF
     INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS................  15

    A.  The *Martin* Rule Applies Exclusively to Tort Claims Asserted
       Against Union Officers in Their Representative Capacity..............  15

    B.  "National Origin" Discrimination Constitutes Outrageous
       Conduct That Goes Beyond All Possible Bounds of Decency
       in a Modern Society.........................................................................  18

# TABLE OF CONTENTS

*Page*

POINT IV     WARD IS NOT IMMUNE FROM LIABILITY AS  PLAINTIFF'S
             CLAIMS DO NOT ARISE FROM A "LABOR DISPUTE"...................... 21

CONCLUSION.............................................................................................................. 23

## PRELIMINARY STATEMENT

Plaintiff Tran Dinh Truong ("Plaintiff" or "Truong"), individually and as president of Alphonse Hotel Corp. d/b/a Hotel Carter (the "Hotel"), commenced this action to recover damages arising out of Defendants' "national origin" discrimination in violation of Section 8-107 of the Administrative Code of the City of New York and Article 15 of the New York State Executive Law, and to recover damages for extreme emotional distress caused as a result of Defendants' unlawful discrimination.[1] Defendant The New York Hotel & Motel Trades Council, AFL-CIO (the "Union") and Defendant Peter Ward ("Ward") bring the instant motion for judgment on the pleadings pursuant to FRCP Rule 12(c). Plaintiff submits this memorandum of law in opposition.

As will be demonstrated below, the Union's and Ward's motion must be denied in all respects as, pursuant to FRCP Rule 12(c), Plaintiff's discrimination claims are not preempted by Section 301 of the Labor Management Relations Act ("LMRA") or the arbitration provision of the Union's Industry Wide Agreement ("IWA"). Under this Court's holding in *Kraver v. Triangle Services, Inc.,* 509 F.Supp.2d 407 (S.D.N.Y. 2007), Article 26 of the IWA is unenforceable insofar as it mandates arbitration of state and city discrimination claims. It will also be shown that the Union's motion should be denied on its face as an application for judgment on the pleadings is subject to heightened scrutiny where civil rights violations are asserted. Moreover, contrary to the Union's Point I, the First and Second Causes of Action for "national origin" discrimination fall squarely outside the IWA's arbitration provision as the Union and  Defendant The Office of the Impartial Chairman ("OIC") are aiding and abetting in discriminatory practices against Plaintiffs.

---

[1]  This civil action was commenced in the Supreme Court of the State of New York, County of New York, and was removed to this Court without challenge pursuant to the provisions of 28 U.S.C. § 1441.

Contrary to the Union's Point II, Section 8-107 of the Administrative Code of the City of New York and Article 15 of the New York Executive Law imposes liability on the Union (a "labor organization") for "national origin" discrimination.  Contrary to the Union's misguided position, Plaintiff is clearly an "employer" within the meaning of the statutes.  Thus, the Union's motion to dismiss the First and Second Causes of Action for failure to state a claim is without merit.

Contrary to the Union's Point III, the Third Cause of Action for intentional infliction of emotional distress is meritorious.  Plaintiff has alleged the *prima facie* elements of the claim under New York law.  Contrary to the Union's position, the *Martin v. Curran,* 303 N.Y. 276, 101 N.E.2d 638 (NY 1951) pleading requirement is inapplicable as the tort is asserted against the Union as an association, and not the Union's representatives or officers in their individual capacity.  Moreover, the Union's and OIC's pattern of "national origin" discrimination constitute acts so outrageous as to go beyond all bounds of decency in a modern society.  Thus, the Third Cause of Action should not be dismissed.   Lastly, contrary to the Union's Point IV, it will be shown that Plaintiff has meritorious claims against Ward in his individual capacity.

For a complete recital of the facts relevant to the motion at bar, the Court is respectfully referred to the accompanying affidavit of Plaintiff Tran Dinh Truong.

2

## ARGUMENT

## POINT I

## THE UNION HAS NOT DEMONSTRATED ENTITLEMENT TO JUDGMENT ON THE PLEADINGS

Pursuant to FRCP Rule 12(c), a party may move for judgment on the pleadings after the pleadings are closed. A plaintiff need not establish anything in the context of a motion for judgment on the pleadings; such motions are governed by the same standard as applies to motions to dismiss, and the Court must thus accept all of the complaint's allegations as true and draw all reasonable inferences in favor of the plaintiff. *Bishop v. Toys "R" US-NY LLC*, 414 F.Supp.2d 385 (S.D.N.Y. 2006). A complaint should not be dismissed under Rule 12(c) unless it appears that the plaintiff "cannot state any set of facts that would entitle him to relief." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d. Cir. 2001).

**A.    Plaintiff's Discrimination Claims are not Subject to Arbitration Under *Kraver v. Triangle Services, Inc.***

In Point I, the Union contends that the Plaintiff's discrimination claims are subject to arbitration under Article 26 of the IWA, which states "[a]ll complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly and indirectly, which shall have not been adjusted by and between the parties involved shall be referred to a permanent umpire known as the Impartial Chairman..." (Saltzman *Aff.,* Exhibit 2(E).) The Union's position lacks merit pursuant to this Court's holding in *Kraver v. Triangle Services, Inc., supra.*

In *Kraver*, the plaintiff, Eva Kraver, brought a "national origin" discrimination action seeking monetary damages and other relief against her employer, defendant Triangle Services, Inc.,

3

pursuant to Section 8-107 of the Administrative Code of the City of New York and Title VII of the

Civil Rights Act of 1964.  The defendant-employer moved to dismiss the amended complaint or,

alternatively, to stay the action on the grounds that, pursuant to the parties' collective bargaining

agreement, arbitration was plaintiff's "sole and exclusive remedy." *Id.*, 509 F.Supp.2d at 408.  The

issue before this Court in *Kraver* was whether plaintiff waived her right to adjudicate her

discrimination claims based on "national origin" discrimination under the New York City Human

Rights Law Section 8-107 and Title VII of the Civil Rights Act.

      In *Kraver,* this Court expressly held:

> Therefore, the Court holds that the union-negotiated
> CBA mandating arbitration of plaintiff's claims of
> discrimination under the New York City Human
> Rights Law is likewise <u>unenforceable</u>. *Id*., 509
> F.Supp.2d at 409. (Emphasis added).

      In support of this holding, the *Kraver* court cited *Rogers v. New York University*, 220 F.3d

73 (2d. Cir. 2000) and *Pyett v. Pennsylvania Building Company*, *et al*, 498 F.3d 88 (2d. Cir. 2007)

where the Second Circuit affirmed lower court rulings that a union-negotiated collective bargaining

agreement that waived Plaintiff's right to pursue statutory claims in a judicial forum was

unenforceable regarding plaintiff's claims brought under both federal and analogous state and city

discrimination laws. *Id.*, 509 F.Supp.2d at 409.   Here, like the employer-defendant in *Kraver,* the

Union asserts that under Article 26 of the IWA Plaintiff has waived his right to bring his

discrimination claims in a judicial forum.  This position is without merit under *Kraver* as Article 26

of the IWA is enforceable to the extent that it mandates arbitration of state and city discrimination

claims.

      Accordingly, the Complaint is not preempted by Article 26 of the IWA, and as such the

Union is not entitled to judgment on the pleadings dismissing the First and Second Causes of Action.

**B.    The Complaint is not Preempted by LMRA § 301 as Discrimination Claims are "Truly Independent" of the IWA**

In Point I, the Union also contends that Plaintiff's discrimination claims are preempted by LMRA § 301.  Assuming *arguendo* that the Union's motion for judgment on the pleadings on the First and Second Causes of Action is not denied on its face under *Kraver, supra*, the Union's position lacks merit as the cases it cites are distinguishable.

The Union contends that Plaintiff's discrimination claims are "inextricably intertwined"with the arbitration provisions embodied in Section 301 of the LMRA and Article 26 of the IWA.  In support of this proposition, the Union cites *Dougherty v. American Telephone and Telegraph Co.,* 902 F.2d 201 (2d Cir. 1990); *Alphonse Hotel Corp. v. New York Hotel & Motel Trades Council, AFL-CIO,* 2004 WL 414836 (S.D.N.Y.) *aff'd without opinion* No. 04-1757(2d Cir. 4/16/04), *Lingle v. Norge Div. Of Magic Chef, Inc.* 486 U.S.399, 108 S.Ct. 1877 (1988) and *Allis-Chalmers Corp. v. Leuck*, 471 U.S. 202, 105 Sup. Ct. 1904(1985).  However, the Union's reliance on that line of cases is misguided.

In *Dougherty,* the plaintiff-employee commenced a state action against the defendant-employer alleging common-law fraud and negligent misrepresentation.  The defendant-employer removed the action to federal court on the ground that the plaintiff's claims were governed by Section 301 of the LMRA.  The defendant-employer then moved for summary judgment arguing that the plaintiff had failed to exhaust the grievance and arbitration procedures provided by their collective bargaining agreement before bringing his action for violation of the collective bargaining agreement. The Second Circuit observed that Section 301 of the LMRA governs actions by an employee against an employer for breach of a collective bargaining agreement.  Before bringing

5

such action, the complainant must exhaust grievance procedures provided by the relevant collective bargaining agreement. The *Dougherty* court ultimately held that plaintiff-employee's state fraud and negligent misrepresentation claims against the employer were not independent of the parties' collective bargaining agreement, and as such the state-law tort action circumvented the arbitration procedures. *Id.*, 902 F.2d at 203.

In the case at bar, unlike *Dougherty*, Plaintiff is asserting civil rights violations against the Union. This is not an action by an employee against an employer. Moreover, Section 301 of the LMRA is inapplicable because Plaintiff is <u>not</u> alleging breach of Article 25 of the IWA[2], but rather violation of the state and city human rights laws. Thus, Plaintiff was not required to exhaust any grievance and/or arbitration procedures under the IWA prior to commencing this action. Conveniently, the Union omits *Dougherty*'s discussion regarding state-law rights and obligations that are independent of a collective bargaining agreement, and as such not preempted by Section 301 of the LMRA. The court held:

> Of course, not every state law claim is preempted by Section 301, and <u>rights and obligations that are truly independent of a collective bargaining agreement are enforceable</u>. *See Allis-Chalmers Corp. v. Leuck*, 471 U.S. at 211-12, 105 Sup. Ct. 1911-12. In *Lingle v. Norge Div. Of Magic Chef, Inc.*, 108 S.Ct. 1877, 100 L.E.2d 410 (1988), for example, the Supreme Court held that a state-law action alleging retaliatory discharge for filing a workers' compensation claim was "independent" of the collective bargaining agreement and therefore was not preempted by federal law. See *Id.* At 1882. *Id.,* 902 F.2d at 203. (Emphasis added).

---

[2] Article 25 of the IWA is a general anti-discrimination provision. (Saltzman *Aff.* Exhibit 2(E)).

Contrary to the Union's misguided interpretation, *Dougherty, Allis-Chalmers Corp.* and *Lingle* stand for the proposition that Section 301 of the LMRA does not preempt state-law rights and obligations that are "truly independent" of a collective bargaining agreement. In the case at bar, Plaintiff's state and city human rights claims are "truly independant" of the IWA. They are predicated on the Union's and OIC's pattern of discrimination in violation of Section 8-107 of the New York City Administrative Code and New York Executive Law § 296. It has been expressly held that a claim under New York Executive Law § 296 does not involve interpretation of the parties' collective bargaining agreement, and consequently is not preempted by the LMRA. *Zuckerman v. Volume Services America, Inc.*, 304 F.Supp.2d 365 (E.D.N.Y. 2004).

Accordingly, LMRA § 301 does not preempt Plaintiff's First and Second Causes of Action because they are "truly independent" of the IWA.

## C.    The Union and OIC are Aiding and Abetting in Unlawful Discriminatory Practices

In addition to the foregoing, Plaintiff's discrimination claims are not subject to arbitration or the LMRA § 301 because Article 26 of the IWA is not susceptible to an interpretation which governs Plaintiff's aiding and abetting claim. Article 26 of the IWA purports to govern disputes arising between the parties to the IWA by way of the Me Too Agreement (*i.e.*, the Hotel and Union), and subjects certain grievances to arbitration before the OIC. In this suit, Plaintiff alleges, *inter alia,* that the Union is aiding and abetting the OIC in unlawful discrimination. (Verified Complaint 2 and Troung *Aff.* ¶ 20). Thus, the plain language of Article 26 of the IWA neither contemplates, governs nor applies to discrimination claims asserted against the Union and OIC for aiding and abetting in discriminatory practices. Section 8-107(6) of the Administrative of the Code of the City of New York provides:

7

> Aiding and abetting. It shall be unlawful discriminatory practice <u>for any person</u> to aid, abet, incite, compel or coerce the doing of any acts forbidden under this chapter, or attempt to do so.

Under the plain language of Section 8-107(6), "any person" may be found liable even if she merely attempts to aid or abet in illegal discriminatory conduct. *Sanabria v. M. Fabrikant*, NYLJ 4/22/08, 26:4 (Sup. Ct. N.Y. Co. Tolub). In *Sanabria,* the court observed that the "Federal and State Civil Rights Law are a floor below which the City's Human Rights Law cannot fall, rather than a ceiling above which the local law cannot rise." *Id*., NYLJ at 26:4; see also *Sorrento v. City of New York*, 17 Misc.3d 1102(a)(Sup. Ct. N.Y. Co. 2007). Plaintiff's aiding and abetting claim against the Union and OIC is simply not within the purview of Article 26. Thus, the Union's contention that this matter is subject to arbitration before the OIC is without merit.

In Point I, the Union also argues that Plaintiff's allegations contained in paragraphs 2(a) through (h) of the Verified Complaint require interpretation and application of Article 26 of the IWA, and such function is reserved exclusively to the OIC. In support of this argument, the Union cites, among other things*, Pitta v. Hotel Association of New York City, Inc.,* 806 F.2d 419 (2d. Cir. 1986). As discussed above, under *Zuckerman, supra,* a discrimination claim brought pursuant to Executive Law § 296 does not involve interpretation of the parties' collective bargaining agreement, and as such is not preempted by federal law.

In fact, *Pitta*, *supra*, supports Plaintiff's position as in that case the Court of Appeals disqualified the arbitrator (coincidentally, the OIC) from determining the validity of his own dismissal because of his personal interest in the outcome of the dispute. The court in *Pitta* held:

> An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is <u>not susceptible</u>

8

> of an interpretation that covers the asserted dispute.
> *Id.,* 806 F.2d at 422. (Emphasis added)(Internal
> quotations and citations omitted).

In the case at bar, the OIC is disqualified from determining the validity of its own

discrimination because Article 26 of the IWA is not susceptible to an interpretation that covers the

Plaintiff's discrimination claims.   Moreover, contrary to the Union's contention, the discrimination

claims asserted by Plaintiff in this action are not duplicative of those asserted in *Alphonse Hotel*

*Corp. v. New York Hotel & Motel Trades Council*, *AFL-CIO*, 2004 WL 414836 (S.D.N.Y.)(action

to rescind the Me Too Agreement) and *Alphonse Hotel Corp. v. New York Hotel & Motel Trades*

*Council, AFL-CIO*, 2001 WL 959005 (S.D.N.Y.)(action seeking to evict former employees).

Also, the Union erroneously contends that Plaintiff's claims involve wages, work hours and

Union visits to the Hotel.  To the contrary, the allegations contained in paragraphs 2(a) through (h)

of the Verified Complaint demonstrate the pattern of  discrimination committed by the Union and

the OIC, and as such requires interpretation and application of Section 8-107 of the Administrative

Code of the City of New York and Article 15 of the New York State Executive Law, a function

reserved for the courts and the New York State Division of Human Rights.[3]

Thus, Article 26 of the IWA is not susceptible of an interpretation that covers Plaintiff's

claims.

## D.    Heightened Standard of Review on Motion as Plaintiff Complains of Civil Rights Violations

---

[3]  In the Verified Complaint, Plaintiff does not seek the reversal, vacatur or modification
of the multitude of unfavorable awards issued by the OIC, but instead seeks civil liability for
unlawful discrimination.  As Plaintiff does not seek relief from OIC Award No.'s 2007-38, 2007-
26, 2007-59 and 2007-62, the Union's First, Second and Third Counterclaims seeking to confirm
said awards should be dismissed as moot.

9

In addition to the foregoing, in *Toys "R" US-NY LLC, supra*, the United States District Court for the Southern District of New York reiterated the well-recognized rule that judgment on the pleadings should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  The court held:

> This standard is applied with <u>particular strictness when the plaintiff complains of a civil rights violation</u>.  *Id*., 414 F.Supp.2d at 389, 390 (Internal citations and quotations omitted)(Emphasis added).

Applying this heightened scrutiny, the court in *Toys "R" US* held that to survive a motion for judgment on the pleadings, the plaintiff who brought a claim under 42 U.S.C.A. §1981 (Equal Rights provision under the Public Health and Welfare Law) must allege the *prima facie* elements of his discrimination claim, which are: (i) the plaintiff is a member of a racial minority; (ii) an intent to discriminate on the basis of race by the defendant; and (iii) the discrimination concerned one or more of the activities enumerated in the statute.  *Id.*, 414 F.Supp.2d at 390 citing, *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp*., 7 F.3d 1085, 1087 (2d Cir.1993).  *To wit*, to survive a motion for judgment on the pleadings in a civil rights violation case, the plaintiff must simply allege facts which support a claim for relief from discrimination.

In the case at bar, like *Toys "R" US*, Plaintiff complains of civil right violations.  As set forth in the Verified Complaint and in the accompanying affidavit of Truong, Plaintiff asserts a set of facts and pattern of conduct, which, if proven at trial, constitutes human rights violations under New York City Administrative Code § 8-107 and New York Executive Law § 296.

Accordingly, pursuant to *Toys "R" US,* the Union's and Ward's motion for judgment on the pleadings should be denied as Plaintiff alleges the *prima facie* elements of "national origin" discrimination.

10

<u>POINT II</u>

<u>THE STATE AND CITY HUMAN RIGHTS LAWS IMPOSE LIABILITY ON THE UNION FOR UNLAWFUL DISCRIMINATION AS PLAINTIFF IS AN "EMPLOYER"</u>

In Point II, the Union and Ward argue, in the alternative, that Plaintiff has failed to state a discrimination claim under the state and city human rights laws.  In support of this argument, the Union cites *Joseph A. Gomez v. New York Executive Dep't. Div. Human Rights.* 122 A.D.2d 337, 504 N.Y.S.2d 307 (3rd Dept. 1986).  That case is distinguishable.

A.    <u>Unlike *Joseph A. Gomez*, Plaintiff's Claims Fall Squarely Within the Purview of Executive Law § 296(1)(C)</u>

In *Joseph A. Gomez,* the petitioner filed a "national origin" discrimination complaint with the New York State Division of Human Rights charging that respondents Harold Joyce and Local No. 724 refused to enter into a specific type of labor agreement to enable his corporation, as the successful bidder, to perform electrical work for a general contractor because of his Cuban origin. In denying the discrimination allegations, respondent Joyce contended that the petitioner sought a type of "one shot" agreement that would enable him to work on a single contract as a union contractor, while the remaining of his other contracts would remain non-union.  After an investigation, the Division of Human Rights determined that the <u>petitioner was not seeking employment</u> with Local 724, but rather he was seeking a labor agreement with the union for one project.  The Division determined that the petitioner was offered an opportunity to sign a full-time agreement with Local No. 724, but he refused to sign.  The Division dismissed the complaint.  The Special Term dismissed the petition for review.  Petitioner appealed.  The Appellate Division, Third Department affirmed the Special Term's finding that the petitioner was not "an employer" within purview of Executive Law § 296(1).  *Joseph A. Gomez* held that a contractor submitting a bid to a

labor organization is not an "employer" within the meaning of Section 296(1)(c).  *Id.*, 122 A.D.2d at 337-338.

Here, unlike *Joseph A. Gomez,* Plaintiff's claims fall squarely within the purview of Executive Law Section 296(1)(c) as he is unequivocally an "employer" within the meaning of the statute.  In  *Joseph A. Gomez,* the petitioner was not "an employer", but rather a contractor submitting a bid to a labor union.    Moreover, unlike Plaintiff here, the petitioner in *Joseph A. Gomez* had no contractual labor relationship with the labor union prior to filing his complaint with the Division of Human Rights.  Also, the petitioner's improper request  for a "one shot" agreement with union membership resulted in the union's rejection of his bid (not "national origin" discrimination).

Accordingly, the petitioner's discrimination claim in *Joseph A. Gomez* was baseless as a matter of fact and law because he was not an employer.

**B.**    **Plaintiff States Meritorious Claims Pursuant to Executive Law § 296(1)(C) and Sections 8-107(1)(C) and (6) of the Administrative Code of the City of New York**

New York Executive Law § 296(1)(C) states that it is unlawful discriminatory conduct:

> For a labor organization or an employee or agent
> thereof, because of the actual or perceived age, race,
> creed, color, national origin, gender, disability,
> marital status, partnership status, sexual orientation or
> alienage or citizenship status of any person, to
> exclude or to expel from its membership such person
> or to discriminate in any way against any of its
> members or against any employer or any person
> employed by an employer. (Emphasis added.)[4]

Discrimination on the basis of "national origin" in employment or employment-related

---

[4]  Section 8-107(1)(c) of the Administrative Code of the City of New York mirrors Section 296(1)(c).

matters is broadly condemned by the New York State and City human rights laws and other federal measures (*i.e.*, Title VII of the Civil Rights Act of 1964).  For purposes of the New York State human rights law, the term "national origin" includes "ancestry" and thus employment discrimination is prohibited not only if based upon the country in which the complainant himself or herself was born, but if based upon the country in which the complainant's ancestors were born. *Ingalls v. Town of Lyndon*, 127 Misc.2d 442, 486 N.Y.S.2d 659 (Sup. Ct. N.Y. Co.1985).  The New York State Court of Appeals has expressly held that acts of discrimination on the basis of national origin or color, in violation of this article, may occur without spoken references to complainant's national origin or color.  *Hudson Transit Lines, Inc. v. State Human Rights Appeal Bd.*, 47 N.Y.2d 971, 419 N.Y.S.2d 960 (N.Y. 1979).

In the case at bar, the Union concedes that "the Union is a 'labor organization' within the meaning of the federal labor laws..." (Saltzman *Aff.* ¶3 and Answer ¶12).  The Union also concedes that "[t]he Hotel Carter is an 'employer' within the meaning of federal labor law..." (Saltzman *Aff.* ¶4).  Contrary to the Union's mischaracterization of *Joseph A. Gomez, supra,* Plaintiff is clearly an "employer" within the meaning of Section 296(1)(c).  The Union and OIC have engaged in a concerted campaign of discrimination based upon Plaintiff's national origin.  Specifically, as set forth in Truong's affidavit, the alleged discriminatory conduct of the Union includes:

i. Various investigations conducted by the Union which were undertaken solely to harass, embarrass and harm Plaintiff, due to his national origin, and the OIC and Union have attempted to take advantage of Plaintiff due to the fact that there is a language barrier.  *See also* Verified Complaint ¶ 17;

ii. The Union has consistently and persistently acted in a demeaning nature towards Plaintiff, they have called meetings with Plaintiff, made Plaintiff wait for two hours and then dismissed Plaintiff without further explanation or justification. *See also*

13

Verified Complaint ¶ 2(m);

iii.    The Union and OIC failed to address the Plaintiff's concerns about Hamidou Diallo, who fought constantly with another employee because that employee did not agree with the Union. The Union did not follow up on Plaintiff's complaints and took no steps to reprimand, warn or reassign either one of these employees. Ultimately, this led to the murder of the other employee by Hamidou Diallo, which led to bad publicity for the Hotel and the loss of substantial income for the Hotel. *See also* Verified Complaint ¶ 2(h);

iv.    The Union has initiated frivolous investigations intended (a) to unfairly harass the Hotel and its managers by requiring that they produce voluminous business records; (b) to gain forcible entry into areas of the Hotel reserved for guests and service areas, steam rooms, telephone rooms and storage rooms for reasons having nothing to do with the collective bargaining agreement but which are intended to harass and embarrass Plaintiff and to unlawfully disrupt business operations. *See also* Verified Complaint ¶ 3;

v.    Forcing Plaintiff to continue the employment of certain individuals who are clearly insubordinate, overtly hostile, and physically violent toward management and their co-workers and who have in the presence of the Union officials threatened bodily harm against the Hotel's management. *See also* Verified Complaint ¶ 2(a);

vi.    Forcing Plaintiff to continue the employment of certain individuals who stole from the Hotel and its guests.

The Union's and OIC's campaign of discrimination is the precise type of conduct condemned by the letter of the state and city human rights laws. The legislative purpose behind the human rights laws is to promote individual opportunity by barring discrimination against persons based on personal attributes such as religion. *Bruno v. Pembrook Management, Inc.,* 212 A.D.2d 314, 628 N.Y.S.2d 971 (2 Dept. 1995). As such, the courts are mandated to read the human rights laws in a manner that will accomplish their strong anti-discriminatory purpose. *Scheiber v. St. John's University*, 84 N.Y.2d 120, 615 N.Y.S.2d 332 (N.Y. 1994).

14

Notably, this Court recognizes that "in enacting the more protective Human Rights Law, the New York City Counsel has exercised a clear policy of choice which this Court is bound to honor. The Administrative Code's legislative history clearly contemplates that the New York City Human Rights Law be liberally and independently construed with the aim of making it the most progressive in the nation." *Selmanovic v. NYSE Group, Inc.*, 2007 WL 4563431 (S.D.N.Y. 2007), citing *Jordon v. Bates Advertising, Inc.,* 11 Misc.3d 764, 770, 816 N.Y.S.2d 310 (Sup. Ct. N.Y. Co. 2006).

Accordingly, Plaintiff states meritorious claims pursuant to Executive Law § 296(1)(c) and Sections 8-107(1)(c)and (6) of the Administrative Code of the City of New York.

### POINT III

### PLAINTIFF ALLEGES THE *PRIMA FACIE* ELEMENTS OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST THE UNION

In Point III, the Union contends that Plaintiff's Third Cause of Action for intentional infliction of emotional distress should be dismissed for failure to state a cause of action on two grounds: (i) the complaint fails to allege the essential elements of the intentional infliction of emotional distress; and (ii) the complaint fails to allege facts so outrageous as to go beyond all possible bounds of decency. The Union's arguments lack merit.

**A.**    **The *Martin* Rule Applies Exclusively to Tort Claims Asserted Against Union Officers in Their Representative Capacity**

First, the Union contends that the Complaint fails to allege that the Union's entire membership (*i.e.*, 20,000 members) authorized in advance or subsequently ratified the Union's tortious conduct, as required by *Martin v. Curran*, 303 N.Y. 276, 101 N.E.2d 638 (NY 1951).  In *Martin*, the plaintiff bought a libel suit against Defendants Joseph Curran and others individually and as Officers of National Maritime Union of America, an unincorporated association. Purportedly

15

applying its construction of Section 13 of the General Associations Law, the Court of Appeals held that the union was not liable as the complaint did not allege that the individual members authorized or ratified the tort complained of. However, contrary to the Union's interpretation, *Martin* held that an action to recover damages for allegedly defamatory articles published in the official newspaper of a labor union may not be maintained against the president or treasurer in their representative capacities under General Associations Law Section 13.[5]  Specifically, *Martin* held:

> ...the Legislature has limited such suits <u>against association officers</u>, whether for breaches of agreements or for tortious wrongs, to where the individual liability of every single member can be alleged and proven. *Id.*, 303 N.Y. at 282. (Emphasis added).

*Martin* and its progeny have been erroneously applied to any and all tort claims asserted against union associations as well as union officers and representatives.  *Martin* tells us that the legislature intended to limit suits against union officials in their representative capacity, but not suits against the union association itself.  To place this pleading requirement on all plaintiffs affords union associations immunity to all suits sounding in tort.  While admittedly a bold position, the only court to properly apply *Martin* is the Appellate Division, First Department in *Duane Reade, Inc. v. Local*

---

[5]  The statute provides in pertinent part that  "[a]n action or special proceeding may be maintained, against the president or treasurer of such an association, to recover any property, or upon any cause of action, for or upon which the plaintiff may maintain such an action or special proceeding, against all the associates, by reason of their interest or ownership, or claim of ownership therein, either jointly or in common, or their liability therefor, either jointly or severally." As is evidenced by the legislative history, this statute was enacted to convenience a plaintiff by enabling him to sue and more promptly reach the property of the association for satisfaction of any judgment he may recover without naming as defendants hundreds or even thousands of members of an association.

*338 Retail, Wholesale, Department Store Union, UFCW, AFL-CIO*, 17 A.D.3d 277, 278, 794

N.Y.S.2d 25 (1ˢᵗ Dept. 2005), where it was held:

> The <u>individual defendants</u> cannot be held liable for
> acts committed in their capacity as union
> representatives, even if those acts were not authorized
> by the union membership.

The state and federal courts have criticized and distinguished *Martin*. See *e.g.*, *Jund v. Town*

*of Hempstead*, 941 F.2d 1271, 1281 (2d. Cir. 1991)(noting that a requirement of proof of unanimous

membership authorization or ratification in the case of large organizations is an "insurmountable

obstacle to virtually any plaintiff"); *R.M. Perlman v. New York Coat, Suit, Dresses, Rainwear &*

*Allied Workers Union Local 89-22-1,* 789 F.Supp. 127, 131-32 (S.D.N.Y. 1992)(Court of Appeals

recognizes an exception to *Martin* for cases in which a union member sues his union for wrongful

expulsion).

The *Martin* pleading requirement should not be applied to the case at bar.  Plaintiff's

intentional infliction of emotional distress claim is asserted against the Union, not its officers in their

representative capacities.  As discussed in Point IV below, the tort asserted against Ward is in his

individual capacity, not as president of the Union.  As the Union concedes that it has approximately

20,000 members*,* to plead and prove membership approval or ratification of intentional infliction of

emotional distress is an insurmountable obstacle.

Accordingly, the Plaintiff's tort claim should not dismissed as it is procedurally adequate.

In the alternative, if the Court is inclined to apply *Martin*, it is respectfully submitted that an

<u>exception</u> to *Martin* is warranted in cases where tortious conduct and the resulting damages is

attendant to human rights violations.  As such, Plaintiff respectfully requests leave to file an amended

17

complaint.[6]

**B**.    "**National Origin" Discrimination Constitutes Outrageous Conduct That Goes Beyond All Possible Bounds of Decency**

Substantively, the Union contends that Plaintiff's allegations contained in the Third Cause of Action fail to constitute extreme outrageous conduct on the part of the Union.  This contention is false.

The tort of intentional infliction of emotional distress consists of four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.  *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350 (N.Y. 1993).  Regarding the first element, liability is found where the conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is utterly intolerable in a civilized community.  *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232 (N.Y. 1993).

The Union contends that Plaintiff's allegations fall short of the strict standard demanded by the New York courts to state a claim for intentional infliction of emotional distress, citing *Stuto v. Fleishman,* 164 F.3d. 820, 827-28 (2d Cir. 199)(distinguishable as case involved mere acts of coercion and misrepresentation regarding correction officer's disability claim), *LeDuke v. Lyons*, 250 A.D.2d 969, 673 N.Y.S.2d 240 (3rd Dept. 1998)(irrelevant as case involved hotel employees intentionally relaying false information to the hospital) and *Liebowitz v. Bank Leumi Trust Co*., 152 A.D.2d 169, 548 N.Y.S.2d 513 (2nd Dept. 1989)(unavailing as the court held that the plaintiff's

---

[6] Conveniently overlooked by the Union's counsel, the court in *Martin* granted the plaintiff leave to amend his complaint.  *Id.*, 303 N.Y. at 280.

18

intentional infliction of emotional distress claim was duplicative of her claim for wrongful discharge from employment).

Neither "threats of arbitration", "verbal tongue lashings" nor "unscheduled visits" lay the basis of Plaintiff's claim.  The allegations of paragraph 2 of the Verified Complaint  - repeated and re-alleged in the Third Cause of Action  - demonstrate a pattern of discrimination and intimidation by the Union and OIC intended to cause Plaintiff extreme emotional distress.  The New York State Court of Appeals has held that under the banner of intentional infliction of emotional distress, a plaintiff should recover if he demonstrates a "deliberate and malicious campaign of harassment or intimidation.*" Nader v. General Motors Corp.*, 25 N.Y.2d 560, 569, 307 N.Y.S.2d 647 (N.Y. 1970); see also *Owen v. Leventritt,* 174 A.D.2d 471, 571 N.Y.S.2d 25 (1ˢᵗ Dept. 1991) *lv. denied* 79 N.Y.2d 751, 579 N.Y.S.2d 651 (N.Y. 1991).  In *Nader,* the Court of Appeal held:

> ...where severe mental pain or anguish is inflicted through a <u>deliberate and malicious campaign of harassment or intimidation,</u> a remedy is available in the form of an action for the intentional infliction of emotional distress.  *Id.,* 25 N.Y.2d at 569.  (Emphasis added).

In the Verified Complaint, Plaintiff has alleged facts, which if proven at trial, will constitute intentional infliction of emotional distress.   Specifically, Plaintiff has alleged: (i) extreme and outrageous conduct in the form of the Union's campaign of discrimination and harassment predicated upon Plaintiff's national origin[7]; (ii) the Union's intent to cause Plaintiff severe emotional distress

---

[7]  Perhaps the most glaring example of the Union's outrageous conduct was its refusal to address Plaintiff's concerns regarding former Hotel employee Hamadou Diallo.  Ultimately, Mr. Diallo was convicted of murdering a Hotel employee inside the Hotel.  If such nonfeasance is not outrageous, then what is.  (Verified Complaint ¶ 2(h)).

by aiding and abetting the OIC in unlawful discriminatory conduct; (iii) a causal nexus between the Union's conduct and Plaintiff's emotional distress; and (iv) severe emotional distress which has manifested into physical and mental illness. In addition, Plaintiff has suffered monetary damages in the form of loss of Hotel profits and incurrence of attorneys' fees as a direct and proximate result of the Union's and OIC"s discrimination. Thus, Plaintiff alleges the *prima facie* elements of the tort of intentional infliction of emotional distress. Alternatively, pursuant to *Nader, supra*, Plaintiff has alleged intentional infliction of emotional distress on the ground of the Union's deliberate and malicious campaign of harassment or intimidation.

Notably, the Union contends that verbal abuse and violent confrontations define modern life in a free society. It is respectfully submitted that such conduct is outrageously indecent where it is predicated upon an individual's national origin. In the twenty-first century, national origin discrimination is utterly intolerable. Such conduct goes well beyond all bounds of possible decency and is simply atrocious in view of our civilized, modern society.

Accordingly, the Union's motion to dismiss the Third Cause of Action for failing to state a claim should be denied.

## **POINT IV**

### **WARD IS NOT IMMUNE FROM PERSONAL LIABILITY AS  PLAINTIFF'S CLAIMS DO NOT ARISE FROM A "LABOR DISPUTE"**

In Point IV, the Union contends that the Complaint should be dismissed against Ward for failure to state a claim as Plaintiff failed to plead that any of the actions complained of were committed by Ward. In support of this erroneous position, the Union cites *Duane Reade Inc., supra* and 29 U.S.C. § 106. As discussed above, *Duane Reade, supra,* involved a tort claim asserted against

20

the union representatives in their representative capacity. Here, counts of the Complaint are asserted against Ward in his individual capacity. *Duane Reade Inc*. does not afford union representatives absolute immunity from state claims in their individual capacity, but rather immunity from liability for state claims committed in their representative capacity.

Under 29 U.S.C. § 106, the Union also argues that no officer of any union shall be responsible in any court of the United States for unlawful acts of individual members or agents except upon proof of actual participation in or actual authorization of such acts or ratification of such acts after actual knowledge. However, in *United Broth. of Carpenters & Joiners of America v. U.S.*, 330 U.S. 395, 67 S.Ct. 775 (U.S. 1947), the Supreme Court held that the purpose and effect of this section limiting liability of organizations or members thereof for unlawful acts of individual officers was to relieve organizations and members thereof from liability for lawless acts in labor disputes by individual officers or members without clear proof that organization or member actually participated, gave authorization or ratified such acts after actual knowledge of their perpetration. See also *Blankenship v. Boyle*, 329 F.Supp. 1089, *stay denied* 447 F.2d 1280, 145 U.S.App.D.C. 111, *supplemented* 337 F.Supp. 296 (D.C.D.C.1971)(holding section 106 applies only to actions taken in course of labor dispute). Therefore, Ward is not absolved from personally liability under 29 U.S.C. § 106 as Plaintiff's state claims against him individually do not arise from "a labor dispute", but rather unlawful discriminatory conduct.[8]

---

[8] Contrary to the Union's Footnote 4, *Falbaum v. Pomerantz*, 2001 WL 1019616, *4, 19 Fed.Appx. 10 (2d Cir. Sept. 6, 2001), Dewitt v. Liberman, 48 F.Supp.2d 280, 293 (S.D.N.Y. 1999), *Sowemimo v. D.A.O.R. Sec., Inc.*, 43 F.Supp.2d 477, 490-91 (S.D.N.Y. 1999) and *Tomka, supra,* do not apply because those cases deal with the issue of discrimination claims asserted <u>against an employer</u> and the question of personal liability of supervisors.

21

The Union also contends that, pursuant to *Lewis v. Triborough Bridge & Tunnel Auth.,* 77 F.Supp.2d 376, 381 (S.D.N.Y. 1999), only a defendant who participates in conduct giving rise to a discrimination claim may be held personally liable.  In *Lewis*, the plaintiffs, female tunnel authority toll collectors, brought a race and gender discrimination action against the defendant male manager who had supervisory control over them.  The court held that the <u>employee</u> may not be individually subject to suit as <u>an employer</u> under Section 296(1) of the human rights law because he did not have any ownership interest or any power to hire or fire employees.  *Id.*, 77 F.Supp.2d at 379.  In the case at bar, unlike *Lewis,* Ward possesses the authority to fire Union officials and representatives for discriminatory conduct, but Ward deliberately failed to do so.  Thus, *Lewis* does not apply.

Accordingly, Union's motion to dismiss the claims asserted against Ward should be denied.

22

## <u>CONCLUSION</u>

For the reasons set forth above, the Plaintiff respectfully requests that the Union's motion for

judgment on the pleadings dismissing the claims of the Complaint, pursuant to FRCP12(c) be denied

in its entirety.

Dated: New York, New York
     May 22, 2008

                     Respectfully submitted,

                     CALABRO & ASSOCIATES, P.C.
                     *Attorneys for Tran Dinh Troung,*
                     *individually and on behalf of*
                     *Alphonse Hotel Corp. d/b/a Hotel Carter*

                     /s/ Cathy O'Donnell
                     By: Cathy O'Donnell, Esq. (CO0973)
                     1412 Broadway - Suite 1504
                     New York, N.Y. 10018
                     (646) 688-6095

23