```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x    Case No. 1:07-Civ-11383 (RJH)
TRAN DINH TRUONG, individually and on           :
behalf of ALPHONSE HOTEL CORP. d/b/a/           :
HOTEL CARTER                                    :
                                                :
              Plaintiff,                        :
     -against-                                  :
                                                :           AFFIDAVIT IN OPPOSITION
NEW YORK HOTEL & MOTEL TRADES                   :           TO OIC'S MOTION FOR
COUNSEL, AFL-CIO, and THE OFFICE                :           JUDGMENT ON THE
OF THE IMPARTIAL CHAIRMAN and                   :           PLEADINGS
PETER WARD,                                     :
                                                :
              Defendants.                       :
------------------------------------------------------------x
STATE OF NEW YORK      )
                       ) s.s.:
COUNTY OF NEW YORK     )
```

TRAN DINH TRUONG, being duly sworn, deposes and says:

1. I am the Plaintiff herein, as an individual and as President of Alphonse Hotel Corporation d/b/a Hotel Carter, the owner of the premises located at 250 West 43rd Street, New York, New York (the "Hotel"), and as such have personal knowledge of the facts and circumstances set forth below.

2. I respectfully submit this affidavit in opposition to Defendant The Office of the Impartial Chairman's ("OIC") motion for judgment on the pleadings dismissing my claims in their entirety.

**A. National Origin**

3. I am a naturalized United States citizen who emigrated to this country from South Vietnam in 1975.

1

4.      For many years prior to April 1975, I was the Chief Executive Officer, chairman and principal owner of Vishipco Line, the largest shipping company in South Vietnam. As the communist regime began to infiltrate South Vietnam, I used my position to dispatch my company's vessels and other assets to locations where American civilians and United States military forces were trapped in order to rescue them.  Even as Saigon fell to the communists on April 30, 1975, I used my position to assist United States military, which had withdrawn its support and ordered its troops and civilian personnel to evacuate South Vietnam, which was under massive artillery attacks that isolated and trapped many American soldiers and civilians in the troubled areas of South Vietnam. As a result of my assistance to the United States government, many of my family members were persecuted and ultimately murdered by the communists.

5.      As a United States citizen, I have continued my philanthropy.  Subsequent to September 11, 2001, I donated Two Million Dollars ($2,000,000.00) to the September 11th Fund operated by the Red Cross.  In fact, I was one of the first individuals to make a major contribution to the fund.

**B.     The Discrimination**

6.      Since the inception of my contractual relationship with the Union and Defendant The Office of the Impartial Chairman ("OIC") pursuant to provisions of the Hotel's Me Too Agreement[1], I have been discriminated against by the Union, Ward and OIC based upon my national origin.[2] This is an action brought principally by a local New York City Hotel against OIC, the New York Hotel & Motel Trade Council affiliated with AFL-CIO (the "Union") and the individual Defendant Peter

---

[1] The Me Too Agreement incorporates the provisions of the Industry-Wide Agreement ("IWA") between the Union and the Hotel Association of New York City, Inc.

[2] South Vietnamese.

Ward ("Ward") seeking monetary damages based upon their egregious and unlawful pattern of discrimination and targeting of me in violation of the New York State and City human rights law, and a clear pattern of bias against me. The history of abuse, bias and prejudice against the Hotel and I is undeniable.

7. The Union, Ward and OIC have engaged in concerted actions and investigations intended solely to harass, intimidate, embarrass and harm me due to my national origin.

8. The Union has consistently and persistently acted in a demeaning and discriminatory nature towards me. The Union has called meetings with me, made me wait for two hours and then dismissed me without further explanation or justification. The Union, Ward and OIC have attempted to take advantage of me due to the fact that I have a language barrier. On more than one occasion, an interpreter was not provided for me at a hearing despite my prior request and the fact that I was to give testimony.

**C.    Specific Acts**

9. On or about October 15, 2007, Rolando Ruiz, an Union official, came to the Hotel with another Union representative to allegedly discuss a complaint which alleged that Hotel employees were told that if they did not clean a specific number of rooms per shift, their pay would be docked. Without inquiring into the facts, the Union ordered that I pay the employees the alleged time without determining if there had been some type of error. Every issue I raised (*i.e.*, that the housekeepers were not performing to hotel industry standards, not handling their time effectively, failing to adhere to the new schedules, etc.) was not only ignored by the Union, but the Union representative shouted at my non-union office employees, told them they were stupid, that they should shut their mouths, and that the Union representatives could say whatever they desired to the

3

Hotel's non-union management. Morever, Mr. Ruiz physically raised his hands and pointed his fingers in the office employees' faces and made an unwarranted spectacle both in the office and in the lobby of the Hotel, and refused (when courteously asked to lower their voices) to stop screaming and speaking in a demeaning manner. The Union representatives also told me that the housekeepers had a right to waste time by talking when they were supposed to be working and asked for information that had nothing to do with the issues that they had arrived to discuss. This incident caused alarm for the Hotel guests as the office is situated directly above the lobby. I doubt such behavior occurs in other hotels.

10. Consequently, I attempted to file a complaint with the OIC against the Union. By a letter dated October 15, 2007, I requested that the OIC hold a hearing regarding this incident. My letter stated "[t]his act is very unprofessional and discriminatory considering that they were doing this in the lobby up to the hotels [sic] office. We have been a victim of this maltreatment by the Union and we want to request for [sic] emergency hearing." The OIC, despite ample opportunity to do so, failed to schedule or hold a hearing. A copy of my letter dated October 15, 2007 is annexed hereto as Exhibit A.

11. In addition, the OIC and Union have required the Hotel to continue the employment of individuals who are overtly hostile and physically violent towards myself and Hotel management, and who have in the presence of Union officials threatened bodily harm against Hotel management. Most notably, the Union and OIC failed to address my concerns about a former Hotel employee, Hamidou Diallo. Mr. Diallo fought constantly with another Hotel employee because, upon information and belief, they disagreed on the practices and policies of the Union. The Union did

not follow-up on my complaints and took no steps to reprimand, warn or reassign either one of these employees. Ultimately, this led to the murder of the other employee by Mr. Diallo. This preventable crime led to bad publicity and the loss of substantial income for the Hotel.[3]

12.  After his arrest, conviction and imprisonment, Mr. Diallo then claimed that he was owed pay for a six (6) day period and requested that the Union obtain those funds for him. Meanwhile, Mr. Diallo authorized the former president of the Union, Joe Roth, to "pick-up" his paycheck for the six day period in February 2000 and release said funds to "Frank-L-Davis." Mr. Roth received the monies from the Hotel and acknowledged his receipt on the face of Mr. Diallo's authorization. A copy of Hamidou Diallo's authorization dated February 3, 2000 is annexed hereto as Exhibit B.

13.  Notwithstanding the foregoing, Mr. Diallo commenced a court action ten years later seeking monies from the Hotel and alleging that the Union had failed to fairly represent him. Despite the fact that in order to prove unfair representation, it must be proven that the Union acted far outside a wide range of reasonableness, and that Mr. Diallo did not prove this factor, the Union (instead of fighting this baseless claim) set up a hearing on this grievance, causing the Hotel to be harmed by having to prove its' defense over ten years later. Notably, the OIC proceeded against its' own policies in allowing this to occur. The Diallo action is pending to date. Outrageously, the Union is now attempting to arrange an arbitration hearing at the Federal Courthouse located at 500 Pearl Street. A copy of the Union's counsel's letter dated April 23, 2008 requesting the use of the

---

[3] In addition, the Union and Ward failed to address my concerns about Mr. Diallo's and Mr. Dzairi's unlicensed and unauthorized limousine business in which they would pick-up guests at the Hotel. After having arguments regarding the division of the profits from their illegal business, and the Union's involvement with the business, Mr. Diallo murdered Mr. Dzairi.

Court's facilities is annexed hereto as Exhibit C.

14.     The Union and OIC have forced the Hotel to pay and hire persons who were never employed by the Hotel, but who filed false grievances at the urging of the Union, including Glenny Castillo.  He never worked for the Hotel, yet the Union allowed him to file grievances despite no proof of employment and then aided him in giving false testimony.  This led to an unwarranted award issued by the OIC in his favor, despite credible evidence presented at the hearing which demonstrated his non-employee status.  (Saltzman *Aff.* Exhibit 2 (A) and (C).)

15.     Moreover, the Union filed two grievances on behalf of Ana Pena and Elizabeth Santiago, two former probationary employees of the Hotel who were only employed for short period of time.  This was supported not only by the testimony of the Hotel employees, but the records that the Union placed into evidence.  They had been discharged both because they were unable to perform the necessary duties and, more importantly, at the hearing it was demonstrated that Ms. Pena had been caught stealing from the Hotel and various guests (which was proven by letters from a guest, Minh Tram, and by the fact that it was her card key which was used to enter the rooms at the time that the thefts took place).  A copy of Minh Tram's letter to the Hotel dated September 8, 2006 is annexed hereto as Exhibit D.  As a result of Ms. Pena's criminal activity, Minh Tram refused to pay part of her bill because of the stolen property.  Despite the fact that there was an ongoing police investigation, the Union insisted that Ms. Pena be reinstated and receive back wages.[4]  A copy of the Hotel's letter to Manhattan Transit Detective Greg Mazuroski dated September 9, 2006

---

[4] This was in violation of the Me Too agreement, as well as in direct contradiction of the credible evidence produced at the hearing.  Nevertheless, the OIC supported the Union and issued an award in Ana Pena's and Elizabeth Santiago's favor despite no credible proof. (Saltzman *Aff.* Exhibit 2(B).)

is annexed hereto as Exhibit E.

16.     Ultimately, the Hotel commenced a civil action against Ana Pena in the Civil Court of the City of New York and was awarded a monetary judgment against Ms. Pena.[5] Similarly, Minh Tram commenced an action against Anna Pena in the Civil Court of the City of New York and was awarded a monetary judgment for her damages.[6]  A copy of said judgments is annexed hereto as Exhibits F and G, respectively.

17.     It should be noted that after the OIC ordered the Hotel to reinstate Elizabeth Santiago as an employee she was caught stealing personal property from Hotel guests. As a result, a police report was filed with the New York City Police Department. A copy of the New York City Police Department Complaint and the Hotel's list of property stolen by Ms. Santiago is annexed hereto as Exhibits H and I, respectively.

18.     Most recently, the OIC issued an arbitration award in favor of the Union requiring the Hotel to engage a specific industrial consultant to conduct an "emergency" health and safety inspection of the Hotel in contravention of the IWA. Specifically, pursuant to the 2006 Memorandum of Understanding, the Hotel and Union were to agree on a consultant from a list of consultants. Conveniently, the OIC's list consisted of only one consultant. As such, the OIC ordered the Hotel to provide access to its consultant and ordered the Hotel to pay the consultant's fee. Ultimately, the consultant did not appear at the Hotel to perform the "emergency" health and safety inspection. The Hotel filed a grievance against the Union regarding improper notice under the Memorandum of Understanding, however, once again, to no avail. The Union's and OIC's

---

[5] *Hotel Carter v. Ana Pena*, Index No. S.C. 62383/06.

[6] *Minh Tham v. Ana Pena*, Index No. S.C. 5238/06.

concerted conduct demonstrates that they are acting in a deliberate and willful manner to discriminate against me and the Hotel. This is emphasized by the fact that suddenly OIC has hired an attorney to sue me for fees for appearances before him, once more adding to the pattern of discrimination. How can they possibly be impartial if they are suing me?

19. It has become transparent that the OIC is aiding and abetting the Union in the preemptive filing of frivolous grievances to protect the employment of certain Union members after learning that the Hotel had disciplined them or intended to terminate their employment. The purpose of this conduct is to unfairly prevent the Hotel from asserting its rights and taking any action against insubordinate employees.

20. As a direct result of the OIC's and Union's discriminatory practices, I have suffered the indignity of discrimination, the invasion of my rights to be free from discrimination, and great humiliation, which has manifested in physical illness and emotional stress. I have also suffered substantial monetary damages as a result of the OIC's and Union's campaign of discrimination.

21. Based on the foregoing, I have been advised by my counsel that the OIC's acts fall outside the scope of the arbitral process, and as such the OIC is not immune from civil liability under the doctrine of arbitral immunity.

**WHEREFORE,** I respectfully request that the OIC's motion be denied in its entirety.

/s/_____
Tran Dinh Truong

Sworn to before me this
____ day of May, 2008

_____
NOTARY PUBLIC

**CERTIFICATION OF SERVICE**

**I HEREBY CERTIFY** that a true and accurate copy of the foregoing was served via ECF and U.S. mail on this ____ day of May, 2008.

Joel M. Silverstein, Esq.
Stern & Kilcullen, LLC
75 Livingston Avenue
Roseland, New Jersey 07068
(973) 535-1900
*Counsel for Defendant OIC*

Barry Salzman, Esq.
Pitta & Drier, LLP
499 Park Avenue, 15th Floor
New York, NY 10022
(212) 652-3890
*Counsel for Defendants Union
and Peter Ward*