PITTA & DREIER LLP
499 Park Avenue
New York, NY 10022
(212) 652-3890
*Attorneys for Defendants*
*New York Hotel and Motel Trades Council, AFL-CIO*
*and Peter Ward*

Barry N. Saltzman (BS 6533)
Michael J. D'Angelo (MD 3030)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
TRAN DINH TRUONG, individually and on
Behalf of ALPHONSE HOTEL CORP. d/b/a
HOTEL CARTER,

                  Plaintiff,

   -against-                              Case No. 1:07-Civ-11383 (RJH)

NEW YORK HOTEL & MOTEL
TRADES COUNCIL, AFL-CIO, and
THE OFFICE OF THE IMPARTIAL
CHAIRMAN and PETER WARD,

                  Defendants.
------------------------------------------------------------- x

**REPLY MEMORANDUM OF LAW OF THE
NEW YORK HOTEL & MOTEL TRADES COUNCIL, AFL-CIO
IN FURTHER SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

{00358901.DOC;}

# TABLE OF CONTENTS

**FACTS** ............................................................................................................................2

**POINT I**   PLAINTIFFS HAVE NO CLAIM UNDER THE STATE AND CITY HUMAN RIGHTS LAWS ...............................................................................................................2

**POINT II**   ALL PLAINTIFFS' CLAIMS ARE PREEMPTED BY LMRA SECTION 301 AND IWA ARBITRATION ............................................................................................3

   A.   Plaintiffs Contort Precedent on Arbitrability .................................................4
   B.   Plaintiffs' Are Inextricably Intertwined in the IWA .......................................5

**POINT III**   PLAINTIFFS FAIL TO STATE A CLAIM FOR TORT .................................6

   A.   *Martin v. Curran* Bars Plaintiffs' Claim ..........................................................6
   B.   Plaintiffs Allege No Conduct Meeting the High Standard of Outrage .............7

**POINT IV**   PLAINTIFFS STATE NO CLAIM AGAINST WARD .......................................8

**POINT V**   PLAINTIFFS DO NOT MERIT LEAVE TO AMEND .........................................10

**CONCLUSION** ...........................................................................................................11

PITTA & DREIER LLP
499 Park Avenue
New York, NY 10022
(212) 652-3890
*Attorneys for Defendants*
*New York Hotel and Motel Trades Council, AFL-CIO*
*and Peter Ward*

Barry N. Saltzman (BS 6533)
Michael J. D'Angelo (MD 3030)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------- X
TRAN DINH TRUONG, individually and of
Behalf of ALPHONSE HOTEL CORP. d/b/a
HOTEL CARTER,

                Plaintiff,

   -against-                          Case No. 1:07-Civ-11383 (RJH)

NEW YORK HOTEL & MOTEL
TRADES COUNCIL, AFL-CIO, and
THE OFFICE OF THE IMPARTIAL
CHAIRMAN and PETER WARD,

                Defendants.
------------------------------- X

## REPLY MEMORANDUM OF LAW OF THE
## NEW YORK HOTEL & MOTEL TRADES COUNCIL, AFL-CIO
## IN FURTHER SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants New York Hotel & Motel Trades Council, AFL-CIO ("Union") and Peter Ward submit this memorandum of law in further support of their motion for judgment on the pleadings against Tran Dinh Truong and Alphonse Hotel Corp. d/b/a The Hotel Carter ("Plaintiffs") pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("FRCP") and in reply to Plaintiffs' papers in opposition. Plaintiffs admit the Union's material facts set forth in the pleadings, and concede applicable law requiring judgment for the Union, with one claimed exception - Plaintiffs claim that because they attempt to allege a national origin discrimination

{00358901.DOC;}

action, all prior precedent fails. Inasmuch as no such claim exists at State or City law by an employer against a union or its officer, Plaintiffs' sole argument does not exist. In any event, as set forth in the Union's motion papers and below, even if such an action existed, which it does not, it would be barred by Section 301 of the Labor Management Relations Act, 29 USC §185 and the broad arbitration provisions of the Industry Wide Agreement ("IWA") signed by Plaintiffs, as would Plaintiffs' tort claim, improperly stated. Therefore, for all of the reasons and authority set forth in the Union's motion papers and herein, the Union's motion for judgment on the pleadings against Plaintiffs' facially unsustainable complaint should be granted.

## FACTS

In opposition to the Union's marshalling of the pleadings and appropriate related documents set forth in the Affirmation of Barry N. Saltzman ("Saltzman Aff.") Plaintiffs' submit a lengthy affidavit of Tran Dinh Truong which largely repeats the allegations of the complaint, and an affidavit of Plaintiffs' attorney criticizing the OIC arbitrations. Both counsel's paid biased opinions and Tran's repetition of the allegations of the complaint add nothing to the relevant analysis on this motion. Mr. Tran's alleged generosity in other contexts does not buy him immunity from his legal obligations in this action. For another view of Plaintiffs' history, *see US v. All Right Title etc., et al.* 999 F.Supp. 580 (SDNY 1995); *aff'd*, 77 F.3d 648 (2d Cir. 1996) (government seizes Tran's hotel operated as a notorious drug house).

## POINT 1
## PLAINTIFFS HAVE NO CLAIM UNDER
## THE STATE AND CITY HUMAN RIGHTS LAWS

Plaintiffs distort the plain meaning of the only authority which addresses their claim. *Joseph A. Gomez v. New York Executive Dep't, Div. of Human Rights*, 122 A.D. 2d 337, 504 N.Y.S. 2d 307 (3d Dep't, 1986) directly holds that the State Human Rights Laws do not authorize an action by an employer against a labor union.

In their tortured discussion of the record below, Plaintiffs ignore the Appellate Division's holding, which actually repeats and rejects Plaintiff's argument:

> "Petitioner contends that the words in the statute "or to discriminate in any way ... against any employer" (Executive Law § 206[1](c) should be construed broadly to encompass his complaint. We disagree. The <u>clear import of the paragraph</u> is to prohibit a labor organization from excluding or expelling persons from its membership ... or to refuse to permit a person from working for an employer ... because of such reasons. <u>The complaint clearly alleges acts which are not within the purview of the statute and are thus outside of the jurisdiction of the Division.</u>"

Thus, the Appellate Court clearly understood *Gomez* to argue like Plaintiffs that he was an employer suffering discrimination by a union because of his national origin, and unflinchingly ruled such claims uncovered by the Law. Plaintiffs claim, like *Gomez's*, does not exist at law.

In addition to the Appellate Court's express holding, Plaintiffs' misconstruction also succumbs to over twenty years of application. Despite pages of appeal to the broad purpose of the State and City Human Rights Laws, Plaintiffs cite no case in which any court finds a claim of union discrimination against an employer thereunder. Neither Plaintiffs nor the Union have found any. Plaintiffs' insistence that a Federal Court should nonetheless, on no authority, ignore State court precedent construing State law, overturn twenty years of undisputed State and City practice, and sow conflict in an area well settled, carries much mischief but no merit, and should be rejected.

## POINT II
## ALL PLAINTIFFS' CLAIMS ARE PREEMPTED
## BY LMRA SECTION 301 AND IWA ARBITRATION

Plaintiffs' claims must also be dismissed as preempted by Federal labor law and the IWA's provisions prohibiting discrimination and requiring arbitration. Plaintiffs' distinctions of the Union's cases are spurious.

A.    <u>Plaintiffs Contort Precedent on Arbitrability</u>

None of the cases cited by Plaintiffs for their proposition that an employer cannot agree to arbitrate statutory discrimination claims actually involves an employer. *Pyett v. Pennsylvania Bldg. Co.* 498 F.3d 88 (2d Cir. 2007); *Rogers v. New York University*, 220 F.3d 73 (2d Cir. 2000); *Kravar v. Triangle Services, Inc.* 509 F.Supp. 2d 407 (SDNY 2007). Rather, all the cases cite and apply the well-known U.S. Supreme Court holding that a labor union cannot waive its member-employee statutory rights derivatively because a union might trade such individual rights for other concerns, thereby not acting in the individual employee's statutory interests. *Alexander v. Gardner-Denver Co.*, 415 US 36, 51-52, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). As explained by the Supreme Court, (certain rights are conferred on employees collectively to foster the processes of bargaining and properly may be exercised or relinquished by the union as collective-bargaining agent to obtain economic benefits for union members. Title VII, on the other hand, stands on plainly different ground; it concerns not majoritarian processes, but an individual's right to equal employment opportunities and thus, cannot be waived by the union for the individual).

In contrast, all cases acknowledge that an individual employee can consign his statutory rights to arbitration directly. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 US 20, 111 S.Ct. 1647 (1991) (employee who agreed individually to waive his right to federal forum could be compelled to arbitrate). *See also, Halligan v. Piper Jaffary, Inc.*, 148 F.3d 197 (2d Cir. 1998); *Hart v. Canadian Imperial Bank of Commerce*, 43 F.Supp.2d 395 (S.D.N.Y. 1999). Thus, the logic of *Gardner Denver* upon which this Court relied does not apply where the agreement to arbitrate is direct rather than derivative from the union.

Plaintiffs' inability to cite a single case holding that an employer cannot agree to submit a statutory claim of discrimination against a labor union to arbitration derives both from the fact

that no such claim exists, and that such a holding would be wrong. If such a right of action existed, an employer would be free, just like an employee, to agree to arbitration as the sole forum, as held in *Gilmer* and its progeny. In Plaintiffs' case, Plaintiffs directly signed an individual successor Me Too Agreement which incorporates the IWA and, like the IWA, commits "any dispute between the parties" to arbitration. (Exhibit G to the Saltzman Aff.) Thus, even if Plaintiffs had a statutory claim, which they do not, like an employee who signs an employment agreement, Plaintiffs are bound by the arbitration terms of their signed contract.

B.      Plaintiffs' Are Inextricably Intertwined in the IWA

Plaintiffs next argue that their purported discrimination claims are not preempted because "truly independent" of the IWA. In so arguing, Plaintiffs ignore both the IWA and the elements of their own claims.

Section 25 of the IWA, virtually ignored in Plaintiffs' brief, expressly forbids all forms of national origin discrimination, including against employers: "The opportunity <u>to give</u> and obtain employment without discrimination because of ... national origin ... or any other factor alleged under federal, state or local law is hereby recognized by the parties to this Agreement." (Ex. E to the Saltzman Aff., p.19). Thus, Plaintiffs' purported discrimination claims exist not in statute, but in the IWA, subject to its very broad Section 26 arbitration provisions which encompass "[a]ll complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly ...".

In addition, unlike cases such as *Zuckerman v. Volume Services America, Inc.*, 304 F.Supp 2d 365 (EDNY 2004) where the sole connection to the labor agreement was tangential for the purposes of calculating damages, Plaintiffs' claims herein require detailed construction of the IWA. Plaintiffs allege Union discrimination by means of grievances over hiring, firing,

{00358901.DOC;}                                 5

visitation rights and wages, all terms contained in the IWA, (*See* Union Memorandum of Law pp. 6-7). Assuming but disagreeing that Plaintiffs allege a prima facie case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 US 729, 93 S.Ct. 1817 (1973), the Union would assert its legitimate business justification of IWA contract enforcement as its defenses. Sorting out Plaintiffs' claims and the Union's defenses thus inextricably requires the Court to interpret and apply the IWA terms, a function consigned to the arbitrator. Similar analysis must be done with respect to Plaintiffs' intentional infliction of emotional distress action, since no tortious intent exists if the Union is truly enforcing its members' labor contract rights. Accordingly, on near duplicative pleadings, this Court has already dismissed Plaintiffs' prior attempts to circumvent its industry obligations and arbitration. *Alphonse Hotel Corp. v. New York Hotel & Motel Trades Council, AFL-CIO*, 2004 WL 414836 (SDNY) *aff'd w/o opinion*, No. 04-1757 (2d Cir. 4/06/04). Policy and precedent guide this Court to do likewise again.

## POINT III
## PLAINTIFFS FAIL TO STATE A CLAIM FOR TORT

Neither Plaintiffs' revisionist reading of *Martin v. Curran*, 303 N.Y. 2d 276, 101 N.E. 2d 658 (NY 1951), nor their pleadings of purported outrageous conduct rescue their fatally defective third cause of action for misalleged intentional infliction of emotional distress from judgment on the pleadings as set forth in the Union's motion papers.

A.   *Martin v. Curran* Bars Plaintiffs' Claim

Plaintiffs appear to concede that they cannot meet the *Martin* pleading requirements demanded by every court, state and federal, to have considered the issue. Instead, Plaintiffs declare that they have unearthed the true meaning of the case contrary to over 50 years of uniform application. They argue that *Martin* is limited to claims against individual officers and not unions became the claim therein names the individual union officers. However, in *Martin*, plaintiffs sued the union's officers in their official capacities in order to bring claims against the

union because, as an unincorporated association, there exists no other way to sue the union as an entity. Thus, as correctly understood for 50 years, *Martin* states the requirements for pleadings against a union, and has been so uniformly applied. *See, e.g., Salemeh v. Toussaint*, 810 NYS 2d (1st Dep't 2006) (intentional tort/assault claims against union dismissed for failure to plead authorization or ratification by entire membership); *Bldg. Indus. Fund v. Local Union No. 3, IBEW,* 992 F.Supp. 192, 194 (E.D.N.Y. 1996) (summary judgment to union despite evidence of massive letter campaign by members); *R.M. Perlman Inv. v. New York Coat, Suite Dresses etc. Union Local 89-22-1,* 789 F.Supp. 127 (SDNY 1992); *Modeste v. Local 1199*, 850 F.Supp 1156 (SDNY 1994) *aff'd,* 38 F.3d 626 (2d Cir. 1994).

*Duane Reade, Inc. v. Local 338 Retail, Wholesale Dept. Store Union, UFCW, AFL-CIO*, 17 A.D. 3d 277, 794 N.Y.S. 2d 25 (1st Dept., 2005) does not disagree. *Duane Reade* extended the *Martin* rule to suits against union officers in their individual capacities but in no way remotely purported to repeal *Martin*. Indeed, plaintiffs in *Duane Reade* first plead against the union by its officers, then tried to avoid *Martin* unsuccessfully by amending their complaint to name the union's officers individually. Neither gambit worked there, nor here.

B.   Plaintiffs Allege No Conduct
     Meeting the High Standard of Outrage

Agreeing with the Union's statement of the law requiring judgment for the Union, Plaintiffs nevertheless insist that the conduct plead is "so extreme and outrageous" as to go "beyond all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society" as required by *Stuto v. Fleishman,* 154 F.3d 820, 827 (2d Cir. 1999) and its progeny. To the contrary, as discussed in the Union's motion papers, Plaintiffs' complaint pales beside the cases cited by the Union where, despite far more serious allegations, plaintiffs still failed to meet the high standard of pleading. *See, e.g. Stuto v. Fleishman, supra,* (dismissal affirmed though plaintiff alleged lying, coercion and ignoring evidence by defendants during

administrative proceeding for health benefits); *Burlew v. American Mut. Ins. Co.,* 63 NY2d 412, 415, 482 NYS2d 720 (1984) (delay in authorizing needed surgery and procurement of false affidavit not sufficiently extreme or outrageous); *LeDuke v. Lyons,* 250 AD 2d. 169, 673 NYS2d 240, 244 (3d Dep't 1998) (nurse discharged based on false allegations of euthanasia communicated to the District Attorney); *Liebowitz v. Bank Leumi Trust Co.,* 152 AD 2d.169, 548 NYS2d 513, 521 (2d Dept. 1989) (employee subjected to religious/ethnic slurs, told to choose between her health and her job).

Plaintiffs' argument that a pattern of alleged intentional discrimination necessarily creates the tort of intentional infliction of emotional distress comes unsupported by any case so holding. Indeed, *Liebowtiz v. Bank Leumi Trust Co., supra,* rules to the contrary. *Nader v. General Motors Corp.,* 25 NY2d 560, 307 NYS2d 647 (1970) cited by Plaintiffs, involved invasion of privacy claims, touching on intentional infliction of emotional distress as *dicta,* and even then cautioning against attempts to erode "the more stringent pleading and proof requirements for an action for infliction of emotional distress." *Id* at 569. *Owen v. Leventritt,* 174 N.Y.2d 751, 579 NYS 2d 25 (1st Dept 1991) also cited by Plaintiffs, buries them. In that case, plaintiff alleged that defendant threatened in public to kill plaintiff, yet fell short of meeting the courts' strict standard for outrage. Plaintiffs' allegations of arbitrations deemed meritorious and purported rudeness by Union agents at Hotel property do not even come close.[1]

## POINT IV
## PLAINTIFFS STATE NO CLAIM AGAINST WARD

Plaintiffs insist they sue Ward not in his representative capacity as President of the Union, but individually for not firing the other Union employees whom Plaintiffs claim

---

[1] The "worst" conduct Plaintiffs can summon relate to the criminal behavior of Hamadou Diallo, an employee of the Hotel, not the Union, over seven years ago. "Plaintiffs concerns" should have been related to the police, if they had any; these circumstances, in any event, occurred in 1999, far beyond the one (1) year intentional tort limitation period, so are irrelevant; and involve no Union action.

discriminated against them. Of course, disciplining subordinates involves Ward acting in his representative capacity, not individually. In any event, Plaintiffs allege no discriminatory or tortuous conduct by Ward, or even knowledge of such conduct by others, still far short of aiding and abetting. Thus, the complaint remains facially insufficient against Ward.

In any event, however the claims arise, the holding of *Duane Reade, Inc., supra*, dispatches them both, since that case denied both individual and representative capacity complaints. In rejecting both alternatives, the Court explained:

> In the first amended complaint, the individual defendants were sued as representatives of the union. Were we to consider the proposed second amended complaint, which for the first time named these defendants in their individual capacity we could find no allegation of conduct by the individual defendants unrelated to their roles as union officials. *Id.* at 278

*Duane Reade* thus decisively defeats Plaintiffs' tort claims against Ward.

As to the statutory claims against Ward, they cannot survive judgment for the Union since Ward's sole connection to these matters is as president of the Union. Moreover, contrary to Plaintiffs' purported distinctions of the cases cited on page 14 of the Union's motion brief, these cases govern since Plaintiffs claim that Ward failed to take action in his supervisory capacity rather than allege any individual conduct. *See, Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F.Supp.2d 376, 381 (S.D.N.Y.1999) (if the plaintiff fails to plead any facts suggesting that a defendant displayed any intent to discriminate or was in any way involved in the alleged discriminatory scheme, the defendant may not be held liable). Accord, *Falbaum v. Pomerantz*, 2001 WL 1019616, *4, 19 Fed.Appx. 10 (2d Cir. Sept. 6, 2001) ("It is generally accepted, however, that once an employer has been found to have not discriminated, there is no predicate for imposing liability on the supervisors under an aiding and abetting theory."); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1315 (2d Cir. 1995) (the inappropriate conduct must be imputable to the employer before a supervisor can be liable); *DeWitt v. Lieberman*, 48 F.Supp.2d 280, 293

(S.D.N.Y.1999) (supervisor who committed the sexual harassment held not liable under § 296(6) because plaintiff could not state a claim of sexual harassment against employer); *Sowemimo v. D.A.O.R Sec., Inc.*, 43 F.Supp.2d 477, 490-91 (S.D.N.Y.1999) (plaintiff failed to establish liability against individual defendant's employer thereby eliminating her claims against the individual defendant as an aider and abettor under the NYSHRL).

## POINT V
## PLAINTIFFS DO NOT MERIT LEAVE TO AMEND

In anticipation of *Martin*'s bar to their tort claim, Plaintiffs request leave to amend the complaint, apparently to allege that the tort "is attendant to human rights violations." Plaintiffs' Brief, p. 18. Leave should be denied as improperly requested, and futile.

Courts wield broad discretion to deny leave to amend a fatally deficient complaint where, among other defects, such amendment would be futile. *See, e.g., In re Tamoixifen Citrate Antitrust Litigation*, 466 F.3d 187, 220-21 (2d Cir 2006) (leave denied where possible amendment would fail to state a claim); *Lucente v. IBM*, 310 F.3d 243, 258-60 (2d Cir. 2002) (reversing grant of leave because amended claim barred by substantive contract law); *Dluhos v. Floating and Abandoned Vessel knows as "New York"*, 162 F.3d 63, 69-71 (2d Cir. 1998) (leave denied because proposed claim runs afoul of legal constructions). Indeed, *Tamoxifen, supra* denied leave because plaintiffs requested permission not by motion but in their brief opposing dismissal of the initial complaint.

As Plaintiffs herein repeat the errors in *Tamoxifen*, their request should likewise fail. In addition, Plaintiffs request plainly futile leave since *Martin v. Curran* has barred a variety of torts far more heinous than Plaintiffs' deficiently alleged claim of intentional infliction of emotional distress by grievances and shouting, motivated by national origin. *See*, Union's motion brief, p. 12. Indeed, Plaintiffs have already made such a futile claim, which need not be restated in order to be dismissed. Accordingly, Plaintiffs' request for leave should be denied as

futile.

## CONCLUSION

Faced with overwhelming case law, Plaintiffs failed to withdraw their baseless complaint in violation of Rule 11 of the FRCP but instead have deliberately misstated the law and its holdings with respect to every purported cause of action in their complaint. Such distortions should not be countenanced, much less refute the Union's motion for judgment on the pleadings. Therefore, for the reasons set forth in the Union's moving papers and herein, the Union's motion should be granted.

Dated: New York New York
June 6, 2008

                          Respectfully submitted,

                          PITTA & DREIER, LLP

                          By: _____
                          Barry N. Saltzman (BS 6533)
                          499 Park Avenue

Of Counsel:                   New York, New York 10022
   Michael J. D'Angelo (MD 3030)   (212) 652-3890