UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

TRAN DINH TRUONG, individually and on behalf of ALPHONSE HOTEL CORP. d/b/a HOTEL CARTER,

            Plaintiff,

- against -

NEW YORK HOTEL & MOTEL TRADES COUNCIL, AFL-CIO, and THE OFFICE OF THE IMPARTIAL CHAIRMAN and PETER WARD,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Case No. 1:07-Civ-11383 (RJH)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THE OFFICE OF THE IMPARTIAL CHAIRMAN'S MOTION FOR JUDGMENT ON THE PLEADINGS**

STERN & KILCULLEN, LLC
Herbert J. Stern (HS3169)
Joel M. Silverstein (JS5704)
75 Livingston Avenue
Roseland, New Jersey 07078
(973) 535-1900

*Attorneys for the Office
of the Impartial Chairman*

Defendant The Office of the Impartial Chairman ("OIC") submits this Reply Memorandum in further support of its motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), dismissing all of plaintiffs' claims against OIC with prejudice.

## ARGUMENT

**PLAINTIFFS' CLAIMS AGAINST OIC ARE PRECISELY THE SORT THE DOCTRINE OF ARBITRAL IMMUNITY IS INTENDED TO BAR; PLAINTIFFS' ARGUMENTS TO THE CONTRARY ARE FRIVOLOUS**

In our moving memorandum, we demonstrated that, under the law in this Circuit, both arbitrators and organizations like OIC, which "sponsor arbitration," are "absolutely immune from liability in damages for all acts within the scope of the arbitral process."  OIC 12(c) Mem. [Doc. 28] at 1-2, *quoting Austern v. Chicago Board Options Exchange Inc.,* 898 F.2d 882, 886 (2d Cir.) (citations omitted), *cert. denied,* 111 S.Ct. 141 (1990).  We further demonstrated that, on the face of their Verified Complaint, all of plaintiffs' claims against OIC are barred by arbitral immunity because they seek monetary damages for alleged acts and omissions that are plainly within the scope of the arbitration process.  *Id*. at 2-3.

Plaintiffs' opposition only confirms that plaintiffs are impermissibly suing OIC over rulings and other arbitral acts and omissions of its arbitrators with which plaintiffs are dissatisfied.  The two affidavits plaintiffs submit in opposition rehash the same factual allegations against OIC as are set forth in the complaint.[1]  Most important, in the affidavits as in the complaint, these factual allegations – as distinct from plaintiffs' conclusory assertions against OIC of "discrimination,"

---

[1] *Compare*: Complaint ¶¶ 2(g) & (j) *with* Affidavit of Tran Dinh Truong sworn to 5/16/2008 [Doc. 41] ("Truong Aff.") ¶¶ 14 (all re grievances filed by Glenny Castillo); Complaint ¶¶ 2(g), (i), (j), & (k) *with* Truong Aff. ¶¶ 15-17 *and* Affidavit of David M. Levy, Esq. sworn to 5/20/2008 [Doc. 42] ("Levy Aff.") ¶¶ 2-7 (all re grievances filed by Ana Pena and Elizabeth Santiago); Complaint ¶¶ 2(l) *with* Truong Aff. ¶ 18 (both re OIC's alleged issuance of an arbitration award in favor of the Union requiring the plaintiff Hotel to engage a specific industrial consultant to conduct an emergency health and safety inspection of the Hotel); Complaint ¶ 2(n) *with* Truong Aff. ¶ 10 (both re failure of OIC to schedule a hearing at plaintiffs' request).

"bias," "conspiracy" with the Union, and the like – *are limited to arbitration decisions and other acts and omissions of OIC or its arbitrators that are integrally related to their conduct of arbitrations between plaintiffs and the Union.*[2] And plaintiffs' papers plainly state plaintiffs' dissatisfaction with the results of those arbitrations. *E.g.,* Pl. Mem at 9 ("Plaintiff cannot obtain unbiased relief before the OIC..... Plaintiff is effectively barred from obtaining relief in arbitration."); Levy Aff. ¶ 11 ("Truong cannot obtain impartial relief in arbitration as the OIC and Union are acting in concert").

Plaintiffs attempt to circumvent OIC's arbitral immunity by claiming, in essence, that OIC's challenged acts and omissions, though within the scope of the arbitration process, should nevertheless be deemed outside the scope of OIC's arbitral immunity because those acts and omissions reflect bias against OIC, concerted action with the Union, and violations of plaintiffs' statutory and constitutional civil rights. First, plaintiffs conclusorily allege that the alleged arbitral decisions, acts, and omissions by OIC and its arbitrators reflect "discrimination," "bias," and

---

[2] *See* OIC 12(c) Mem. [Doc. 28] at 2-3 (summarizing the complaint's factual allegations against OIC); complaint ¶¶ 2(g), (h), (i), (k), (l), (n), and (o); Truong Aff. ¶¶ 10 ("The OIC, despite ample opportunity to do so, failed to schedule or hold a hearing" requested by plaintiffs); 13 ("the OIC proceeded, against its own policies, in allowing" the Union to set up a hearing on a grievance on behalf of a former employee seeking six days back pay); 14 (complaining of "an unwarranted award issued by the OIC in [a putative hotel employee's] favor, despite credible evidence presented at the hearing which demonstrated his non-employee status"); 14 n.4 ("the OIC supported the Union and issued an award in Ana Pena's and Elizabeth Santiago's favor despite no credible proof"); 18 ("the OIC issued an arbitration award in favor of the Union requiring the Hotel to engage a specific industrial consultant to conduct an 'emergency' health and safety inspection of the Hotel in contravention of the IWA"); Levy Aff. ¶¶ 2 ("the OIC's arbitration award was arbitrary and capricious and legally infirm based upon the actual and perceived partiality of the OIC and its demonstrated bias against the Hotel"); 7 ("Notwithstanding the unconverted [sic] evidence of Pena's criminal misconduct at the Hotel, the credible testimony and documentary evidence offered by the Hotel and the incredible and inconsistent testimony of Pena and Santiago, the OIC rendered a written award dated June 27, 2007 which sustained the grievance and ordered Pena and Santiago to be reinstated at the contractual rate of pay under the collective bargaining agreement").

2

"prejudice" against plaintiffs[3] and "partiality" toward and "concerted conduct" with the Union.[4] From these conclusory allegations, plaintiffs bootstrap claims that OIC violated plaintiffs' statutory and constitutional "civil rights," including "equal protection" and "due process."[5] Finally, plaintiffs argue that "although arbitral immunity protects the OIC's decision making, as a quasi judicial act, it does not shield OIC from civil liability for civil rights violations that are derived from the Legislature and the Federal and State constitutions." Pl. Mem. at 4. Significantly, plaintiffs cite not a single legal authority in support of that argument.

In fact, *all* of the authorities are to the contrary. The Courts have *uniformly* rejected as a matter of law litigants' attempts to circumvent the arbitral immunity of arbitrators and arbitral organizations as to acts and omissions integral to their conduct of arbitration proceedings by claiming that such acts or omissions resulted from the arbitrators'/organizations' alleged misdeeds or improper motives, including, without limitation, discrimination, bias, conspiracy, and violations of equal protection, due process, and other statutory or constitutional civil rights.[6]

---

[3] *E.g.,* Pl. Mem. [Doc. 43] at 1, 3, 4-9; Truong Aff. ¶¶ 6-8, 18, 20; Levy Aff. ¶¶ 2, 10, 11.

[4] *E.g.,* Pl. Mem. at 1, 7-8, 8-9; Truong Aff. ¶ 7, 19; Levy Aff. ¶¶ 2, 11.

[5] *E.g.,* Pl. Mem. at 1 (statutory & "due process" violations), 3-4 ("civil rights" & "equal protection" violations), 4-8 (statutory & "civil rights" violations).

[6] *See*, *e.g., Austern,* 898 F.2d at 885 (affirming district court's Rule 12(b)(6) dismissal in favor of arbitral organization, which the Second Circuit held to be immune from claims that its failure to provide plaintiffs with adequate notice of the arbitration hearing "violated their right to procedural due process under the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Illinois Constitution"); *Hudson v. American Arbitration Association,* 101 Fed. Appx. 947, 947 (5th Cir. June 17, 2004) (affirming dismissal under Rule 12(b)(6) of claims against the American Arbitration Association by an unsuccessful party in an arbitration: "[a]ny equal protection claims or claims of misdeeds by the American Arbitration Association are barred by arbitral immunity."); *Galuska v. New York Stock Exchange*, 210 F.3d 374 (Table), 2000 WL 347851 (7th Cir.) at *1-2 (affirming dismissal under Rule 12(b)(6) based on the NYSE's arbitral immunity: "Galuska's allegations [against the NYSE] of breach of contract, breach of fiduciary duty, negligence, and conspiracy to defraud will not strip NYSE of the protections of arbitral immunity.... [and] we reject Galuska's contention that arbitral immunity (footnote cont.)

Indeed, the Fifth Circuit dismissed "as frivolous" the appeal of the plaintiff in *Smith v. Shell Chemical Company* (described in n.7) based on his contention that "fraudulent and biased actions of the arbitrator against the plaintiff in the administration of the arbitration proceeding fell outside the scope of arbitral immunity" (*id.*, 333 F.Supp.2d at 585, 586-89) – essentially the same argument plaintiffs advance here – adding, *sua sponte*, that "Smith is WARNED that he may be subject to sanctions if he makes any further frivolous filings." *Smith v. American Arbitration Association*, 166 Fed. Appx. at 110 (5th Cir. 2006) (capitalization of "WARNED" in original).

The frivolousness of plaintiffs' contention that its claims here are not barred by the OIC's arbitral immunity is further confirmed by repeated, unequivocal pronouncements of the United States' Supreme Court that the very reason absolute immunity is afforded to judges, arbitrators and others who perform judicial and quasi-judicial functions is to protect them from harassment

---

does not apply because NYSE acted 'unconstitutionally' and violated 'due process.'"); *Hawkins v. National Association of Securities Dealers Inc.,* 149 F.3d 330, 331-32 (5th Cir. 1998) (*per curiam*) (holding arbitral organization immune from claims that it "was biased against [the plaintiff, Hawkins], failed to properly administer the arbitration proceeding, and conspired with [Hawkins' adversary] to harm him and deprive him of a fair arbitration," and concluding that "[b]ecause the NASD is immune from civil liability arising from its actions taken in the course of conducting arbitration proceedings, Hawkins has failed to state a claim against the NASD"); *Smith v. Shell Chemical Company*, 333 F.Supp. 579, 585, 586-89 (M.D.La. 2004), *aff'd per curiam*, 166 Fed.Appx. 109 (5th Cir. 2006) (granting Rule 12(b)(6) dismissal on grounds that the American Arbitration Association was absolutely immune despite the plaintiffs' contention that, in rejecting his racial discrimination claims the AAA arbitrator had taken "fraudulent and biased actions... against the plaintiff in the administration of the arbitration proceeding"); *McCarty v. Derivium Capital, LLC*, 2005 WL 3320564 at *1-3 (D.Conn.) (holding arbitral organization immune from claims that it violated the plaintiffs' rights under the Fifth and Fourteenth Amendments to the Constitution and the Americans with Disabilities Act, 42 U.S.C. § 12132: "the decisions by the AAA that form the basis of Mr. McCarty's claims occurred in connection with the AAA's management of the contractually agreed-upon arbitration between Mr. McCarty and Derivium. Because the AAA's conduct was "integrally related to the arbitral process," the AAA is absolutely immune from liability on Mr. McCarty's claims. *That Mr. McCarty asserts constitutional and statutory violations by the AAA makes no difference.*") (emphasis added) (citations omitted); *see also Olson v. National Ass'n of Securities Dealers*, 85 F.3d 381, 383 (8th Cir. 1996) (rejecting contention that arbitral immunity does not apply to the extent an arbitral organization violates its own rules in administering an arbitration); *Jason v. AAA*, 62 Fed.Appx. 557 (5th Cir. 2003) (same).

4

or intimidation at the hands of disgruntled litigants – like plaintiffs – who "invariably" will attribute adverse decisions to perceived misconduct or improper, corrupt, or unconstitutional motives of the tribunal.  In *Butz v. Economou*, 438 U.S. 478 (1978), the Court described as follows its earlier decision in *Bradley v. Fisher*:

> In *Bradley v. Fisher* [13 Wall. 335, 20 L.Ed. 646 (1872)], the Court analyzed the need for absolute immunity to protect judges from lawsuits claiming that their decisions had been tainted by improper motives.... The Court explained that the value of this rule was proved by experience. Judges were often called to decide "[c]ontroversies involving not merely great pecuniary interests, but the liberty and character of the parties, and consequently exciting the deepest feelings." *Id.,* at 348. *Such adjudications invariably produced at least one losing party, who would "accep[t] anything but the soundness of the decision in explanation of the action of the judge." Ibid. "Just in proportion to the strength of his convictions of the correctness of his own view of the case is he apt to complain of the judgment against him, and from complaints of the judgment to pass to the ascription of improper motives to the judge." Ibid.* If a civil action could be maintained against a judge by virtue of an allegation of malice, judges would lose "that independence without which no judiciary can either be respectable or useful." *Id.,* at 347. Thus, judges were held to be immune from civil suit "*for malice or corruption* in their action whilst exercising their judicial functions within the general scope of their jurisdiction." *Id.,* at 354.

*Butz*, 438 U.S. at 508-09 (emphasis added); *accord id*. at 512 ("[C]ontroversies sufficiently intense to erupt in litigation are not easily capped by a judicial decree. The loser in one forum will frequently seek another, charging the participants in the first *with unconstitutional animus*. Absolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.") (emphasis added) (citations omitted); *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (holding that state judges sued on constitutional claims pursuant to 28 U.S.C. § 1983 are subject to absolute immunity: "It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation *charging malice or corruption*.  Imposing such a burden on judges would contribute

5

not to principled and fearless decision-making but to intimidation."); *see also Mireles v. Waco*, 502 U.S. 9, 10 (1991) ("Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial").

In short, plaintiffs' claims against OIC in this action are precisely the sort that the doctrine of arbitral immunity is intended to bar; plaintiffs' arguments to the contrary are frivolous.

## CONCLUSION

For all of the foregoing reasons and those set forth in our moving memorandum [Doc. 28], we respectfully request that the Court grant OIC judgment on the pleadings dismissing with prejudice all of plaintiffs' claims against OIC.

        Respectfully submitted,

        STERN & KILCULLEN, LLC
        *Attorneys for Defendant*
        *The Office of the Impartial Chairman*


        s/Joel M. Silverstein
        Herbert J. Stern (HS3169)
        Joel M. Silverstein (JS5704)
        75 Livingston Avenue
        Roseland, NJ 07078
        (973) 535-1900

Dated: June 6, 2008